UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANNAMAY SHIBLEY, et al.,

                                        Plaintiffs,

v.                                                          6:24-cv-0722
                                                            (BKS/TWD)


JENNIFER BIXLEROND, et al.,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

ANNAMAY SHIBLEY
*Plaintiff, pro se*
2452 Broad Street, Apt. 3
Frankfort, NY 13340

CHRISTOPHER WHEELER, SR.
*Plaintiff, pro se*
2452 Broad Street, Apt. 3
Frankfort, NY 13340

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.      INTRODUCTION

The Clerk has sent to the undersigned for review a complaint submitted by *pro se*

plaintiffs Annamay Shibley and Christopher Wheeler, Sr. ("Plaintiffs"), together with two

applications to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 1, 3, 4.  For the reasons set forth

below, the Court recommends the complaint be dismissed.

II.      **IFP APPLICATIONS**

Plaintiffs have not paid the statutory filing fee for this action and seek leave to proceed

IFP.  Dkt. Nos. 3, 4.  Upon review, the Plaintiffs' IFP applications demonstrate economic need.

*See id*.  Therefore, Plaintiffs are granted permission to proceed IFP.

III.     **COMPLAINT**

Plaintiffs commenced the instant action utilizing the Court's form complaint for civil

rights actions, asserting claims under 42 U.S.C. § 1983.  *See* Dkt. No. 1 at 3.[1]  The complaint

lists four defendants: "Jennifer bixlerond" of the Oneida County Sheriff's Department;[2] the

Department of Social Services ("DSS"); the Mohawk Valley Community Action Agency; and

Heidi Garber.  *Id*. at 2-3.

Plaintiff Annamay Shibley states,[3] on February 2, 2021, "2 of my children were taken by

CPS."  *Id*. at 8.  CPS accused her of "abusing my children even though the babysitter named

Heidi garber was the one that abused my children and amidded it to CPS."  *Id*.  "CPS wanted the

babysitter my boyfriend and myself to take a lie detector test."  *Id*.  Garber "refused to take a

test" but Shibley and her boyfriend agreed to take the test at the Oneida County Jail.  *Id*.  After

she completed the test,

---

[1] Citations to Plaintiffs' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2] The Court notes, while Plaintiffs listed "Jennifer bixlerond" as "Defendant No. 1" on the second page of the complaint, *see* Dkt. No. 1 at 2, in a later portion of the same document, *see* Dkt. No. 1 at 4, and on both IFP applications, *see generally*, Dkt. Nos. 3, 4, Plaintiffs appear to refer to the same individual as "Jennifer Bixler."

[3] As discussed in greater detail below, the complaint is signed only by Annamay Shibley.  *See* Dkt. No. 1 at 7.

> they said I failed the test but when the officer showed me the test I
> did not see where I failed the test.  But they still arrested me and I
> spent one night in jail but when I went to court the next day the judge
> released me and told me that there was not enough evidence to prove
> I did anything wrong.

*Id*.  She later learned "the charges were dismissed and sealed."  *Id*.

Shibley avers "CPS did not have a warrant to remove my children from my care.  I did

not get a court date for the removal order of my children until a week and a half after my

children were already removed."  *Id*.  She states she has "done everything that the cps workers

wanted me to do" including "mental health councling, parenting class, anger management class,

domestic violence classes and also find better housing for myself and my children."  *Id*.  Plaintiff

also "had 2 more children" after the first two were removed from her home "and they did not

have a warrant to remove them children both from St. Luke's hospital the days that they were

born."  *Id*.

She has not abused any of her children, and seeks to have the children returned to her

home, arguing "CPS should have never taken my children after they got the confession out of the

babysitter."  *Id*. at 9.  Further, she "would like the babysitter held accountable for her actions."

*Id*.  Additionally, in October of 2023, "Laurie Ellis who used to work for Onidea County dss"

entered Shibley's residence "without knocking and also after numerous times I told her she was

not welcome into my house."  *Id*.  Plaintiff "had to call the police and make a police report on

her once I made a police report she took herself off of my family court case."  *Id*.

Shibley "was suppost to have home visits back in 2022 and they took them away all

because someone lied and said that I took inapprepite pictures of one of my children during a

visit and also abused my child during a visit but yet that never happened."  *Id*.  The visit during

which the alleged abuse occurred "was conducted at The House of good Shepard and I had many

staff in and out of the room that cps tried to say it happened at." *Id.*  Additionally, DSS did not

have custody of the child Plaintiff allegedly abused at the time, as the child's biological father

had custody.  *Id.*  "He had custody and then abandoned her and left her with his ex girlfriend.  I

then fought like no tomorrow to have the foster parents gain custody of her so she was back with

her siblings and I now feel like that was a big mistake." *Id.*

From the day Shibley's four children entered foster care, the foster parents allowed the

children to be hurt and have failed to contact her "until days after or not being fulted for it." *Id.*

For example, one of the children "was bitten by a dog and could have been blind and they still

have the dog, they want to get rid of the dog and that they have the dog locked up away from the

kids." *Id.*  However, it is "very unlikely that they are able to keep that dog away far from 11 kids

all under 10 years old!" *Id.*

"DSS has not done everything to make sure I can get my children back, I think there goal

for all children around the world is to human traffic them.  They have been wanting to terminate

my rights from the day they wrongfully took my children!" *Id.* at 10.  Furthermore, "it's wrong

that Christopher Wheeler, who has raised" two of the children from August 23, 2019, until

February 24, 2021, "with out a problem is not allowed to see or talk to them just because he is a

registered sex offender but yet cps had no problems with my children being in his care from Feb

11th of 2020 til they were removed." *Id.*  "We had several cps cases called on us between that

time and IF cps believed they were in danger why didn't cps remove the kids then." *Id.*

Plaintiff seeks to "have the phone records from cps and the House of good shepard pulled

and listened to." *Id.*  She states "I just want to be able to get my children back and I want to get

paid for my pain and suffering I have been through.  I have ptsd from all of this nonsense!" *Id.*

IV.      STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action

is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §

1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter

jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in

original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding

of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or

the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1)

the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably

meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and

plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at

570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than

present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant

fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555

(internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the

court must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)

(citations omitted).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)

(citation and internal quotation marks omitted).  However, an opportunity to amend is not

required where "the problem with [the plaintiff's] causes of action is substantive" such that

"better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

### A.  Section 1983

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a

cause of action for 'the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F.

Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)

(quoting 42 U.S.C. § 1983)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a valid claim under § 1983, a plaintiff must allege the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  Even affording the complaint a liberal construction, Plaintiffs have failed to state a claim under § 1983 against any of the named defendants.

### 1.  Oneida County Sheriff Jennifer Bixlerond

The first defendant identified in the Plaintiffs' complaint is Jennifer Bixlerond.  Dkt. No. 1 at 2.  Plaintiffs indicate Bixlerond is employed by the Oneida County Sheriff's Department and they seek to hold her liable in her official capacity.  *See id.*  Plaintiffs state "Jennifer Bixler was personally involved in the wrongful actions of" two of Shibley's children "being removed from my care." *Id.* at 4.

"[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield.*, 404 F.3d 683, 687 (2d Cir. 2005); *see also*, *e.g.*, *Polinski v. Oneida Cnty. Sheriff*, No. 6:23-CV-0316 (DNH/ML), 2023 WL 2988753, at *5 (N.D.N.Y. Apr. 18, 2023) ("A claim against [an] Oneida County Sheriff in his official capacity, is essentially a suit against the Oneida County Sheriff's Department.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)), *report and recommendation adopted*, 2023 WL 3344060 (N.D.N.Y. May 10, 2023), *appeal dismissed*, No. 23-867, 2023 WL 8357375 (2d Cir. Oct. 12, 2023).  However, a

municipality such as Oneida County may be "liable under section 1983 only if the deprivation of

the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of

the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)) (additional citation

omitted).

   "The policy or custom need not be memorialized in a specific rule or regulation," *Kern v.

City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citations omitted), and "may be pronounced or

tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir.

2011). Municipal liability under *Monell* may be established by way of:

> (1) a policy formally adopted and endorsed by the municipality; (2)
> actions taken by policymaking officials that caused the particular
> deprivation alleged; (3) practices by subordinate officials that are
> not expressly authorized but are so widespread and consistent that
> policymakers must have been aware of them; or (4) a failure by
> policymakers to train or supervise that amounts to "deliberate
> indifference" to the rights of those who come into contact with the
> inadequately trained or supervised municipal employees.

*Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of

Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (Summary Order)) (additional citation omitted).

"Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then

establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of

his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*,

768 F.2d 40, 44 (2d Cir. 1985)).

   In the instant complaint, Plaintiffs have failed to identify any municipal policy or custom

or allege facts plausibly suggesting a basis for municipal liability. Therefore, they have failed to

state a viable *Monell* claim, and dismissal as to Bixlerond is warranted. *See*, *e.g.*, *Polinski*, 2023

WL 2988753, at *5-7.

## 2. Department of Social Services, Grade B Supervisor

The complaint next identifies as a defendant the "Department of Social Services." Dkt.
No. 1 at 2. Yet, "Grade b Supervisor" is listed as the department's "Job or Title" and the
complaint references "Grade B supervisor . . . Laurie Ellis." *Id*. at 4; *see also id*. at 9.
Irrespective of whether Plaintiffs intend to pursue a claim against the Oneida County DSS or
Ellis in her official capacity, however, the complaint fails to state a viable claim.

"Under New York law, a department of a municipal entity is merely a subdivision of the
municipality and has no separate legal existence. Therefore, municipal departments like the
Department of Social Services are not amenable to suit . . . and no claims lie directly against the
Department." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999)
(citations omitted). Further, as explained above, Plaintiffs have failed to allege facts plausibly
suggesting a basis for municipal liability as to Oneida County. *See supra* Section V.A.1.
Therefore, to the extent Plaintiffs intend to state a claim against the Oneida County DSS,
dismissal is warranted. *See*, *e.g.*, *White v. Syracuse Police Dep't*, No. 5:18-CV-1471
(GTS/DEP), 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) ("I would ordinarily recommend
that, for the sake of judicial efficiency, the court substitute the . . . [municipality] in place of the"
municipal department, however, because the "plaintiff's complaint contains no factual
allegations that would support a *Monell* claim against the" municipality, "I recommend dismissal
of plaintiff's claims asserted against the" department.), *report and recommendation adopted*,
2019 WL 974824 (N.D.N.Y. Feb. 28, 2019).

Alternatively, to the extent Plaintiffs intended to state a claim against Oneida County
DSS Supervisor Laurie Ellis in her official capacity, as explained above, "a § 1983 suit against a
municipal officer in his official capacity is treated as an action against the municipality itself."

9

*Coon*, 404 F.3d at 687.  Therefore, the Plaintiffs' failure to identify a basis for municipal liability

as to Oneida County also precludes a viable claim against the County DSS Supervisor in her

official capacity.  *See supra* Section V.A.1; *see also*, *e.g.*, *Welch v. Fitzgerald*, No. 5:18-CV-

0461 (MAD/ATB), 2018 WL 6173796, at *6 (N.D.N.Y. May 16, 2018), *report and*

*recommendation adopted*, 2018 WL 4795759 (N.D.N.Y. Oct. 4, 2018).  Additionally, Laurie

Ellis "is not named or identified in the caption or list of parties" as a defendant, therefore, any

claim against her in her individual or official capacity would be subject to dismissal for failure to

state a claim.  *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 125 (N.D.N.Y. 2023).

### 3.  Mohawk Valley Community Action Agency

The third defendant listed in the complaint is the Mohawk Valley Community Action

Agency daycare center.  Dkt. No. 1 at 3.  Plaintiffs seek to hold this defendant liable in its

official capacity.  *See id*.  However, Plaintiffs have not alleged the entity is a state actor for

purposes of § 1983, nor have they asserted any facts which would permit the Court to draw that

inference.  *See id*. at 3-10.  Indeed, the sole factual assertion concerning this defendant is that

"[t]here were multiple times that Mohawk Valley Community Action Agency were involved in

calling CPS to have my children removed."  *Id*. at 4.  Accordingly, the undersigned recommends

dismissal of the complaint as to the Mohawk Valley Community Action Agency.  *See Fabrikant*

*v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (explaining, "[b]ecause the United States

Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct

constitutes state action.") (citation omitted); *see also*, *e.g.*, *Burgdorf v. Betsy Ross Nursing &*

*Rehab. Ctr. Inc.*, No. 6:22-CV-0987 (DNH/ATB), 2023 WL 112092, at *5 (N.D.N.Y. Jan. 5,

2023) (recommending dismissal of § 1983 claims against three entities where the plaintiff had

"not alleged any facts suggesting that these entities are state actors under any of the aforementioned exceptions, or describing how their actions are otherwise fairly attributable to the state.") (internal quotations omitted), *report and recommendation adopted*, 2023 WL 418045 (N.D.N.Y. Jan. 26, 2023).

### 4.   Heidi Garber

The final defendant listed in the complaint is Heidi Garber, in her individual capacity. Dkt. No. 1 at 3.  Plaintiffs state Garber worked as a babysitter, *see id*., and allege she "abused" two of the children, admitted such conduct to Plaintiff(s), and "refused to take" a "lie detector test" regarding the incident, *id*. at 5, 8.  However, Plaintiffs do not assert any facts from which the Court could conclude Garber is a state actor or that her alleged actions are fairly attributable to the state.  Therefore, the undersigned recommends dismissal of the complaint as to Heidi Garber.  *See supra* Section V.A.1; *see also Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (Summary Order) ("private individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law.").

### B.   *Younger* Abstention,[4] *Rooker-Feldman*,[5] and the Domestic Relations Exception

Next, from what the undersigned can glean, Plaintiffs seek both monetary damages and custody of Shibley's four children.  *See* Dkt. No. 1 at 6, 8-10.  Although the nature of Plaintiffs' complaint makes it difficult to determine which of the following doctrines apply, based on the relief sought, this Court likely lacks jurisdiction to hear and/or should abstain from hearing the Plaintiffs' claims.

---

[4] *See generally*, *Younger v. Harris*, 401 U.S. 37 (1971).

[5] *See generally*, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

"[I]n the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id*. (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).

Courts in this circuit have found these conditions to be satisfied in matters involving issues of child custody. *See*, *e.g.*, *Walker*, 2022 WL 2341420, at *6 (collecting cases applying the *Younger* abstention doctrine in the context of child custody disputes). Therefore, to the extent Plaintiffs' claims involve a "custody dispute [that] is continuing in New York State Family Court, this Court should abstain from interfering with that process." *Id*.; *see also Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 17418268, at *6 (N.D.N.Y. Oct. 5, 2022) ("It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention . . . . However, 'the heart of this case is a child custody dispute, a matter rightfully reserved for state courts.'") (citing *McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).

Alternatively, to the extent the Plaintiffs' claims concern a state court proceeding which has concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See*, *e.g.*, *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022); *Walker*, 2022 WL 2341420, at *6. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)) (additional citations omitted), *report and recommendation adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024). "The doctrine also bars the federal court from considering claims that are 'inextricably intertwined' with a prior state court determination." *Amato*, 2022 WL 226798, at *10 (citing *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)) (additional citation omitted).[6]

"There is no question that *Rooker-Feldman* bars . . . challenges to" a state "family court's decisions regarding child custody . . . ." *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002). Accordingly, to the extent Plaintiffs seek, in effect, an appeal from an unfavorable state court custody judgment, any such claim is barred. *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *Walker*, 2022 WL 2341420, at *6.

Furthermore, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside of this Court's jurisdiction.

---

[6] *See also*, *Amato*, 2022 WL 226798, at *11 (explaining, "[t]he *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered.") (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

*See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also*, *Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017) ("Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.") (collecting cases), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). "Therefore, insofar as the present *pro se* Complaint seeks the restoration of custody over her son, the federal courts lack jurisdiction to hear that claim, and it should be dismissed." *Reeves v. Dep't of Children, Youth & Families*, No. 1:20-CV-0987 (BKS/DJS), 2020 WL 5898866, at *3 (N.D.N.Y. Sept. 4, 2020) (citation omitted), *report and recommendation adopted*, 2020 WL 5891564 (N.D.N.Y. Oct. 5, 2020).

### C. Additional Deficiencies

Finally, notwithstanding the aforementioned issues, the complaint suffers from additional defects. First, while Christopher Wheeler, Sr., is listed as a plaintiff and has submitted an IFP application, he has not signed the compliant. *See generally*, Dkt. Nos. 1, 4. Thus, the complaint violates Federal Rule of Civil Procedure 11(a) and Northern District of New York Local Rule 10.1(c)(2). *See, e.g.*, *Boyle v. Town of Hammond*, No. 7:08-CV-1065 (TJM/GJD), 2008 WL 11416992, at *1 (N.D.N.Y. Oct. 24, 2008) (explaining, *pro se* plaintiff "James F. Boyle may not represent any of the other individuals that he lists as plaintiffs. Those individuals could have signed the complaint and appeared as *pro se* plaintiffs, but James F. Boyle may not sign the complaint for them or proceed on their behalf."), *aff'd*, 375 F. App'x 85 (2d Cir. 2010); *Goode v. Halderman*, No. 3:11-CV-1461, 2011 WL 6122960, at *1 n.1 (D. Or. Dec. 9, 2011) ("the Complaint, while purportedly brought by [two individuals], was signed only by [one of the plaintiffs] . . . . a *pro se* Plaintiff may not bring an action on behalf of another; instead, both *pro*

*se* Plaintiffs must sign every pleading or other document submitted to the Court.") (citing Fed. R. Civ. P. 11(a)); N.D.N.Y. L.R. 10(c)(2).

The complaint also falls short of the pleading requirements set forth in Federal Rules 8 and 10.  Rule 8 requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Each statement must be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and provide "fair notice of the claims asserted." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (Summary Order) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  "A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"  *Id.* (quoting *Simmons*, 49 F.3d at 86 (2d Cir. 1995)).

Moreover, Rule 10 provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  The Rule's purpose is "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Clervrain v. Robbins*, No. 1:22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense, "provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims[,]" and may properly be dismissed.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  Therefore, dismissal of the instant complaint on this basis would also be appropriate.  *See*, *e.g.*, *Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *4 (N.D.N.Y. Mar. 20, 2024) (recommending "dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and

because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear."), *report and recommendation adopted*, No. 5:23-CV-1266, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024).

### D.  Leave to Amend

Although the Court has serious doubts, it is not clear whether Plaintiffs could assert a cognizable cause of action against the Defendants by way of a better pleading.  Therefore, out of an abundance of caution and in deference to the Plaintiffs' *pro se* status, the undersigned recommends the action be dismissed without prejudice and with leave to amend.  If Plaintiffs chose to avail themselves of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which they rely to support any legal claims asserted, which Plaintiffs have a legal right to pursue, and over which this Court has jurisdiction.  Of course, Plaintiffs may also pursue their claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiffs' motions to proceed IFP (Dkt. Nos. 3, 4) are **GRANTED**,[7] and it is further

**RECOMMENDED** that the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiffs a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[7] Although their applications to proceed IFP have been granted, Plaintiffs will still be required to pay fees that they may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: July 16, 2024
　　　　 Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[8] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

2023 WL 2988753
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Peter Joseph POLINSKI, Plaintiff,

v.

ONEIDA COUNTY SHERIFF, in his official
and individual capacities; Comptroller of City
of Utica, William Moorehouse; KeyBank of the
City of Utica; and City of Utica, Defendants.

6:23-CV-0316 (DNH/ML)
|
Signed April 17, 2023
|
Filed April 18, 2023

**Attorneys and Law Firms**

PETER JOSEPH POLINSKI, Plaintiff, Pro Se, 5735
Cavanaugh Road, Suite 614, Marcy, New York 13403.

ZACHARY OREN, ESQ., Assistant Corp. Counsel,
CORPORATION COUNSEL – CITY OF UTICA, Counsel
for Defendants Comptroller of the City of Utica and City of
Utica, 1 Kennedy Plaza, 2nd Floor, Utica, New York 13502.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* amended complaint in
the above captioned action together with an application to
proceed *in forma pauperis* filed by Peter Joseph Polinski
("Plaintiff") to the Court for review. (Dkt. Nos. 2, 4.)
For the reasons discussed below, I grant Plaintiff's *in
forma pauperis* application and recommend that Plaintiff's
Amended Complaint be dismissed in its entirety. (Dkt. Nos.
2, 4.)

**I. BACKGROUND**

On March 9, 2023, Plaintiff commenced this action by filing a
*pro se* Complaint against defendants Oneida County Sheriff,
Comptroller of City of Utica, KeyBank of the City of Utica,
and City of Utica (collectively "Defendants"). (Dkt. No. 1.)
On March 17, 2023, Plaintiff filed an amended complaint as of
right, which supersedes his original complaint. (*See* Dkt. No.

4 [Am. Compl.].); *Int'l Controls Corp v. Vesco*, 556 F.2d 665,
668 (2d Cir. 1977) ("It is well established that an amended
complaint ordinarily supersedes the original, and renders it of
no legal effect."). Thus, presently before the undersigned for
review pursuant to 28 U.S.C. § 1915, is Plaintiff's Amended
Complaint. (Dkt. No. 4.)

The Amended Complaint is thirty-one pages with an attached
exhibit that is ninety-five pages in length. (*See generally*
Dkt. No. 4.) The Amended Complaint and its attachment are
predominantly a series of incoherent text, devoid of factual
assertions. (*Id.*)

Although not clear from the Amended Complaint,
Plaintiff appears to allege that on October 31, 2022, he
provided checks to "THE CITY OF UTICA FINANCE
DEPARTMENT OFFICE OF THE COMPTROLLER" but
that those payments were "fraudulently transferred by
[Defendants] the Comptroller of Utica and Key Bank." (Dkt.
No. 4 at 8.)

The Amended Complaint alleges that on March 1, 2023, two
Oneida County Sheriffs went to Plaintiff's parents' home,
where Plaintiff does not live. (*Id.*) Plaintiff alleges that, on
March 1, 2023, he explained to an Oneida County Sheriff that
"the instruments were legal tender and that the instruments
needed to go to the Treasury Window" and "the authority
behind the negotiable instrument law." (Dkt. No. 4 at 9.)

Plaintiff alleges that on March 7, 2023, his father (Peter
Anthony Polinski) received a phone call (from an unspecified
individual) "menacing and harassing him with threats of
violence, to kidnap his son with an unlawful arrest." (Dkt. No.
4 at 8-9.)

Plaintiff's Amended Complaint lists numerous statutes,
contains biblical references, and refers to, *inter alia*, the
Magna Carta, the 1620 Mayflower Compact, and the 1689
English bill of rights. (*See generally* Dkt. No. 4; Dkt. No. 4
at 7.) Notwithstanding, the Amended Complaint references
the following thirteen "counts" that appear to be Plaintiff's
claims: (1) a claim that Defendants violated Plaintiff's
constitutional rights under color of law pursuant to 42 U.S.C.
§ 1983; (2) a claim that Defendants conspired to interfere
with Plaintiff's civil rights pursuant to 42 U.S.C. § 1985; (3) a
claim of conspiracy against Defendants pursuant to 18 U.S.C.
§ 241; (4) a claim of deprivation of rights under color of
law against Defendants pursuant to 18 U.S.C. § 242; (5) a
claim that Defendants interfered with commerce pursuant to

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

18 U.S.C. § 1951; (6) a claim that Defendants conspired to commit an offense or defraud the United States pursuant to 18 U.S.C. § 371; (7) a claim that Defendants refused to pay as evidence of embezzlement pursuant to 18 U.S.C. § 3487; (8) a claim that Defendants committed the misdemeanor of menacing in the third degree in violation of N.Y. Penal Law § 120.15; (9) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. 1961; (10) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 875; (11) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 471; (12) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 641; and (13) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 115. (Dkt. No. 4 at 25-27.)

**\*2** As relief, Plaintiff seeks damages in the amount of \$39,000,000.00 from each Defendant for a total of \$195,000,000.00 in compensatory damages, treble punitive damages, a "permanent injunction and restraining order ... requiring Defendants to adopt appropriate policies related to the hiring and supervision of its police officers ... who are ... depriving [Plaintiff] of his Constitutional Rights"; and such other relief as may be just and proper. (Dkt. No. 4 at 29-30.)

Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at \$402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [2]

[1]     The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who

can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]     Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed, notwithstanding payment of the filing fee. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at \*1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

**\*3** Plaintiff's Amended Complaint is nearly impossible to decipher. (*See generally* Dkt. No. 4.) The Amended Complaint is replete with pseudo-legal jargon of the kind typically used by litigants who affiliate themselves with the sovereign citizen movement. (*Id.*) The sovereign citizen movement is "a loosely affiliated group who believe that the

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 20 of 147

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior; the FBI has labeled the sovereign citizens a domestic terrorist group." *United States v. Ulloa*, 511 F. App'x 105, 107 (2d Cir. 2013).

I recommend dismissal of Plaintiff's Amended Complaint because it is frivolous. By way of example, the Amended Complaint states the following:

> By the grace of God almighty, and through the supremacy clause of the Constitution (Article VI Clause 2 & 3) and the below-listed treaties of supreme law, it is I alone, who shall determine my status, standing, honor and jurisdiction. I hereby invoke and stand upon all my natural rights, given by my God, which are written in the documents listed below. These, and all others, are universally known as supreme law of the land:

(Dkt. No. 4 at 7.)

"People who identify as sovereign citizens use maneuvers like [a] notary presentment to avoid paying debts or to collect debts that are not actually owed." *Balash-Ioannidou v. Contour Mortg. Corp.*, 22-CV-4506, 2022 WL 3358082, at *2 (E.D.N.Y. Aug. 15, 2022) (citing *Kesick v. Ulloa*, 10-CV-1248, 2012 WL 2873364, at *3 (N.D.N.Y. July 12, 2012) (McAvoy, J.) (the plaintiff filed fraudulent papers entitled "notary presentment" with the Town of Ulster Justice Court falsely claiming that a Justice of the Ulster Town Court owed him the sum of $176,000,000.00); *McKay v. U.S. Bank*, 14-CV-0872, 2015 WL 5657110, at *2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon their mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank)); *see Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) (D'Agostino, J.) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources.") (collecting cases).

As a result, I recommend that Plaintiff's Amended Complaint be dismissed as frivolous.

In the alternative, I recommend that Plaintiff's Amended Complaint be dismissed in its entirety (a) in part for failure to state a claim upon which relief may be granted, and (b) in part for lack of standing.

### A. Plaintiff's Claims Asserting Various New York State and Federal Criminal Provisions

To the extent that Plaintiff attempts to assert claims pursuant to New York State Penal Law § 120.15, and 18 U.S.C. §§ 115 (Influencing, Impeding, or Retaliating Against a Federal Officer), 241 (Conspiracy against Rights), 242 (Deprivation of Rights under Color of Law), 371 (Conspiracy to Commit Offense or to Defraud the United States), 471 (Obligations or Securities of United States), 641 (Public Money, Property or Records), 875 (Interstate Communications), and 1951 (Interference with Commerce by Threats or Violence), I recommend that those claims be dismissed because Plaintiff lacks standing to pursue them.

There is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes.").

**\*4** As a result, I recommend dismissal of all of Plaintiff's claims that are premised on alleged violations of federal or state criminal laws. *See Walsh v. Krantz*, 386 F. App'x 334, 336 (3d Cir. 2010) (affirming district court dismissal that found there was no "private right of enforcement" for violations of 18 U.S.C. § 875); *Lawton v. Wells Fargo Bank, N.A.*, 22-3294, 2023 WL 2539000, at *4 (E.D. Pa. Mar. 16, 2023) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) (no cause of action for forgery); *McCann v. Falato*, 14-4869, 2015 WL 6445859, at *3 (D.N.J. Oct. 23, 2015) (no cause of action under 18 U.S.C. § 371)) (dismissing the plaintiff's

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

claims pursuant to 18 U.S.C. §§ 371, 471 because those "are criminal statutes that do not contain private rights of action."); *Allen v. FMR LLC*, 23-CV-0031, 2023 WL 142903, at *2 (D. Ariz. Jan. 10, 2023) (dismissing the plaintiff's claims pursuant to 18 U.S.C. §§ 471, 641 because "these are criminal statutes and do not create any private right of action."); *Isaacs v. Steven Allen Isaacs*, 21-CV-1912, 2022 WL 18492546, at *4 n.7 (M.D. Fla. Oct. 27, 2022) (citing *Pompura v. Paxton*, 16-CV-1099, 2016 WL 11586260, at *3 (W.D. Tex. Sept. 30, 2016)) (finding that 18 U.S.C. § 641 does not provide for a private right of action and collecting cases)) (dismissing the plaintiff's claims for lack of subject matter jurisdiction and noting that "several of the federal statutes Plaintiff references do not provide private causes of action."); *Hall v. Sampson*, 21-CV-4839, 2022 WL 2068248, at *2 n.2 (E.D. Pa. June 8, 2022) (collecting cases) (holding that the plaintiff cannot bring criminal charges against the defendants through a private lawsuit and that claims pursuant to, *inter alia*, 18 U.S.C. §§ 241, 371 do not give rise to a civil cause of action); *Barnaby v. Michigan State Gov't*, 22-CV-1146, 2022 WL 19005214, at *4 (W.D. Mich. Dec. 14, 2022) (dismissing the plaintiff's claim pursuant to 18 U.S.C. § 471 because it is a criminal statute that does "not provide a private right of action."); *Ojeda v. Mendez*, 20-CV-3910, 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (quoting *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)) (holding that 18 U.S.C. § 1951 is a federal criminal statute, which may be "prosecuted by the Federal Government, not ... by private complaints," but noting that it is a predicate act for purposes of a RICO violation and thus, the allegations may be relevant to the surviving RICO claim); *Lewis v. Soc. Sec. Admin.*, 20-CV-9277, 2020 WL 6647424, at *3 (S.D.N.Y. Nov. 10, 2020) (dismissing as frivolous the plaintiff's claim pursuant to, *inter alia*, 18 U.S.C. § 1951 because it seeks to prosecute the defendant for violations of the Hobbs Act); *Patterson v. Patterson*, 16-CV-0844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) (quoting *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009)) ("Courts within this Circuit have accordingly held consistently that criminal charges under New York law 'cannot be prosecuted by a private person.' "); *Brett v. Rodriguez*, 15-CV-2366, 2016 WL 3704917, at *3-4 (M.D. Pa. Mar. 21, 2016) (finding that 18 U.S.C. § 115, as a criminal statute, does not create a private right of action); *Walthour v. Herron*, 10-01495, 2010 WL 1877704, at *2 (E.D. Pa. May 6, 2010) (recognizing no private right of action under, *inter alia*, 18 U.S.C. §§ 241, 371).

As a result, I recommend that, in the alternative, Plaintiff's claims pursuant to New York State Penal Law § 120.15, and 18 U.S.C. §§ 115, 241, 242, 371, 471, 641, 875, and 1951, be dismissed because Plaintiff lacks standing to pursue them.

**B. Claim Pursuant to 42 U.S.C. § 1983**

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

**1. Defendant Key Bank**

Generally, private parties are not state actors, and are not liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties...." ) (internal quotation marks and citations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

**\*5** With respect to Defendant Key Bank of the City of Utica, the Amended Complaint fails to allege facts plausibly suggesting that it is a state actor or that it collaborated with a state entity to deprive Plaintiff of a constitutional right.

Case 6:24-cv-00722-BKS-TWD Document 10 Filed 07/16/24 Page 22 of 147

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Key Bank be dismissed for failure to state a claim upon which relief may be granted.

### 2. Defendants Oneida County Sheriff, Comptroller of the City of Utica, and City of Utica

Although Defendants Oneida County Sheriff, Comptroller of the City of Utica, and City of Utica are state actors for purposes of liability pursuant to 42 U.S.C. § 1983, the extremely terse allegations in the Complaint fail to allege that they violated Plaintiff's rights under any statute or constitutional provision.

### a. Defendant Oneida County Sheriff

A claim against the Oneida County Sheriff in his official capacity, is essentially a suit against the Oneida County Sheriff's Department.[3] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)("An official capacity suit against a public servant is treated as one against the governmental entity itself.").

[3] It is unclear at this juncture whether Plaintiff's claims against Defendant Oneida County Sheriff in his official capacity, should be deemed as claims against the County of Oneida or the Oneida County Sheriff's Department. *Compare Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) ("It is well settled that an entity such as the Suffolk County Police Department is an 'administrative arm' of the same municipal entity as Suffolk County and thus lacks the capacity to be sued."), *and Krug v. Cty. of Rensselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.) ("A city police department is not an independent, suable entity separate from the municipality in which the police department is organized."), *with DiJoseph v. Erie Cnty.*, 18-CV-0919S, 2020 WL 4194136, at *8 (W.D.N.Y. July 21, 2020) (noting that "[u]nder New York State Constitution article XIII, § 13(a) a county cannot be made liable for the acts of its sheriff" and finding that the

County—absent a local law agreeing to assume liability for the Sheriff's actions—is not the proper defendant in a claim pursuant to 42 U.S.C. § 1983 against the Sheriff). However, this distinction is immaterial for purposes of this Order and Report-Recommendation.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

**\*6** Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Here, the Amended Complaint fails to allege facts plausibly suggesting a basis for municipal liability. Plaintiff appears to complain of a single incident, during which the officers did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with the deputies of the Oneida County Sheriff's Department who allegedly interacted with Plaintiff and his father on March 1, 2023.

To the extent that Plaintiff asserted a claim pursuant to 42 U.S.C. § 1983 against the Oneida County Sheriff in his individual capacity, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618. [4] The Second Circuit explained that, " 'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id.* (quoting *Iqbal*, 556 U.S. at 676). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly." *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

[4]    Before *Tangreti*, various courts in the Second Circuit have postulated how, if at all, the *Iqbal* decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011) (Hurd, J.) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors), *rev'd on other grounds sub nom.*, *Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012) (summary order); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first part of the third *Colon* categories pass *Iqbal*'s muster...."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010)

(disagreeing that *Iqbal* eliminated *Colon's* personal involvement standard).

**\*7** Here, Plaintiff fails to allege facts plausibly suggesting any action taken by Defendant Oneida County Sheriff individually. (*See generally* Dkt. No. 4.) The Amended Complaint alleges that "two Oneida County sheriffs" went to his parents' house on March 1, 2023, where he does not live. (Dkt. No. 4 at 8-9.) However, there is only one Oneida County Sheriff, *see* N.Y. County Law § 650; *see generally DiJoseph v. Erie Cnty.*, 18-CV-919S, 2020 WL 4194136, at *8 (W.D.N.Y. July 21, 2020) ("A sheriff is an elected county officer."), thus, it appears that Plaintiff was referring to two deputies of the Oneida County Sheriff's Department. Further, in any event, the Amended Complaint does not allege that Plaintiff interacted with the employees of the Sheriff's Department who allegedly went to his parents' property. Moreover, Plaintiff fails to allege facts plausibly suggesting that these individuals violated his rights in any way. In addition, Plaintiff's allegation that he "explained to an Oneida County Sheriff that the instruments were legal tender" and "the authority behind the negotiable instrument" does not allege that his rights were violated by Defendants or any employee of the Oneida County Sheriff's Department. (Dkt. No. 4 at 9.)

As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Oneida County Sheriff in his individual and official capacities be dismissed for failure to state a claim upon which relief may be granted.

### b. Defendant Comptroller of the City of Utica

To the extent that Plaintiff asserts a claim against Defendant Comptroller of the City of Utica in his official capacity, it is essentially a claim against the City of Utica because the Comptroller is an arm of the City of Utica and is not amenable to suit. *See Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 380 (S.D.N.Y. 2007) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against [municipal] officials sued in their official capacity ... should be treated as suits against the [municipality].")); *see also Zuk v. Gonzalez*, 07-CV-0732, 2007 WL 2163186, at *2 (N.D.N.Y. July 26, 2007) ("[T]o the extent that Plaintiff has named the individual Defendants in their official capacities, he has in essence named Onondaga County ... as a Defendant.")).

Courts within the Second Circuit regularly dismiss with prejudice official-capacity claims against a public official

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 24 of 147
Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)
2023 WL 2988753

when the claims are duplicative of the claims against the governmental entity for which the official works. *See Kanderskaya v. City of N.Y.*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014) (dismissing with prejudice claims against a police officer sued in an official capacity "because they are duplicative of [the plaintiff's] other claims against [the municipality]") *aff'd*, 590 F. App'x 112 (2d Cir. 2015); *Quinn v. Gould*, 19-CV-0820, 2020 WL 1234553, at *4 (D. Conn. Mar. 13, 2020) ("[D]istrict courts within the Second Circuit consistently dismiss claims asserted against officials in their official capacities as duplicative where the plaintiff has named the municipal entity as a defendant.") (citations omitted).

As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his official capacity be dismissed as duplicative of his claim against Defendant City of Utica.

With respect to Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his individual capacity, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

As set forth above in Part IV.B.2.a. of this Order and Report-Recommendation, pursuant to the Second Circuit's holding in *Tangreti*, "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'" *Tangreti*, 983 F.3d at 618. The Amended Complaint alleges that Plaintiff "tendered payment to THE CITY OF UTICA FINANCE DEPARTMENT OFFICE OF THE COMPTROLLER" but that his payments were "fraudulently transferred ... under 18 U.S. Code § 648." (Dkt. No. 4 at 8.) This conclusory allegation fails to allege facts plausibly suggesting that Defendant Comptroller of the City of Utica took any action that violated Plaintiff's rights.

 **\*8** As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Comptroller of the City of Utica be dismissed for failure to state a claim upon which relief may be granted.

### c. Defendant City of Utica

As set forth above in Part IV.B.2.a. of this Order and Report-Recommendation, a municipality may be held liable pursuant to 42 U.S.C. § 1983 only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

The Amended Complaint fails to allege facts plausibly suggesting that the City of Utica's policies deprived Plaintiff of his constitutional rights. As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant City of Utica be dismissed for failure to state a claim upon which relief may be granted.

### C. Claim Pursuant to 42 U.S.C. § 1985

Although the Amended Complaint fails to specify which of § 1985's three subdivisions Plaintiff intends to invoke, only § 1985(3) is relevant here. [5]

[5] Section 1985(1) provides a damages action against two or more persons who conspire to prevent, by force, intimidation or threat, any federal officer from performing his or her official duties. Section 1985(2) provides a cause of action against two or more persons who conspire to obstruct justice in the federal courts by force, intimidation, or threat. None of the facts alleged in the Amended Complaint relate in any way to these causes of action.

"[T]o make out a violation of § 1985(3) ..., the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 103 S. Ct. 3352, 3356 (1983). A "conspiracy" requires, for purposes of Section 1985, "a plurality of actors committed to a common goal." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 456 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999).

In addition, a claim pursuant to Section 1985 requires that a plaintiff allege "some racial or [ ] otherwise class-based animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004). The Amended Complaint fails to allege any racial or class-based animus behind the alleged conspirators' action. (*See generally* Dkt. No. 4.) "When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under Section 1985 must be

2023 WL 2988753

dismissed." *Morpugo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010).

Here, Plaintiff does not allege any race or class-based animus behind Defendants' actions. Thus, Plaintiff does not sufficiently allege a conspiracy pursuant to 42 U.S.C. § 1985 between Defendants and/or others to deprive Plaintiff of any federally protected rights. As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1985 against Defendants be dismissed for failure to state a claim upon which relief may be granted.

### D. RICO (18 U.S.C. § 1691 et seq.) Claim [6]

[6]
 Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Amended Complaint (and his Complaint, which also appeared to assert a RICO claim [Dkt. No. 1 at 25-26]), Plaintiff has failed to file a Civil RICO statement. (*See generally* docket sheet.) As a result, I recommend that Plaintiff's RICO claim be dismissed. *See Poole v. Bendixen*, 20-CV-0697, 2021 WL 3737780, *12 (N.D.N.Y. Aug. 24, 2021) (Suddaby, C.J.); *Murphy v. Onondaga Cnty.*, 18-CV-1218, 2022 WL 819281, *6 (N.D.N.Y. Mar. 18, 2022) (Sharpe, J.).

**\*9** It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property 'by reason of a violation of section 1962.' " *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))), *vacated in part on other grounds by Weiss v. David Benrimon Fine Art LLC*, 20-CV-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order). More specifically, to

assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

The Amended Complaint fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. More specifically, Plaintiff fails to allege facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Amended Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *13 (E.D.N.Y. Sept. 24, 2013); *see also Peterson v. City of New York*, 11-CV-3141, 2012 WL 75029, at *3-4 (S.D.N.Y. Jan. 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

Moreover, I find that the Amended Complaint fails to allege facts plausibly suggesting a pattern of racketeering activity. 18 U.S.C. § 1961(5) (To sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other); *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) (To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' "). Although the Amended Complaint lists statutes that constitute "racketeering activity" (*see, e.g.*, Dkt. No. 4 at 26 [referring to 18 U.S.C. § 1951]), it fails to allege facts plausibly suggesting that Defendants engaged in those predicate acts. [7]

[7]
 For example, to demonstrate that Defendants engaged in extortion, Plaintiff must allege that

Defendants "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by ... extortion or attempt[ed] or conspire[d] so to do, or commit[ted] or threaten[ed] physical violence to any person or property in furtherance of a plan or purpose to do [so]." 18 U.S.C. § 1951; *see also McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992). Extortion is defined as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); *Entretelas Americanas S.A. v. Soler*, 19-CV-3658, 2020 WL 9815186, at *10 (S.D.N.Y. Feb. 3, 2020), *aff'd*, 840 F. App'x 601 (2d Cir. 2020), *as amended* (Jan. 7, 2021) (citation omitted). "[F]atal" to an extortion claim is "[t]he absence of allegations of force, violence or fear." *Entretelas Americanas*, 2020 WL 9815186, at *10 (collecting cases).

**\*10** For each of these alternative reasons, I recommend that Plaintiff's RICO claim be dismissed.

### E. Claim Pursuant to 18 U.S.C. § 3487

To the extent that Plaintiff attempts to assert a claim against Defendants pursuant to 18 U.S.C. § 3487, I recommend that it be dismissed. 18 U.S.C. § 3487 states that, "[t]he refusal of any person ... charged with the safe-keeping ... of the public money ... belonging to the United States, ... to transfer or disburse any such money, promptly, upon the legal requirement of any authorized officer, shall be deemed ... prima facie evidence of ... embezzlement." Thus, 18 U.S.C. § 3487 does not provide a private cause of action and relates solely to evidence sufficient to establish embezzlement.

As a result, I recommend that Plaintiff's claim pursuant to 18 U.S.C. § 3487 be dismissed.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the

plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

[8]

> *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Here, I find that leave to replead would be futile with respect to Plaintiff's claims pursuant to: (1) New York State and federal criminal provisions (including New York State Penal Law § 120.15, and 18 U.S.C. §§ 115, 241, 242, 371, 471, 641, 875, and 1951); (2) 18 U.S.C. § 3487; and (3) 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his official capacity, because the issues with those claims are substantive such that a better pleading will not cure them. *See Maretta-Brooks v. Comm'r of Soc. Sec.*, 22-CV-1261, 2023 WL 2655195, at *6 (N.D.N.Y. Mar. 27, 2023) (Lovric, M.J.) (recommending dismissal without leave to replead the plaintiff's claims alleging violations of criminal statutes "because the problem with those claims is substantive such that a better pleading will not cure it"); *Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at * (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (recommending dismissal without leave to amend the plaintiff's claims pursuant to 18 U.S.C. §§ 241, 242); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *5 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (dismissing without leave to amend the plaintiff's claims seeking to enforce New York State criminal statutes).

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 27 of 147

**\*11** Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim pursuant to (1) 42 U.S.C. § 1983 against Defendants (a) Key Bank of the City of Utica, (b) City of Utica, (c) Oneida County Sheriff in his official and individual capacities, and (d) Comptroller of the City of Utica in his individual capacity; (2) 42 U.S.C. § 1985 against Defendants, and (3) 18 U.S.C. § 1961 against Defendants, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Amended Complaint with respect to those claims.

If Plaintiff chooses to file a second amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such second amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Amended Complaint (Dkt. No. 4) as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED in the alternative** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 4) to the extent that it asserts claims based on (1) 42 U.S.C. § 1983 against Defendants (a) Key Bank of the City of Utica, (b) City of Utica, (c) Oneida County Sheriff in his official and individual capacities, and (d) Comptroller of the City of Utica in his individual capacity; (2) 42 U.S.C. § 1985 against Defendants, and (3) 18 U.S.C. § 1961 against Defendants, because it fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED in the alternative** that the Court **DISMISS WITHOUT PREJUDICE and WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 4) to the extent that it asserts claims based on New York State and federal criminal provisions (including New York State Penal Law § 120.15, and 18 U.S.C. §§ 115, 241, 242, 371, 471, 641, 875, and 1951) because Plaintiff lacks standing to pursue claims pursuant to those statutes; and it is further respectfully

**\*12 RECOMMENDED in the alternative** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 4) to the extent that it asserts claims based on (1) 18 U.S.C. § 3487 against Defendants; and (2) 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his official capacity, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

[9]
The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections [10] to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

10   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2988753

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   11

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 29 of 147

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)
2023 WL 3344060

2023 WL 3344060
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Peter Joseph POLINSKI, Plaintiff,

v.

ONEIDA COUNTY SHERIFF et al., Defendants.

6:23-CV-316
|
Signed May 10, 2023

**Attorneys and Law Firms**

PETER JOSEPH POLINSKI, Plaintiff, Pro Se, 5735
Cavanaugh Road, Suite 614, Marcy, NY 13401.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On March 9, 2023, *pro se* plaintiff Peter Joseph
Polinski ("plaintiff") filed this civil rights action alleging
that defendants Keybank, the Comptroller of Utica, the
City of Utica, and the Oneida County Sheriff's Office
were liable for their involvement in certain fraudulently
transferred payments. Dkt. No. 1. Along with his complaint,
plaintiff sought leave to proceed *in forma pauperis* ("IFP
Application"). Dkt. No. 2. Thereafter, plaintiff filed an
amended complaint as of right. Dkt. No. 4. Plaintiff then
moved for injunctive relief, Dkt. No. 8, which was denied,
Dkt. No. 11. The amended complaint was referred to
the assigned Magistrate Judge for an initial review of it
sufficiency. *Id.*

On April 18, 2023, U.S. Magistrate Judge Miroslav Lovric
granted plaintiff's IFP Application for the purpose of filing
and advised by Report & Recommendation ("R&R") that
the amended complaint be dismissed as frivolous or, in the
alternative, dismissed with limited leave to replead certain
claims but not others. Dkt. No. 13.

As Judge Lovric explained, plaintiff's amended complaint
was "replete with pseudo-legal jargon of the kind typically
used by litigants who affiliate themselves with the sovereign
citizen movement." Dkt. No. 13. While Judge Lovric's R&R
was under review by this Court, plaintiff filed another motion
for injunctive relief, Dkt. No. 14, and exhibits to his pleading,
Dkt. No. 15.

Plaintiff has also filed objections. Dkt. No. 16. Upon *de novo*
review of the portions to which plaintiff has objected, the
R&R is accepted and will be adopted in all respects. *See*
28 U.S.C. § 636(b)(1)(C). In particular, the Court agrees
with Judge Lovric's bottom-line conclusion: the amended
complaint is frivolous. [1] The pleading references everything
from the King James Version of the Holy Bible and Magna
Carta to the Geneva Conventions and the International
Covenant of Civil and Political Rights. What the pleading
does not do, however, is plausibly allege any facts that
might tend to show that the checks plaintiff claims to
have sent to the City of Utica's Comptroller's Officer were
"fraudulently transferred" to Keybank. Instead, the rest of
plaintiff's pleading quotes extensively from various legal
texts, treatises, and other documents, without articulating
any kind of statement, let alone a short and plain one, that
might entitle him to relief under the law—certainly not the
$585,000,000.00 in relief he has requested in the *ad damnum*
clause of his operative pleading.

[1]     Plaintiff's exhibits do not provide a basis to change
this conclusion. Dkt. No. 15.

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED as frivolous.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3344060

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1** This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND

Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application[1]

[1]    Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted.[3]

[2]    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

[3]    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

B. Sufficiency of Plaintiff's Complaint

Case 6:24-cv-00722-BKS-TWD Document 10 Filed 07/16/24 Page 31 of 147

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850

### 1. Governing Legal Standard

**\*2** Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or

factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-

Case 6:24-cv-00722-BKS-TWD Document 10 Filed 07/16/24 Page 32 of 147

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)
2019 WL 981850

CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure.[4]

[4] The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see*

*also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[5]     If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

---

End of Document     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 974824

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

[1]    The Court notes that, on January 11, 2019, Plaintiff
filed a letter from the City of Syracuse Citizen
Review Board dated December 31, 2018, outlining
its findings with respect to this matter. (Dkt. No.
10.) In its letter, the Citizen Review Board upheld

Plaintiff's claim for excessive force against "Det.
One," recommended a written reprimand against
that individual, and absolved "Det. Two," "Sgt.
One," and "Lt. One" from wrongdoing regarding
the use of excessive force. (*Id.*) The Court does not
liberally construe this letter as any sort of Objection
to the Report-Recommendation.

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini, and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

[2]    When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a "clear error"
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with**

2019 WL 974824

**leave to replead within THIRTY (30) DAYS** of the issuance of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended Complaint within the above-referenced thirty-day period, it shall be referred to Magistrate Judge Peebles for review; and it is further

**ORDERED** that, in the event Plaintiff does not file an Amended Complaint within the above-referenced thirty-day period, this action shall move forward with respect to his Fourth Amendment cause of action against Defendants Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk of the Court is directed to issue summonses and USM-285 forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 6173796

2018 WL 6173796
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Aaron WELCH, Sr., Plaintiff,

v.

Susan FITZGERALD, et al., Defendants.

5:18-CV-461 (MAD/ATB)
|
Signed 05/16/2018

**Attorneys and Law Firms**

Aaron Welch, Sr., Plaintiff pro se.

### ORDER and REPORT-RECOMMENDATION

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Aaron Welch, Sr. (Dkt. No. 1). Plaintiff has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 5, 6).[1] For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(I)-(iii).

1    Plaintiff originally submitted an incomplete application to proceed IFP. (Dkt. No. 2). Based upon the defects in his application, the Honorable Mae A. D'Agostino ordered administrative closure of the action until plaintiff filed his properly completed form. (Dkt. No. 4). The case was reopened for initial review after plaintiff filed a completed IFP application. (Dkt. No. 7).

### I. IFP Application/Representation

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 5). This court agrees and finds that plaintiff is financially eligible to proceed IFP. To the extent that parts of the complaint may be read as an attempt by plaintiff to bring this action on behalf of himself and his three minor children, AAW, ALW, and ABW, it is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself.[2] (Compl. ¶ 9). *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d

Cir. 2007). *See also* 28 U.S.C. § 1654. Therefore, plaintiff may not represent any of his minor children in this action, or apply for IFP status on their behalf.[3] *Armatas v. Maroulleti*, 484 F. App'x 576, 577 (2d Cir. 2012); *Tindall v. Poultney High School Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). The court will proceed to consider the complaint only as it applies to plaintiff.

2    Plaintiff did not include his children as parties in the caption of this proceeding, or seek any monetary relief on their behalf. However, he alleges the deprivation of the rights of AAW, ALW, and ABW in his second, fourth, and fifth causes of action. (Compl. ¶¶ 26, 28, 29).

3    *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b) ). The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.*

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (I) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(I)-(iii).

**\*2** In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 6173796

a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

The court will attempt to summarize the claims that plaintiff may be making, keeping in mind that great liberality must be shown to pro se plaintiffs. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Plaintiff names six defendants. Three of the defendants are social workers or supervisors for the Schenectady County Department of Social Services ("DSS"): Susan Fitzgerald, Susana Hurley, and Amy Hochmuth. (Compl. ¶¶ 3-5). Two of the defendants are clerks of the Schenectady County Family Court: Denise Riggi (Chief Clerk) and Lawrencia Colon (Deputy Clerk). Plaintiff has also named the County of Schenectady as a defendant.

Plaintiff's three minor children are currently in the physical custody of their mother, Amber Foley. (Compl. ¶ 9-10). In May 2013, defendants Fitzgerald and Hurley initiated a neglect proceeding against Ms. Foley. (Compl. ¶ 10). Plaintiff was not named as a party to the proceeding, but was listed as the childrens' father on the petition to the court. (*Id.*) Plaintiff alleges that, as part of this neglect proceeding, defendants Fitzgerald and Hurley "purposefully set a condition within a court order ... prohibiting Amber Foley from allowing the minor children to have any contact with the Plaintiff...." (Compl. ¶¶ 10-11). Plaintiff has not included a copy of the order with his complaint.

Plaintiff has been incarcerated at the Great Meadow Correctional Facility since at least August 2014. (Compl. ¶¶ 2, 12). He contends that officials at the New York State Department of Corrections ("DOCCS") were provided a copy

of the May 2013 "court order," and interpreted it as "an Order of Protection enjoining contact between the children and their father." [4] (Compl. ¶¶ 12-13). He also alleges that when Ms. Foley filed an April 2015 petition in New York State Family Court to modify the visitation restrictions, that Ms. Foley was advised by "Family Court, Schenectady County" that "there was no Order prohibiting the children from visiting Plaintiff in prison." (Compl. ¶ 13). Despite this, plaintiff's children have still been prohibited from visiting him. (*Id.*)

4  No DOCCS official is named as a defendant in this action.

**\*3** Seeking restoration of his visitation rights by DSS, plaintiff corresponded with defendants Fitzgerald and Hurley. (Compl. ¶ 14). In this correspondence, he expressed his concerns that Ms. Foley or others may be abusing the children. (*Id.*) Defendants Fitzgerald and/or Hurley responded via "form letters," advising him to "contact an attorney" because they "could not give him legal advice." (Compl. ¶ 14-15). Plaintiff also filed multiple petitions for visitation in Schenectady County Family Court. (Compl. ¶ 16-17). Defendant Hurley opposed these petitions, and to date, the family court has denied all of plaintiff's requests. (*Id.*).

Plaintiff contacted defendants Hurley and Hochmuth regarding new neglect and abuse allegations against Ms. Foley in October 2016 and March 2017. (Compl. ¶¶ 18-20). He alleges that defendants Hurley and Hochmuth failed to investigate or otherwise act on these claims. (*Id.*) In November 2016, plaintiff filed a "family offense petition" in Schenectady County Family Court against Ms. Foley. (Compl. ¶ 20). Family Court Judge Mark Powers dismissed this petition without prejudice on February 3, 2017, but allegedly forwarded the matter to Child Protective Services for investigation. (*Id.*) Unsatisfied with this result, plaintiff filed another neglect petition on or about March 9, 2017. (Compl. ¶ 21). Although it is unclear from the complaint, plaintiff implies that this March 2017 petition is still pending.

Plaintiff alleges that defendent Hochmuth misrepresented facts to the court during these proceedings, by stating that plaintiff had "no concerns" about visitation and "that there were no visitation or custody petitions pending." (Compl. ¶ 22). He also alleges that defendant Hochmuth told plaintiff that he "was in a maximum security prison" so "his opinions were irrelevant." (*Id.*)

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 6173796

During the pendency of these family court proceedings, plaintiff sent repeated correspondence to defendants Riggi and Colon of the Family Court clerk's office, including requests under the New York State Freedom of Information Law ("FOIL") seeking the addresses of his children. (Compl. ¶ 24). He also alleges that he filed "several custody enforcement petitions" with the Family Court clerk's office. (*Id.*) He states that as of the date of the filing of this federal complaint, "[d]efendant Riggi and [d]efendant Colon have not tendered a response to either [FOIL] request, nor his letter requesting the address of his children, nor has there been any action on his custody enforcement petitions." (*Id.*)

Plaintiff contends that defendants Fitzgerald, Hurley, and Hochmuth deprived him of procedural and substantive due process by interfering with his parental visitation rights, by telling him that they could not give him legal advice, and by suggesting that he contact an attorney. (Compl. ¶¶ 25, 27, 28). He also alleges that they violated his right to equal protection by failing to "professionally carry out their duties in a manner consistent with other cases" because of his status as an inmate. (Compl. ¶ 28). He further alleges that these wrongful acts were a "common practice" endorsed by the County of Schenectady. (Compl. ¶ 28, 30). Plaintiff also contends that defendants Riggi and Colon deprived him of procedural due process and access to the courts by failing to respond to his FOIL requests, and by intentionally withholding information regarding his children's address. (Compl. ¶ 31). Plaintiff has requested monetary relief, and "injunctive relief" in the form of "immediate termination" of defendants Hurley, Fitzgerald, and Hochmuth by the County of Schenectady. (Compl. ¶¶ 32-34).

### III. Due Process

#### A. Legal Standards

**\*4** A parent's interest in the custody of his or her child is a constitutionally protected liberty interest, subject to due process protection. *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103-104 (2d Cir. 1999) (citing inter alia *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir. 1992) ). The "integrity" of the family has also received protection under the Equal Protection Clause and the Ninth Amendment.[5] *Id.* (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ). Notwithstanding the existence of this constitutional right, there is no constitutional right to an investigation by government officials. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 762 (2005). In addition, the failure of defendants to meet local or professional standards, without more, should not generally be elevated to the level of a constitutional violation. *Wilkinson*, 182 F.3d at 106 (citing *Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998) ) (the fact that DSS employees violated New York law does not necessarily give rise to a federal civil rights claim). Even a faulty investigation does not necessarily rise to the level of an unconstitutional investigation. *Id.* (citing van *Emerik v. Chemung County Dep't of Soc. Svcs.*, 911 F.3d 863, 866 (2d Cir. 1990) ).

[5] Plaintiff does not assert the Ninth Amendment as a basis for his action, and it would not be applicable in this case. The Ninth Amendment does not independently secure any constitutional rights that could support a section 1983 claim. *Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir.), *cert. denied*, 565 U.S. 881 (2011). The Ninth Amendment refers only to "unenumerated" rights, while claims under section 1983 must be based on specific constitutional guarantees. *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006). The Ninth Amendment does not apply in plaintiff's case.

#### B. Application

Plaintiff has alleged that defendants Fitzgerald, Hurley, and Hochmuth violated his procedural due process rights, but has failed to offer any facts to support this claim. As set forth in his complaint, plaintiff's visitation rights were allegedly terminated by a May 2013 court order, rather than any immediate action by defendants Fitzgerald, Hurley, and Hochmuth. (Compl. ¶ 10). Likewise, the denial of plaintiff's subsequent petitions for visitation and other relief have been or will be decided by a Family Court judge and any applicable appellate court, not by any of the named defendants.

Because plaintiff was not a party to the May 2013 neglect proceeding against Ms. Foley, plaintiff would likely not have standing to appeal the resulting state court order. (Compl. ¶ 10). Instead, he chose the available remedy of commencing his own family court proceedings instead, which have been unsuccessful to date. It is unclear from the complaint if plaintiff has appealed those adverse decisions in state appellate courts. However, even when liberally construed, plaintiff's procedural due process challenge, as set forth in the complaint, is the type of federal challenge to a state court decision that is barred by the *Rooker Feldman*[6] doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments.

2018 WL 6173796

*Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

6      *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Four requirements must be met before the court may apply the *Rooker Feldman* doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the federal court proceeding. *James v. State of New York*, No. CV-10-470, 2013 WL 1873276, at *2 (E.D.N.Y. March 6, 2013) (citing *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) ) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005) ). If these requirements are met, the federal court lacks jurisdiction even if the plaintiff alleges that the state court action was unconstitutional. *Id.* (citations omitted). The "fundamental" question is whether the injury alleged by the federal plaintiff "resulted from the state court judgment itself or is distinct from the judgment." *Id.* (citations omitted). If the federal constitutional claims are "inextricably intertwined" with the state court action, "then in essence the district court would be called on to review the state court decision." *Id.* However, if the plaintiff's claim raises an "independent claim" that is not the result of the state court judgment, but rather denies a conclusion reached by the state court, then federal court jurisdiction exists. *Id.*

 **\*5**  Plaintiff has described at least one unsuccessful family court action that occurred prior to his complaint, in which the court denied his request that his children be allowed to visit.[7] Although plaintiff alleges that defendants Fitzgerald, Hurley, and Hochmuth participated in the litigation, his only injury – denial of visitation rights – resulted from a state court order. To the extent that plaintiff is unhappy with that state court decision, or the proof presented during that state court proceeding, this court may not intervene. A finding in plaintiff's favor regarding his parental visitation rights would necessarily involve overturning the Family Court's adverse decision regarding the same rights, a situation prohibited by

*Rooker Feldman. See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002).

7      The complaint also alludes to subsequent family court petitions that may still be pending, potentially requiring absention under *Younger v. Harris*, 401 U.S. 37, 43-45 (1971). While *Younger* abstention does not apply to monetary damages, to the extent that such damages would be available, the court would have to stay the action, pending the state court's decision.

Plaintiff's claims that defendants Fitzgerald, Hurley, and Hochmuth have failed to adequately investigate his new allegations of abuse or neglect against Ms. Foley do not implicate a procedural due process claim under the Constitution. Plaintiff has no protected property or liberty interest in the initiation of a governmental investigation, or in the particular outcome of an investigation by DSS. *See Town of Castle Rock*, 545 U.S. at 762 (no constitutional right to governmental investigation); *Hilbert v. County of Tioga*, No. 3:03-CV-193, 2005 WL 1460316, at *11 (N.D.N.Y. June 21, 2005) (state child protection legislation did not create procedural due process right to control scope or outcome of investigation). Therefore, plaintiff has failed to state a procedural due process claim in his complaint.

In order to state a "substantive due process claim" against defendants Fitzgerald, Hurley, and/or Hochmuth, plaintiff would have to demonstrate that the social workers' actions were "so egregious" and "so outrageous" as to "shock the contemporary conscious," regardless of the fairness of the procedures used. *Southerland v. City of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012) (citations omitted); *Callahan v. City of New York*, No. 13-CV-2726, 2015 WL 1119728, at *8 (E.D.N.Y. Mar. 1, 2015). Plaintiff alleges that defendants' investigation of child abuse allegations were insufficient, that defendants refused to provide him legal advice, and that defendants advised him to seek the assistance of an attorney. (Compl. ¶¶ 14, 20). He also alleges that defendant Hochmuth insulted him because he was incarcerated in a maximum security prison. (Compl. ¶ 22). While plaintiff has characterized defendants as "grossly negligent" and described remarks that may be rude or unhelpful, his concerns do not rise to the level of a substantive due process claim. The alleged failure of defendants to meet local or professional standards, without more, does not rise to the level of a constitutional violation. *See Wilkinson v. Russell*, 182 F.3d 89, 106 ("faulty" investigation by social workers did not rise to

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 6173796

the level of a constitutional violation). Therefore, plaintiff has failed to state a substantive due process claim.

## IV. Equal Protection

### A. Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.' " *Engquist v. Or. Dep't of Agric.*, 533 U.S. 591, 601 (2008). To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006). Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

**\*6** Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). The Equal Protection Clause "secure[s] every person.... against intentional and arbitrary discrimination" by state officials. *Willowbrook v. Olech*, 528 U.S. 562, 564, (2000). Thus, in a "class of one" claim, the Equal Protection Clause requires a "rational basis for the difference in treatment." *Id.*

### B. Application

Plaintiff claims that defendants Fitzgerald, Hurley, and Hochmuth violated his equal protection rights by failing to provide sufficient services as required by state law and professional standards. A violation of state law, by itself, cannot support a claim under section 1983. *Treistman v. Wacks*, No. 1:12-CV-1897, 2014 WL 6685473, at \*7 (N.D.N.Y. Nov. 26, 2014) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ). Plaintiff also failed to demonstrate that he has been treated differently than other similarly situated individuals. His claim is based upon speculative conclusions drawn from one alleged intemperate remark from defendant Hochmuth. The "tenet that a court must accept as true all

of the allegations contained in the complaint is inapplicable to legal conclusions." *Ziomek v. Am. Red Cross*, No. 3:15-CV-980, 2016 WL 6551369, at \*2 (N.D.N.Y. Nov. 10, 2016) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff makes general statements of mistreatment, which are couched as Equal Protection claims, but are really conclusions that have no stated basis. Such conclusory allegations are insufficient to state a claim under the civil rights statutes. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

## V. Municipal Liability

### A. Legal Standards

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at \*3 (E.D.N.Y. Apr. 4, 2014) (Rep't.-Rec.) (citing, *inter alia, Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35 (2010) ), *adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

### B. Application

Plaintiff alleges that the alleged unresponsive and unhelpful behavior by defendants Fitzgerald, Hurley, and Hochmuth is a "common practice" that is "widely used," thus giving rise to liability for the County of Schenectady as a municipal entity. He offers no support for this conclusion. Therefore, even if plaintiff had sufficiently alleged a constitutional claim against

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 6173796

either Fitzgerald, Hurley, or Huchmoth, his conclusory allegations of a wider practice or policy are insufficient to state a claim against the County of Schenectady. *See Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (allegations that defendant acted pursuant to a municipal policy or practice, without any facts suggesting the policy's existence, "are plainly insufficient").

## VI. Judicial Immunity - Court Clerks

### A. Legal Standards

**\*7** With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when a judge takes action "outside" his or her judicial capacity or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

The courts have extended judicial immunity to persons other than a judge "who "perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). This absolute judicial immunity covers only certain functions performed by court clerk, namely tasks "which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (holding that a clerk's scheduling duties, as part of "[a] court's inherent power to control its docket" is subject to absolute immunity). The same protection applies to court clerk functions performed pursuant to the established practice of the court. *See Humphrey v. Court Clerk for the Second Circuit*, No. 5:08-363 (DNH/DEP), 2008 WL 1945308, at \*2 (N.D.N.Y. May 1, 2008); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010).

### B. Application

Plaintiff alleges that defendants Riggi and Colon have interfered with his access to the courts because there

has not "been any action on his custody enforcement petitions." (Compl. ¶ 24). Plaintiff has not explained how defendants Riggi and Colon are responsible for the alleged delays in his Family Court proceeding, but such claims relate to tasks that are "judicial in nature" and are therefore barred by judicial immunity.

Plaintiff also alleges that defendants Riggi and Colon deprived him of due process because they have not responded to his FOIL requests, or have provided insufficient responses. (Compl. ¶ 24). These claims relate to court record-keeping, which would appear on their face to constitute judicial actions or clerk functions performed pursuant to the court's established practice. Therefore, judicial immunity would apply. However, even if judicial immunity did not apply, plaintiff has not stated a due process claim, and the claims should be dismissed.

To state a due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F. 2d 70, 72 (2d Cir. 1988). It is well-established that a plaintiff has no property interest in obtaining FOIL documents. *See Blount v. Brown*, No. 10-CV-1548 (ARR), 2010 WL 1945858, \*2 (E.D.N.Y. May 11, 2010) (collecting cases). Thus, without the property interest in the documents requested under FOIL, the alleged failure to produce the requested documents does not amount to a constitutional violation. *Id.*

Even if plaintiff could show a property interest arising from his FOIL request, his due process claim would still fail as a matter of law because he has not shown that the state post-deprivation process is inadequate. New York provides an administrative appeals process under FOIL, and a person may appeal that decision by commencing a proceeding in state court under Article 78 of the New York Civil Practice Law and Rules. *See* N.Y. PUB. OFF. LAW § 89(4). Therefore, with respect to the question of constitutional due process and FOIL requests, "adequate process is clearly available through an Article 78 proceeding to remedy an improper denial of disclosure." *Ferrara v. Superintendent, N.Y.S. Police Dep't*, 26 F.Supp.2d 410, 415 n.3 (N.D.N.Y. 1998).

## VII. Statute of Limitations

### A. Legal Standards

**\*8** The statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 6173796

which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

The doctrine of equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). Equitable tolling principles have applied when plaintiff "actively" pursued his judicial remedies, but filed a defective pleading within the appropriate time period. *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002) (citations omitted). Equitable tolling has also been applied where plaintiff was prevented in some "extraordinary" way from asserting his rights, or where he asserted his rights in the wrong forum. *Johnson*, 86 F.3d at 12. In determining whether equitable tolling applies, the court must find that plaintiff acted reasonably diligently throughout the period that he seeks to toll. *Id.*

### B. Application

Plaintiff alleges misconduct by defendants dating back to May 2013 and August 2014. (Compl. ¶ 9). Therefore, at least some of his claims may be barred by the applicable three year statute of limitations. However, this court has not relied upon the statute of limitations in its recommendation of dismissal, and has reached no conclusions regarding the applicability of equitable tolling.

## VIII. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

This court has found that defendants Riggi and Colon are entitled to absolute immunity regarding at least some of the claims against them, and that plaintiff's remaining FOIL claims do not state a federal due process claim. Therefore, this court will not recommend giving plaintiff the opportunity to amend with respect to these two defendants.

However, the court will recommend dismissal without prejudice to the extent that plaintiff can make some concrete and specific allegations against the remaining defendants Fitzgerald, Hurley, Hochmuth, and County of Schenectady that fall within the applicable statute of limitations.

 **\*9** Any amended complaint must be a complete pleading that supersedes the original. N.D.N.Y.L.R. 7.1(a)(4). Plaintiff may ***not*** incorporate facts or claims from the original complaint. If the court adopts this recommendation, I will also recommend that the case be sent back to me for review of any proposed amended complaint submitted by plaintiff, and ultimately to order any necessary service of process.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 5) is **GRANTED** for purposes of filing only, and it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as against defendants Riggi and Colon pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), and it is

**RECOMMENDED**, that plaintiff's complaint be dismissed **WITHOUT PREJUDICE** as to defendants Fitzgerald, Hurley, Hochmuth, and County of Schenectady pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, plaintiff be given **SIXTY (60) DAYS** from the date of the District Court's order to submit a proposed amended complaint for review, and it is

**RECOMMENDED**, that if plaintiff files an amended complaint prior to the expiration of the sixty (60) day period, or any extended period granted by the court upon plaintiff's request, the Clerk be directed to return the amended complaint to me for initial review.

2018 WL 6173796

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6173796

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 4795759

2018 WL 4795759
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Aaron WELCH, Sr., Plaintiff,

v.

Susan FITZGERALD, individually, and in her
capacity as a social worker for the Schenectady
County Department of Social Services; Susana Hurley,
individually, and in her capacity as a social worker for the
Schenectady County Department of Social Services; Amy
Hochmuth, individually, and in her capacity as a social
worker for the Schenectady County Department of Social
Services; Denise Riggi, individually, and in her capacity
as Chief Clerk of the Schenectady County Family Court;
Lawrencia Colon, individually, and in her capacity as
the deputy Clerk of the Schenectady County Family
Court; County of Schenectady, New York, Defendants.

5:18-cv-00461 (MAD/ATB)
|
Signed 10/04/2018

## Attorneys and Law Firms

AARON WELCH, SR., 14-B-0149, Great Meadow
Correctional Facility, Box 51, Comstock, New York 12821,
Plaintiff Pro Se.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge

## I. INTRODUCTION

**\*1** Plaintiff commenced this action *pro se* on April 16, 2018
alleging civil rights violations and requesting to proceed *in
forma pauperis* ("IFP"). *See* Dkt. Nos. 1, 5. Plaintiff claims
that Defendants violated his due process and equal protection
rights by denying him visitation with his children while he
is incarcerated, refusing to provide him with the addresses of
his children, and failing to investigate his concerns about his
children being abused. *See* Dkt. No. 1 at ¶¶ 25-31.

On May 16, 2018, Magistrate Judge Andrew T. Baxter issued
an Order and Report-Recommendation granting Plaintiff's
IFP application, and recommending that the Complaint be

dismissed and Plaintiff be granted sixty days to amend his
Complaint. *See* Dkt. No. 8 at 21-22.

Plaintiff filed his Objections to Order and Report
Recommendation on May 25, 2018. *See* Dkt. No. 9.
Plaintiff appears to challenge two statements from the
Order and Report-Recommendation: first, that any amended
complaint "may not incorporate facts or claims from the
original complaint," and second, that the Order and Report-
Recommendation "reached no conclusions regarding the
applicability for equitable tolling." *See id.* at 1.

## II. DISCUSSION

### A. Standard of Review

When a plaintiff seeks to proceed IFP, "the court shall dismiss
the case at any time if the court determines that ... the action
or appeal (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."
28 U.S.C. § 1915(e)(2)(B). In making this determination, "the
court has the duty to show liberality towards pro se litigants,"
however, "there is a responsibility on the court to determine
that a claim has some arguable basis in law before permitting
a plaintiff to proceed with an action in forma pauperis."
*Moreman v. Douglas*, 848 F. Supp. 332, 333-34 (N.D.N.Y.
1994) (internal citations omitted).

When a party files specific objections to a magistrate judge's
report-recommendation, the district court makes a "de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b)(1). However, when a party
files "[g]eneral or conclusory objections or objections which
merely recite the same arguments [that he presented] to the
magistrate judge," the court reviews those recommendations
for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011
WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and
footnote omitted). After the appropriate review, "the court
may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636(b)(1).

Plaintiff's "objections" are so general that they do not
actually object to the Order and Report-Recommendation.
As such, the Court will review the Order and Report-
Recommendation for clear error. *See Scipio v. Keane*, No.
95-CV-2732, 1997 WL 375601, *1 (S.D.N.Y. July 7, 1997)

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

2018 WL 4795759

(when objections fail to address analysis directly, court reviews report-recommendation for clear error); *see also Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, *2 (N.D.N.Y. Sept. 22, 1997), *aff'd*, 175 F.3d 1007 (2d Cir. 1999) (collecting cases about general objections).

**B. Incorporating Facts in an Amended Complaint**

**\*2** Plaintiff's request to "incorporate facts from the original complaint in order to support a new claim in the forthcoming amended complaint" is not an objection to the Order and Report-Recommendation. *See* Dkt. No. 9 at 1. The Northern District's Local Rule 7.1(a)(4) prohibits a party from incorporating "any portion of its prior pleading into the proposed amended pleading by reference" because an "amended complaint must be a complete pleading that supercedes the original." *See* Dkt. No. 8 at 21; N.D.N.Y.L.R. 7.1(a)(4). This requirement does *not* prevent a plaintiff from relying on the facts cited in the original complaint in his amended complaint. Rather, it only requires that the plaintiff treat the new complaint as a standalone document. Therefore, Plaintiff may continue to rely on facts from his original complaint, as long as he restates those facts in the amended complaint.

**C. Equitable Tolling**

Plaintiff's argument that the Order and Report-Recommendation "reaches no conclusions regarding the applicability for equitable tolling" is likewise not an objection. *See* Dkt. No. 9 at 1. Magistrate Judge Baxter did not address the doctrine of equitable tolling because he did not recommend that any claims be dismissed as untimely. Instead, he found that even if all of Plaintiff's claims are timely, they should still be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for judicial immunity or failure to state a claim.

**D. Analysis of the Order and Report-Recommendation**

The Court finds no clear error in Magistrate Judge Baxter's determinations. First, Defendants Riggi and Colon have judicial immunity as clerks of the Schenectady County Family Court, so the claims against them should be dismissed with prejudice. *See* Dkt. No. 8 at 16-18. Second, Plaintiff has not adequately pleaded that Defendants Fitzgerald, Hurley, and Hochmuth deprived him of a due process right regarding his children because (i) Plaintiff's visitation rights were terminated by the May 2013 court order, not by any action by Defendants Fitzgerald, Hurley, and Hochmuth; (ii) Plaintiff does not have a protected property or liberty interest in

the initiation of a investigation into allegations of abuse of his children; and (iii) Defendants Fitzgerald, Hurley and Hochmuth's conduct was not so outrageous as to rise to the level of a substantive due process claim. *See id.* at 8-12. Third, the Court agrees with Magistrate Judge Baxter that Plaintiff has alleged only speculative conclusions without sufficient basis in fact to support his claim that his equal protection rights were violated by a failure to provide sufficient services. *See id.* at 14. Finally, the Order and Report-Recommendation correctly rejects municipal liability against the County of Schenectady because Plaintiff offers no support for his conclusion that unresponsive and unhelpful behavior in the municipality is a "common practice" that is "widely used." *See id.* at 15-16.

### III. CONCLUSION

Having carefully reviewed the May 16, 2018 Order and Report-Recommendation and the May 25, 2018 Objections, the Court finds that Magistrate Judge Baxter correctly determined that the claims against Defendants Riggi and Colon should be dismissed with prejudice and that the claims against Defendants Fitzgerald, Hurley, Hochmuth, and County of Schenectady should be dismissed without prejudice for failure to state a claim. Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Baxter's May 16, 2018 Order and Report-Recommendation is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE** as against Defendants Riggi and Colon pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** as against Defendants Fitzgerald, Hurley, Hochmuth, and County of Schenectady pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim; and the Court further

**\*3 ORDERS** that Plaintiff is granted **SIXTY (60) DAYS** from the date of this Memorandum-Decision and Order to submit a proposed amended complaint for review; and the Court further

Welch v. Fitzgerald, Not Reported in Fed. Supp. (2018)

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 46 of 147

2018 WL 4795759

**ORDERS** that this matter is referred to Magistrate Judge Baxter for review of the amended complaint; and the Court further

**ORDERS** that if Plaintiff fails to file an amended complaint within sixty (60) days of the date of this Memorandum-Decision and Order, the Clerk of the Court shall enter judgment in Defendants' favor without further order of this Court and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4795759

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 47 of 147

Burgdorf v. Betsy Ross Nursing and Rehabilitation Center Inc., Not Reported in Fed....

2023 WL 112092

2023 WL 112092
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joseph D. BURGDORF, Plaintiff,

v.

BETSY ROSS NURSING AND REHABILITATION
CENTER INC., et al., Defendants.

6:22-CV-987 (DNH/ATB)
|
Signed January 5, 2023

**Attorneys and Law Firms**

JOSEPH D. BURGDORF, Plaintiff, pro se

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1**  The Clerk has sent to the court for review a pro se complaint filed by plaintiff Joseph D. Burgdorf, in which he alleges claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., as well as additional criminal and civil causes of action alleged under state and federal law. (Dkt. No. 1) ("Compl."). Plaintiff has moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I. In Forma Pauperis ("IFP") Application**
A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**
Plaintiff alleges that in September 2019, he was discharged from an unidentified hospital "in sound physical and mental condition," after receiving treatment for acute pancreatitis. (Compl. at CM/ECF p. 7). At his doctor's suggestion, plaintiff agreed to undergo further, subsequent care at the defendant facility, Betsy Ross Nursing and Rehabilitation Center ("BRNRC"), for "three or four days at most." (*Id.*).

**\*2**  According to the plaintiff's complaint, defendants Tracy Lynn Jayne, a physician's assistant ("PA"), and Yvette Hulett, a social worker, were employed by BRNRC in September 2019. (*Id.*). PA Jayne was also, dually employed by defendant Amidon Medical Group, under whose "direct supervision" she wrote plaintiff's prescriptions at BRNRC. (*Id.*).

Plaintiff alleges that PA Jayne and Ms. Hulett "conspired to illegally detain plaintiff" at BRNRC. (*Id.*). Specifically, plaintiff alleges that these defendants falsely reported his

Burgdorf v. Betsy Ross Nursing and Rehabilitation Center Inc., Not Reported in Fed....

2023 WL 112092

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 48 of 147

condition was deteriorating in order to extend his admission to BRNRC from seven to 25 days, ultimately providing a "significant amount of additional revenue for the for-profit facility." (*Id.*). Plaintiff states that this resulted in the facility "fraudulently charg[ing]" his insurance company, and extorting $1,265 from plaintiff for the amount of time he was "unlawfully detained thus imprisoned." (*Id.* at CM/ECF p. 8). Plaintiff describes several occasions on which he attempted to leave BRNRC, but was physically prevented from doing so. (*Id.* at CM/ECF pp. 10-13). He alleges that NP Jayne kept him at BRNRC against his will based on her claim that plaintiff required a "mental evaluation" before discharge, which plaintiff "was not having any of." (*Id.* at CM/ECF p. 12).

Plaintiff further alleges that during his stay at BRNRC, his narcotic medication, which appears to have been provided to him upon discharge from the hospital, was "stolen by maintenance workers under [Ms.] Hulett's and [PA] Jayne's supervision." (*Id.*). Plaintiff claims that Ms. Hulett and PA Jayne further delayed his discharge from BRNRC because "plaintiff threatened to call the police and file and report" with respect to the missing narcotic medication. (*Id.*).

Plaintiff's complaint next describes a separate incident that occurred in 2001 at BRNRC, at which time plaintiff was also a patient at the facility. (*Id.* at CM/ECF p. 9). Allegedly, plaintiff had similar issues obtaining his medication at that time. (*Id.*). Plaintiff further alleges that, while a patient at BRNRC in 2001, he watched his roommate choke to death in what he describes as a "wrongful death" incident. (*Id.* at CM/ECF pp. 9-10). Plaintiff alleges that these incidents demonstrate a "pattern of lying and coverups" at BRNRC. (*Id.* at CM/ECF p. 10).

On October 1, 2019, plaintiff was informed that transportation had been arranged to take him to a "mental evaluation" scheduled by PA Jayne. (*Id.* at CM/ECF p. 14). Plaintiff confronted PA Jayne as to "why he had been detained against his will[.]" (*Id.*). PA Jayne responded that plaintiff appeared "unstable," and it would not be safe for him to leave the premises until he had undergone a "mental evaluation." (*Id.*). After further discussion, and plaintiff's demand to meet with a supervisor, PA Jayne "told plaintiff that he seemed to be much, much better than she remembered." (*Id.* at CM/ECF p. 15). She then "decided to release him." (*Id.*). PA Jayne also allegedly admitted to plaintiff that she was in possession of plaintiff's missing medication. (*Id.* at CM/ECF pp. 14-17).

Plaintiff's medication was returned to him upon his discharge. (*Id.*).

Plaintiff is seeking damages in the amount of $74,000, along with court and attorney fees. (*Id.* at CM/ECF p. 5; Dkt. No. 1-1). Plaintiff also asks this court to order an investigation into the business practices of the named defendants, and "a referral" to the New York State Office of Professional Medical Conduct. (Compl. at CM/ECF p. 7).

## III. Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

### A. Legal Standards

**\*3** The RICO statute provides a private right of action to any person injured in his or her business or property by reason of a violation of Title 18 United States Code, section 1962. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (citing 18 U.S.C. § 1964(c)). In order to establish a civil RICO claim, the plaintiff must plead the conduct of an enterprise through a pattern of racketeering activity that causes injury to business or property as a result of the RICO violation. *Lundy v. Catholic Health Systems of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). "A pattern of racketeering" is defined as "at least two acts of racketeering activity, ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citing 18 U.S.C. § 1961(5)). The definition of "racketeering activity" includes, inter alia, robbery, bribery, extortion, wire fraud, and mail fraud. *See* 18 U.S.C. § 1961(1). The RICO conduct must be both the proximate and but for cause of the plaintiff's injury. *Lerner v. Fleet Bank, N.A.,* 459 F.3d at 283.

RICO provides only for injury to business or property. The statute does not provide recovery for physical or emotional injuries. *Kesick v. Ulloa*, No. 1:10-CV-1248, 2012 WL 2873364, at \*9 (N.D.N.Y. July 12, 2012) (quoting *Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003)); *see also Moore v. Guesno*, 485 F. Supp. 2d 300, 305 (W.D.N.Y. 2007). In addition, it is well-settled that a civil claim pursuant to RICO "is an unusually potent weapon - the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Gruber v. Gilbertson*, No. 16-

**Burgdorf v. Betsy Ross Nursing and Rehabilitation Center Inc., Not Reported in Fed....**
2023 WL 112092

CV-9727, 2019 WL 4458956, at *5 (S.D.N.Y. Sept. 17, 2019) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)) (internal quotations omitted).

**B. Application**

Liberally construed, plaintiff's complaint alleges that the defendants conspired to illegally detain plaintiff at BRNRC, in a concerted effort to fraudulently charge plaintiff's insurance company and "coerce/extort" out-of-pocket expenses from plaintiff in order to increase revenue to the for-profit facility. Assuming, without deciding, that plaintiff has sufficiently plead injury to his property, his claims pursuant to RICO nevertheless fail to state a claim. At the outset, plaintiff's allegations do not sufficiently allege the elements of any of the relevant predicate acts of racketeering.

To state a claim for extortion [1] under 18 U.S.C. § 1951, "plaintiff must show that defendants (1) induced plaintiff, with plaintiff's consent, to part with property, (2) through the wrongful use of actual or threatened force, violence or fear (including fear of economic loss), (3) in such a way as to adversely affect interstate commerce." *Battle v. Associates for Women's Medicine, PLLC*, No. 05-CF-8373, 2006 WL 2642137, at *6 (S.D.N.Y. Sep. 15, 2006) (citing *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)). Here, plaintiff vaguely asserts that the defendants "aggressively through illegal means pressured, coerced, or attempted to extort payment from plaintiff.... [using] duress, shaming, and other intimidating methods." (Compl. at CM/ECF p. 8). Plaintiff fails to articulate any specific acts by the defendants constituting the "use of actual or threatened force, violence, or fear," providing instead only conclusory allegations in this regard.

[1] Plaintiff also alleges that the defendants committed coercion. As the Supreme Court has explained, extortion is distinct from coercion: "[w]hereas [extortion] require[s] ... the criminal acquisition of ... property, [coercion] require[s] merely the use of threats to compel another person to do or to abstain from doing an act which such other such person has a legal right to do or to abstain from doing." *Sekhar v. United States*, 570 U.S. 729, ——, 133 S.Ct. 2720, 2723, 186 L.Ed.2d 794, (2013) (citations and internal quotation marks omitted). To the extent plaintiff alleges that the defendants alleged use or threat of force to prevent him from leaving BRNRC constituted coercion, it has been held that such conduct does not

qualify as a predicate act under RICO. *Mackin v. Auberger*, 59 F. Supp. 3d 528, 550 (W.D.N.Y. 2014) (citing *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *48 n. 55 (E.D.N.Y. Sept. 7, 2013) ("The Supreme Court has found that coercion without the transfer of property or an attempt to obtain property is not extortion and not a RICO predicate act.")).

**\*4** Even assuming, *arguendo*, that plaintiff had adequately plead that the defendants committed extortion for purposes of establishing a predicate act, plaintiff has not plead two or more acts constituting a "pattern of racketeering activity" occurring within ten years of each other. Plaintiff is challenging an isolated incident which occurred in September 2019. While plaintiff "believes" that the alleged extortion by BRNRC constituted a "standard covert practice regularly coordinated" by the defendants, such conclusory allegations are insufficient to recover under RICO.

Last, plaintiff has failed to allege that defendants were participants in a RICO enterprise, the activities of which affected interstate commerce. "All of RICO's subsections require an enterprise 'which is engaged in, or the activities of which affect, interstate or foreign commerce.' " *Aliev v. Borukhov*, No. 15-CV-6113, 2016 WL 3746562, at *12 (E.D.N.Y. July 8, 2016) (citing 18 U.S.C. § 1962(a)-(c)). While "[t]he law in this Circuit does not require RICO plaintiffs to show more than a minimal effect on interstate commerce[,]" *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001), "even a minimal showing, [ ] requires some factual allegations of a nexus with interstate commerce." *Aliev*, 2016 WL 3746562, at *12 (citing *Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D.N.Y. 2007), *aff'd*, 301 Fed. App'x 17 (2d Cir. 2008)). Here, plaintiff does not make any allegations as to how the alleged conduct impacted interstate commerce, except for his unsupported inference that defendants' actions "raise the possibility that [the alleged conduct] may be widespread involving their out-of-state facilities, a pattern[.]" (Compl. at CM/ECF p. 8).

For each of the reasons cited above, plaintiff's claim pursuant to RICO should be dismissed.

**IV. Criminal Statutes**

**A. Legal Standards**

Crimes are prosecuted by the government, and not by private parties. *Corrado v. New York Office of Temporary and*

*Disability Assist.*, No. 15-CV-7316, 2016 WL 3181128, at *5 (E.D.N.Y. June 2, 2016) (citing *Hill v. Didio*, 191 F. App'x 13, 14-15 (2d Cir. 2006)). There is no private right of action to enforce federal criminal statutes, unless the statute specifically authorizes it. *Id.* (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998)) (citations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)). This applies to both state and federal criminal statutes. *See Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009)).

### B. Application

Plaintiff alleges that the defendants have violated New York Penal Code Article 460 (enterprise corruption) and 25 C.F.R. § 11.404 (false imprisonment). Both of these statutes provide for criminal penalties, and there is no language in either which explicitly authorizes, or implies, a private right of action. *See, e.g., Wilson v. Neighborhood Restore Dev.*, No. 18-CV-1172, 2019 WL 4393662, at *7 (E.D.N.Y. Sept. 13, 2019) (no private right of action under Article 460); *Turner v. City of Eagan*, No. 21-CV-0865, 2021 WL 5771202, at *2 (D. Minn. Dec. 6, 2021) (no private right of action for false imprisonment under 25 C.F.R. § 11.404). Thus, no matter plaintiff's assertions, he may not enforce these criminal statutes against any of the defendants, and the complaint may be dismissed in this regard. To the extent plaintiff's complaint asserts a civil cause of action for false imprisonment pursuant to 42 U.S.C. § 1983, such a claim is also subject to dismissal, for the reasons explained below.

### V. Section 1983

### A. Legal Standards

**\*5** A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121

S.Ct. 924, 148 L.Ed.2d 807 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

### B. Application

Liberally construed, the complaint raises allegations of false imprisonment, conspiracy, and retaliation pursuant to § 1983. However, plaintiff is suing BRNRC, Amidon Medical Group, and Mohawk Valley Health Services, each of which entity appears to be a privately owned facility or medical group. Plaintiff has not alleged any facts suggesting that these entities are state actors under any of the aforementioned exceptions, or describing how their actions are otherwise "fairly attributable to the state."

Likewise, BRNRC employees PA Jayne and Ms. Hulett are also private actors. Because plaintiff has failed to plausibly allege that the named defendants acted under color of state law, the complaint fails to state any claims for relief under § 1983. *See DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69 (E.D.N.Y. 2019) (acknowledging that, in the context of § 1983, public functions do not include operating nursing homes) (citing *Manhattan Cmty. Access Corp. v. Halleck*, ––– U.S. ––––, 139 S. Ct. 1921, 1926, 204 L.Ed.2d 405 (2019)); *White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals, nursing home, and cemetery named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 51 of 147

Burgdorf v. Betsy Ross Nursing and Rehabilitation Center Inc., Not Reported in Fed....

2023 WL 112092

color of state law."); *Thomas v. Mohawk Valley Health Sys.*, No. 6:20-CV-01347 (BKS/ML), 2020 WL 6504634, at *6 (N.D.N.Y. Nov. 5, 2020) (rejecting plaintiff's argument that defendant Mohawk Valley Health System was a state actor, merely because it was a private institution that received public funding). Accordingly, plaintiff's complaint should be dismissed to the extent it assets any claims pursuant to § 1983.

## VI. Opportunity to Amend

### A. Legal Standards

**\*6** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

With respect to plaintiff's RICO claims, the court finds that the defects contained in the complaint are substantive; there is no amendment that plaintiff can make to the complaint that would allow him to sue the named defendants under the RICO statute. Moreover, the claims based on state and federal criminal statutes may be dismissed with prejudice as against each named defendant, because these statutes do not provide for private causes of action.

Furthermore, the court is further recommending dismissal of plaintiff's § 1983 claims for lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) ("[D]ismissal for subject matter jurisdiction must be without prejudice."). However, this court has serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over the situation that plaintiff describes in his complaint. As there appears no basis for plaintiff to raise his claims in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deuel v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523,

at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend as to plaintiff's § 1983 claims.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING**, and it is

**RECOMMENDED,** that plaintiff's claims predicated on the RICO statute be **DISMISSED WITH PREJUDICE** against all of the named defendants, and it is

**RECOMMENDED**, that any claims alleged by plaintiff pursuant to criminal statutes New York Penal Code Article 460 (enterprise corruption) and 25 C.F.R. § 11.404 (false imprisonment) be **DISMISSED WITH PREJUDICE** against all of the named defendants, and it is

**RECOMMENDED**, that this action otherwise be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity for amendment, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2023 WL 112092

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 52 of 147
Burgdorf v. Betsy Ross Nursing and Rehabilitation Center, Inc., Not Reported in Fed....
2023 WL 418045

2023 WL 418045
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joseph D. BURGDORF, Plaintiff,

v.

BETSY ROSS NURSING AND REHABILITATION
CENTER, INC., Tracy Lynn Jane, Amidon Medical
Group, and Mohawk Valley Health Services, Defendants.

6:22-CV-987
|
Signed January 26, 2023

**Attorneys and Law Firms**

JOSEPH D. BURGDORF, Plaintiff, Pro Se, 514 Floyd
Avenue, Rome, NY 13440.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On September 20, 2022, *pro se* plaintiff Joseph Burgdorf
("plaintiff") filed this action alleging that defendants are
involved in a RICO conspiracy to, *inter alia*, unlawfully
detain him at a medical center and rehabilitation facility. Dkt.
No. 1. Along with his complaint, plaintiff also sought leave
to proceed *in forma pauperis* ("IFP Application"). Dkt. No 2.

On January 5, 2023, U.S. Magistrate Judge Andrew T. Baxter
granted plaintiff's IFP Application and advised by Report
& Recommendation ("R & R") that plaintiff's complaint be
dismissed. Dkt. No. 4. Judge Baxter noted that plaintiff's
RICO claims and claims under several New York criminal
statutes were plainly meritless and subject to dismissal with
prejudice. *Id.* Judge Baxter further noted that the rest of
plaintiff's claims were also deficiently pleaded, but that those
remaining claims needed to be dismissed without prejudice
as a technical jurisdictional matter. *Id.* Even so, Judge Baxter
advised that plaintiff not be given leave to amend. *Id.*

Plaintiff has not filed objections. The time period in which to
do so has expired. *See* Dkt. No. 4. Upon review for clear error,
the R & R will be accepted and adopted in all respects. *See*
FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's RICO claims are DISMISSED with prejudice;

3. Plaintiff's claims under New York criminal statutes are
DISMISSED with prejudice; and

4. Plaintiff's complaint is otherwise DISMISSED without
prejudice but without leave to amend.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 418045

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 53 of 147

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton
Road, Sand Lake, NY 12153.

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Alisha Clark Walker ("Plaintiff") initiated this action
*pro se* on June 2, 2022, claiming Dr. Mary O'Connor
("Defendant") violated 42 U.S.C. § 1983 and § 1985. (Dkt.
No. 1.) Plaintiff simultaneously moved to proceed *in forma
pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed Plaintiff's
motion to proceed IFP, the undersigned GRANTS the motion
for purposes of this review. *See id.* The undersigned now
considers the sufficiency of the allegations set forth in the
Complaint under 28 U.S.C. § 1915(e). For the reasons
discussed below, the undersigned recommends that the Court
dismiss Plaintiff's Complaint in its entirety with leave to
amend. (Dkt. No. 1.)

**I. SUMMARY OF THE COMPLAINT** [1]

[1]    The following recitation of facts is drawn from
the Complaint, which the Court accepts as true for
purposes of initial review. *See, e.g., LaTouche v.
Rockland County,* No. 22-CV-1437 (LTS), 2022
WL 953111, at \*1 (S.D.N.Y. Mar. 29, 2022);
*Walker v. City of New York,* No. 20-CV-5240 (PKC)
(LB), 2021 WL 1838277, at \*1 n.1 (E.D.N.Y. May
7, 2021).

This is the second of two actions Plaintiff initiated against
various individuals stemming from a child custody dispute in

New York State Family Court. (*See* Dkt. No. 1; *see also* Case
No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker
I*"), Plaintiff claimed several New York State Family Court
Judges, two private attorneys, and the Averill Park School
District violated her First and Fourteenth Amendment rights.
(Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff
restates and reasserts many of the same claims against Dr.
Mary O'Connor, a private individual ordered by the New State
Family Court to render forensic psychological evaluations in
the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.)
Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction
under 28 U.S.C. § 1331 and § 1343, purporting to advance
several causes of action under 42 U.S.C. § 1983 and § 1985.
(Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and
standards established and/or maintained by Defendant/s [sic]
violate the Right to Free speech under the First Amendment,
and the Due Process and Equal Protection clauses of the
Fourteenth Amendment to the U.S. Constitution." *Id.* at
4. Plaintiff accordingly recycles many of the same claims
against Dr. O'Connor that she asserted against the Defendants
in *Walker I. See id.* at 9-31. Through the first cause of action,
Plaintiff claims Dr. O'Connor "religiously discriminated
against" her in violation of the First Amendment. *Id.* at 9.
In her second cause of action, Plaintiff claims Dr. O'Connor
retaliated against her in violation of the First Amendment.
*Id.* at 10. By her third cause of action, Plaintiff claims
Dr. O'Connor "deprived [her] of the rights of a mother to
her children and due process and freedom of speech" in
violation of the First and Fourteenth Amendments. *Id.* at
12-13. Through her fourth cause of action, Plaintiff claims
Dr. O'Connor discriminated against her. *Id.* at 14-19. In her
fifth cause of action, Plaintiff claims Dr. O'Connor used her
position to "maliciously intentionally harm and pain on the
Plaintiff." *Id.* at 20. By her sixth and final cause of
action, Plaintiff claims Dr. O'Connor engaged in sex bias
discrimination. *Id.* at 25.

**II. STANDARD OF REVIEW**

**\*2** This Court must conduct an initial review of complaints
filed *in forma pauperis,* and "complaints in which a prisoner
seeks redress from a governmental entity or officer or
employee of a governmental entity." 28 U.S.C. § 1915(e)(2)
(B) (governing complaints filed *in forma pauperis*); 28 U.S.C.
§ 1915A (governing complaints filed by prisoners against
the government). When reviewing these types of complaints,
this Court must "identify cognizable claims or dismiss the
complaint, or any portion of the complaint, if the complaint ...

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [2]

[2]    Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. See *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. SUFFICIENCY OF THE COMPLAINT

**\*3**  Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [3]  Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. See *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

[3]    Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See Sealed Plaintiff*, 537 F.3d at 191.

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g., Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jensen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g., Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL

5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

**B. Plaintiff's Section 1985 Claims**

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g., Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g., Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

(GTS) (ATB), 2016 WL 4046780, at \*18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

4      Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (See generally Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. See *Sealed Plaintiff*, 537 F.3d at 191.

  **\*5** Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (See generally Dkt. No. 1; see, e.g., *Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (See Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (See generally Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. See id. As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. See *Iqbal*, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. See, e.g., *Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at \*18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (See generally Dkt. No. 1 at 9-31; see, e.g., *Tirse*, 2016 WL 4046780, at \*18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation".).) Plaintiff alleged in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (See generally Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. See *id.*; see also *Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). See, e.g., *Oliver*, 2022 WL 2165814, at \*3; *Tirse*, 2016 WL 4046780, at \*18; *Alston*, 2014 WL 4374644, at \*18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

5      The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. See, e.g., *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at \*8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

### C. Jurisdiction

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (See Dkt. No. 1; see, e.g., *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at \*10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine.))

  **\*6** First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. See generally *Younger v. Harris*, 401 U.S. 37 (1971); see, e.g., *Amato*, 2022 WL

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)
Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 57 of 147

2022 WL 2341420

226798, at *11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g.*, *Stumpf*, 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).

"The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV. CONCLUSION

**\*7** For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 58 of 147

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)
2022 WL 2341420

the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[6]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2341420

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2805462

2022 WL 2805462
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendant.

1:22-CV-581

|

Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton Road, Sand Lake, NY 12153.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

 **\*1** On June 2, 2022, *pro se* plaintiff Alisha Clark Walker ("plaintiff") filed this action alleging that defendant, a private individual ordered by a state court to render forensic psychological evaluations in an underlying child custody dispute, discriminated against her. Dkt. No. 1. Along with her complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application for the purpose of an initial review and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4. Although Judge Dancks observed that plaintiff's claims were almost certainly barred by various jurisdictional or immunity principles, in light of plaintiff's *pro se* status Judge Dancks concluded that plaintiff should be given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this Order in which to amend her pleading in accordance with the instructions set forth in Judge Dancks's Report & Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this thirty-day period, the Clerk of the Court shall enter a judgment accordingly and close the file without further Order of this Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2805462

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 60 of 147

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

2022 WL 17418268
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,

v.

Anthony MCGINTY, in his judicial
and individual capacities, Defendant.

No. 1:21-CV-1215 (GTS/CFH)
|
Signed October 5, 2022

**Attorneys and Law Firms**

Tammy Terpening, 17 Blair Road, Apt. 6, Kerhonkson, New
York 12446, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. Procedural Background**

 **\*1** Plaintiff pro se Tammy Terpening ("plaintiff")
commenced this action on November 9, 2021, with the
filing a complaint and an application to proceed in forma
pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 2. In
a Report-Recommendation and Order dated April 28, 2022,
the undersigned: (1) granted plaintiff's IFP application; (2)
recommended that plaintiff's 42 U.S.C. § 1983 and Title VII
claims, and Americans with Disabilities Act ("ADA") claim
against defendant Judge Anthony McGinty ("defendant")
in his individual capacity be dismissed with prejudice and
without leave to amend; and (3) recommended that plaintiff's
ADA claim against defendant in his official capacity be
dismissed without prejudice and with leave to amend. See
Dkt. No. 6. Plaintiff was informed that she had fourteen
days to file objections to the Report-Recommendation and
Order. See id. at 19. Plaintiff did not file any objections
and on June 13, 2022, Judge Suddaby adopted the Report-
Recommendation and Order in its entirety. See Dkt. No. 8.
Presently before the Court is plaintiff's amended complaint for
review pursuant to 28 U.S.C. § 1915. See Dkt. No. 9 ("Am.
Compl.").

**II. Initial Review of Amended Complaint**

**A. Legal Standard**

Section 1915 [1] of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ...
the action or appeal (i) is frivolous or malicious; (ii) fails to
state a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from such
relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility
to determine that a plaintiff may properly maintain his or her
complaint before permitting him or her to proceed with the
action.

[1]   The language of § 1915 suggests an intent to
limit availability of IFP status to prison inmates.
See 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment
of fees "by a person who submits an affidavit that
includes a statement of all assets such prisoner
possesses"). The courts have construed that section,
however, as making IFP status available to any
litigant who can meet the governing financial
criteria. See, e.g., Fridman v. City of N.Y., 195 F.
Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the "plaintiff proceeds pro se, the court must
construe his [or her] submissions liberally and interpret them
to raise the strongest arguments that they suggest." Kirkland
v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per
curiam) (citation and internal quotation marks omitted). This
does not mean that the Court is required to accept unsupported
allegations that are devoid of sufficient facts or claims. Pro
se litigants are "not exempt ... from compliance with relevant
rules of procedural and substantive law[.]" Traguth v. Zuck,
710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Although
detailed allegations are not required at the pleading stage,
the complaint must still include enough facts to provide the
defendants with notice of the claims against them and the
grounds on which these claims are based. See Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly,
550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must
plead "enough facts to state a claim to relief that is plausible
on its face." Twombly, 550 U.S. at 570. "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (citations and internal quotation marks omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (citations and internal quotation marks omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the

complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal citation omitted). However, "[d]ismissal [ ] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

## B. Plaintiff's Amended Complaint [2]

[2]      All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Plaintiff's amended complaint raises essentially the same claims as her original complaint. See generally Compl.; Am. Compl. Plaintiff asserts that defendant was the Ulster County Family Court Judge presiding over child custody proceedings between her and her children's father. See id. at 4, 8, 16-17. Plaintiff claims that the children's father was abusive towards plaintiff and the children. See id. at 3. Plaintiff states that "since at least 2019, [she] filed a [custody] petition however [she] became ill and temporarily required the care of a hospital." Id. at 13. Plaintiff submits a photocopy of discharge instructions from Vassar Brothers Medical Center Emergency Department, dated September 29, 2019, which indicated a Hematochezia [3] diagnosis for one of her daughters. See id. at 14, 16. [4] Plaintiff also submits a discharge summary dated December 12, 2019, which stated that plaintiff was "admitted to medicine service. MRI done was positive for stroke. Patient started on stroke care measure medications. Found to be B12 deficient and started on supplementation." Id. at 15. The hospital summary notes that plaintiff had "iron deficiency secondary to dysfunctional uterine bleeding. Started on iron supplementation. Pelvic ultrasound was negative for ovarian or uterine lesions. Patient with new onset diabetes, added on diabetic heart healthy diet." Id. An "[e]chocardiogram was found to have global hypokinesis with ejection fraction of 40-45%. She was recommended to proceed with transesophageal echocardiogram." Id. The summary states, however, that "because Family Court judge did not consider her hospitalized status as justification to delay deciding custody for her minor children, with potential to release to their biological father, who has been accused of sexually molesting them, discharge was attested in order for patient to appear in family court." Id. Plaintiff was

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

"strongly encouraged to return for inpatient hospitalization management if symptoms were to recur." Id.

3    Hematochezia is bleeding in the stools. See Stedmans Medical Dictionary 397760 (Nov. 2014).

4    Because of plaintiff's pro se status, the undersigned has considered the allegations in the amended complaint along with the documents attached thereto. See, e.g., Anthony v. Murphy, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), report and recommendation adopted, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

*3 Plaintiff attests that she requested "to adjourn the court date for necessary provisions for health and safety[,]" but "[d]efendant steadfastly refused and denied with blatant disrespect for the well being of [p]laintiff." Am. Compl. at 16-17. Plaintiff states that she arrived late to the court proceeding and her sister, who was already in attendance, informed plaintiff that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Plaintiff asserts that "[i]t was at this Court's first appearance where the [d]efendant on his own accord without explanation changed custody[ ]" in favor of the children's father. Id. Plaintiff states that she was "[s]ick, crushed, and in depair[.]" Id. She attests that "[l]ater that day," she received an email from her children's school which explained that the children's father said that "he is not able to have the girls with him at the moment and wishes for them to remain with their mother until he has prepared for them." Id. at 17-18.

On the first page of her amended complaint, plaintiff states that she is

seeking zero monetary damages, punitive damages, injunctive relief with penalties under [ ] 42 U.S.C. § 1988, declaratory judgment, pursuant to 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 1985, 42 U.S.C. § 12203, 42 U.S.C. § 12182, 42 U.S.C. § 12301(3)(5)(7)

(A)(B), Title II claim of American Disabilities Act, seeking, appointed counsel and in the alternative, tortious interference with parental rights under the common law and for such other relief The Court deems just and appropriate.

Am. Compl. at 1. In her "claims for relief[,]" plaintiff states that she "seeks all prescribed relief stated throughout this action" and specifically prays for the appointment of counsel, a jury trial, and "[a] judgment against [d]efendant for costs and such other relief as the Court may deem appropriate." Id. at 24. [5]

5    Plaintiff submits a letter addressed to defendant wherein she complained that her children's appointed attorney, William Pape, was ineffective, and she sought a different attorney. See Am. Compl. at 8. Plaintiff does not make any substantive allegations against Mr. Pape in her amended complaint or name him as a defendant. See generally Am. Compl.

### C. Analysis

#### 1. Miscellaneous Statutes

Plaintiff cites a string of statutes under which she purports to assert causes of action. See Am. Compl. at 1. First among them is 42 U.S.C. § 1988. See id. "[Section] 1988 does not provide an independent cause of action, but instead provides a mechanism by which particular remedies may be sought in civil rights actions." Solomon v. City of Rochester, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020) (citation and quotation marks omitted). Plaintiff also cites 18 U.S.C. §§ 241 and 242. See Am. Compl. at 1. These statutes concern criminal conspiracy and criminal deprivation of rights under the color of law, but "they do not provide a private right of action to civil litigants." Burke v. APT Found., 509 F. Supp. 2d 169, 173 (D. Conn. 2007) (citations omitted); see 18 U.S.C. §§ 241, 242. Next, plaintiff cites 42 U.S.C. § 12301(3), (5), (7)(A)(B). See Am. Compl. at 1. This statute explains a Congressional policy enacted as part of its Helping America's Youth initiative and the provisions that plaintiff references discuss the importance of children's health and safety. See

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

42 U.S.C. § 12301(3), (5), (7)(A)(B). However, the policy states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Improving the Coordination and Effectiveness of Youth Programs, Exec. Order No. 13459, § 6(c), 73 FR 8003 at *8005. Accordingly, it is recommended that any purported claims under 42 U.S.C. § 1988, 18 U.S.C. §§ 241 and 242, and 42 U.S.C. § 12301, are dismissed with prejudice and without leave to amend as plaintiff cannot state a cognizable claim. [6]

[6]    At the end of her amended complaint, plaintiff recites the standards for a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and caselaw concerning qualified immunity. See Am. Compl. at 18-21. Neither are applicable to the standards applied at this stage.

## 2. 42 U.S.C. § 1985

*4   "Section 1985 prohibits conspiracies to deprive individuals of civil rights." Johnson v. City of New York, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009); see Am. Compl. at 1. As an initial matter, defendant is immune from suit under 42 U.S.C. § 1985 to the extent she seeks damages. See Walker v. Rivera, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *4 (N.D.N.Y. June 29, 2022) (explaining that judicial immunity "immunizes [ ] judges from [ ] causes of action [ ] assert[ed] under both 42 U.S.C. § 1983 and § 1985."), report and recommendation adopted, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

"It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities." Cruz v. N.Y., No. 5:17-CV-00510 (BKS/TWD), 2017 WL 6021838, at *18 (N.D. N.Y. Oct. 27, 2017) (citing Bradley v. Fisher, 80 U.S. 335 (1871); Mireles v. Waco, 502 U.S. 9, 11(1991)), report and recommendation adopted, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). "Immunity from suit is overcome in only two narrow circumstances. [ ] [A] judge is not immune from liability for ... actions not taken in a judge's judicial capacity ... [and] for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citations and quotation marks omitted). "The Supreme Court has 'generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in

nature.' " Id. (quoting Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009)). "Judges enjoy absolute immunity even when a plaintiff offers allegations of 'bad faith or malice.' " Id. (quoting Mireles, 502 U.S. at 11). "Whether an act by a judge is a 'judicial one' relates to the 'nature of the act itself'— whether it is a function that is necessarily performed by a judge." Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *3 (N.D.N.Y. June 6, 2017) (quoting Mireles, 02 U.S. at 12), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017). "The parties must have dealt with the judge in his or her 'judicial capacity.' " Id. (citation omitted).

Plaintiff contends that defendant was acting outside of his judicial capacity, and instead as "a witness" when he changed a custody order. Am. Compl. at 17. Although plaintiff asserts that defendant altered the custody agreement "on his own accord" and "without explanation[,]" custody orders are a judicial function of a family court judge. Id.; see Amato, 2017 WL 9487185, at *3 ("[A]ll of Judge McGinty's alleged 'biased' or 'illegal' conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on 'funding,' allegedly biased decisions in favor of defendant [ ], or making decisions that were not in the best interest of [the child], these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity."); Walker v. Fam. Ct. Judge Catherine Cholakis, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citation quotation marks omitted) (determining that the defendant was entitled to judicial immunity despite allegations of the defendant "lack[ing] judicial competence and exhibit[ing] personal animus and bias" towards the plaintiff).

*5   As defendant was acting in his judicial capacity as a family court judge when he changed the custody order, he is entitled to judicial immunity as to plaintiff's purported § 1985 claim against him in his individual capacity to the extent plaintiff seeks punitive damages. [7] See Cruz, 2017 WL 6021838, at *18 ("Because the allegations in [the p]laintiff's complaint indicate that his claims against [various defendants] were all related to the support, visitation, and/or custody proceedings between [the p]laintiff and [his wife], the Court finds that they are all entitled to judicial immunity and recommends dismissal of [the p]laintiff's complaint against them with prejudice on judicial immunity grounds."); Bliven v. Hunt, 418 F. Supp. 2d 135, 137 (E.D.N.Y. 2005) ("Judges

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 64 of 147

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

are absolutely immune from liability for judicial acts, however erroneous the act and however evil the motive."); Kampfer v. Scullin, 989 F. Supp. 194, 202 (N.D.N.Y. 1997) ("[T]he doctrine of absolute judicial immunity bars suits for monetary damages, including compensatory and punitive damage suits."). Additionally, defendant is immune from suit under the Eleventh Amendment to the extent plaintiff seeks to sue him in his "judicial" or official capacity for damages. See Washington v. Ciccone, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021) ("While judicial immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities."), report and recommendation adopted, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021); Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008)("Claims against a government employee in his official capacity are treated as a claim against the municipality[.]").

7       Plaintiff states that see seeks "zero monetary damages, punitive damages[.]" Am. Compl. at 1. It is unclear whether the "zero" extends to punitive damages. Id.

"Although the doctrine of judicial immunity provides that a judge is not liable for damages for acts performed in the exercise of her judicial function, judicial immunity does not bar actions seeking prospective injunctive relief against judicial officers. Nor does judicial immunity bar actions seeking declaratory relief." Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 534 (N.D.N.Y. 1997) (citations omitted). Further, "the Eleventh Amendment does not bar a suit against a state official when that suit seeks ... prospective injunctive relief." Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State, 336 F. Supp. 3d 50, 65 (E.D.N.Y. 2018) (citations and quotation marks omitted). However, "[w]hen 'only past acts are involved,' declaratory relief is unavailable." Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (citations omitted). Plaintiff's allegations concern only past acts; therefore, she is not entitled to declaratory relief. See, e.g., Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022). Moreover, whether plaintiff seeks the Court's involvement in past custody orders or ongoing custody proceedings, both requests are likely barred by the Younger and Rooker-Feldman doctrines. See Younger v. Harris, 401 U.S. 37 (1971); Rooker v. Fidelity Trust Co., 263 U.S. 413; District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

"[T]he Supreme Court has established that plaintiffs can properly bring a federal action 'seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.' " Torres v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:20-CV-301 (GLS/TWD), 2020 WL 7316120, at *3 (N.D.N.Y. Dec. 11, 2020) (citations omitted); see Ex Parte Young, 209 U.S. 123 (1908). "Under this doctrine, an action may proceed against a state official when a plaintiff: '(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective.' " Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)). However, under the Younger abstention doctrine, "federal courts are forbidden from enjoining ongoing state proceedings." McKnight v. Middleton, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order) (citation omitted). "The Younger abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or 'quasi-criminal,' proceedings; and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.' " Walker, 2022 WL 2341544, at *6 (quoting Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)). "Younger abstention is mandatory when three conditions are met: '(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.' " McKnight, 699 F. Supp. 2d at 520.

*6 It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention. See generally Am. Compl. [8] However, "the heart of this case is a child custody dispute, a matter rightfully reserved for state courts." McKnight, 699 F. Supp. 2d at 520; see Walker, 2022 WL 2341544, at *6 (collecting cases applying Younger abstention in the context of child custody disputes). Additionally, "[p]laintiff would [likely] have 'an adequate opportunity for judicial review of the federal [ ] claims' in state court." McKnight, 699 F. Supp. 2d at 520-21 (quoting McGowan, 282 F.3d at 198). "For example, after the Family Court makes its final disposition on custody and visitation, [the p]laintiff may appeal that decision to the Appellate Division and raise the unconstitutionality of the N.Y. Dom. Rel. Law and the orders of the Family Court ... in that court." Id. Thus, it is likely that plaintiff's request for injunctive or declaratory relief are barred insofar as there are pending custody proceedings.

2022 WL 17418268

8    Plaintiff attaches to her amended complaint protective orders against the children's father from December 2015 and March and October 2019, a visitation order from April 2019, and a family offense petition from October 2019. See Am. Compl. at 5-7, 9-12. In her original complaint, plaintiff specifically requested "injunctive relief and a permanent restraining order against [defendant] to stop his abuse and to avoid any further harm." Compl. at 6. She also sought declaratory relief in the form of statements that (1) "the policies, practices, procedures and standards [of d]efendant apply to her contested lawsuit proceedings, contested motion hearings and trail to issued Custody and related Orders are 'program activities'[; (2)] Custody Order are 'services' as defined by ADA which ADA equal rights, opportunities and benefits, direct threat risk prevention modification rights and accommodation rights apply to[; and (3)] declar[e d]efendant[']s [ ] practices ... a[s] unconstitutional." Id. at 5. The undersigned previously noted that any relief concerning past custody orders and any intervention into ongoing family court proceedings are likely barred by the Younger and Rooker-Feldman doctrines. See Dkt. No. 6 at 16, n.7. Plaintiff does not state in her amended complaint the precise declaratory or injunctive relief she seeks. See generally Am. Compl.

Next, any claim asking the Court to provide a declaratory judgment on a prior custody order is barred by the Rooker-Feldman doctrine. "The *Rooker-Feldman doctrine* bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." Dorce v. City of N.Y., 2 F.4th 82, 101 (2d Cir. 2021). For the Rooker-Feldman doctrine to apply: "(1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." Id. (citation and quotation marks omitted).

It appears that plaintiff is challenging Judge McGinty's December 2019 custody order granting the children's father custody. See Am. Compl. at 17. Intervention into that custody order is barred by the Rooker-Feldman doctrine. See Phifer v. City of N.Y., 289 F.3d 49, 57 (2d Cir. 2002) ("There

is no question that *Rooker-Feldman* bars [the plaintiff's] challenges to the family court's decisions regarding custody, neglect, and visitation."); Amato, 2022 WL 226798, at *11 (citation omitted) ("[I]t appears [the p]laintiff 'lost' in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.").

*7  Plaintiff also fails to state a claim for relief under § 1985. To plead a conspiracy claim, "a plaintiff must allege: (1) a conspiracy"; "(2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges or immunities under the laws;" "(3) an overt act in furtherance of the conspiracy;" "and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). In her amended complaint, plaintiff states that "this case involves a multifaceted campaign to silence, harass, and discredit [p]laintiff for exercising her freedoms and rights afforded and protected by United States Law." Am. Compl. at 2. Plaintiff has only named one defendant and she does not otherwise allege any facts that would support a conspiracy claim. See generally Am. Compl.; see also Thomas, 165 F.3d at 146 (citations omitted) (explaining that "[a] conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing the parties have a tacit understanding to carry out the prohibited conduct.' "); see also Walker, 2022 WL 2341544, at *5 (citation and quotation marks omitted) ("[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."). Accordingly, it is recommended that plaintiff's purported § 1985 claim seeking injunctive and declaratory relief against defendant in his individual and official capacities be dismissed without prejudice, but be dismissed with prejudice and without leave to amend to the extent she seeks punitive damages.

### 3. ADA Claims

Plaintiff's amended complaint raises three ADA claims: Title II discrimination and retaliation claims and a Title III discrimination claim. See generally Am. Compl. (citing, inter alia, 42 U.S.C. §§ 12182 and 12203, and "Title II claim of American Disabilities Act"). First, "Title III of the ADA proscribes discrimination against the disabled in

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 66 of 147

2022 WL 17418268

public accommodations[,]" stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected, 511 F.3d 238 (2d Cir. 2004) (quoting 42 U.S.C. § 12182(a)); see Benyi v. N.Y., No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *14 (N.D.N.Y. Mar. 23, 2021) ("Title III 'expressly does not apply to public entities, including local governments.' "), report and recommendation adopted, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citations omitted). As plaintiff brings this action against Judge McGinty, whose position is not a "public accommodation[,]" she cannot state a claim under Title III of the ADA, and it is recommended that any purported claim be dismissed with prejudice and without leave to amend. 42 U.S.C. § 12181(7).

Second, as to her Title II claims, the undersigned previously explained in its April 28, 2022, Report-Recommendation and Order, that defendant cannot be sued in his individual capacity under the ADA. See Dkt. No. 6 at 10-11. Judge Suddaby subsequently adopted the Report-Recommendation and Order and dismissed with prejudice the ADA claims against defendant in his individual capacity. See Dkt. No. 8 at 3. As such, the only purported ADA claims that the undersigned now addresses are those seeking to sue defendant in his "judicial" or official capacity. See Rosenfield v. N.Y. State Div. of Veterans' Affs., No. 1:18-CV-1299 (GTS/CFH), 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (collecting cases) ("It is well recognized in this Circuit that individuals cannot be sued in their personal capacity under either the ADA or the Rehabilitation Act.").

Generally, "suits for money damages against state officials in their official capacities are barred by the Eleventh Amendment." Torres, 2020 WL 7316120, at *3. It does not appear that plaintiff seeks money damages in her amended complaint as she states that she is seeking "zero money damages, punitive damages...." Am. Compl. at 1. It is not clear whether plaintiff intended the "zero" to extend to punitive damages; regardless, punitive damages are not an available remedy for an ADA discrimination claim. See Cosby v. Tawanna, No. 3:19-CV-401 (MPS), 2019 WL 1921709, at *5 (D. Conn. Apr. 30, 2019) (citing Barnes v. Gorman, 536 U.S. 181, 189, (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they

may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.")) (explaining that "[p]unitive damages are not available in private suits under the ADA or the [Rehabilitation Act].") ; see also Askins v. N.Y.C. Transit, No. 11-CV-6371 (PGG), 2013 WL 142007, at *6 (S.D.N.Y. Jan. 8, 2013) (same). [9] Declaratory relief under the ADA is also unavailable. See Torres, 2020 WL 7316120, at *4; see also T.W. v. N.Y State Board of Law Examiners, 16-CV-3029 (RJD/MMH), 2022 WL 2819092, at *8 (E.D.N.Y. July 19, 2022) ("The declaratory relief T.W. seeks — a declaration that the individual Board member defendants violated Title II — is plainly foreclosed by the Ex parte Young doctrine."). However, "prospective injunctive relief [ ] may be asserted against [ ] individual defendants [ ] in their official capacities[ ]" under Title II of the ADA. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). [10]

[9]     If plaintiff were to seek monetary damages, the undersigned incorporates by reference its discussion in its April 28, 2022, Report-Recommendation and Order concerning Congress' abrogation of Eleventh Amendment immunity concerning money damages. See Dkt. No. 6 at 14, n.6; see also Colliton v. D'Alessio, No. 22-CV-7200 (LTS), 2022 WL 4110191, at *3, n.2 (S.D.N.Y. Sept. 6, 2022) (citations omitted) (declining to address whether Congress abrogated sovereign immunity for Title II claims that "actually violate[ ] the Fourteenth Amendment" because the plaintiff "fail[ed] to state a claim under Title II of the ADA).

[10]    The undersigned notes, however, that the Younger doctrine cautions against interfering with ongoing family court matters. See supra at 11-14; see also Amato, 2022 WL 226798, at *11.

*8   Whether punitive damages are available for an ADA retaliation claim is not as straightforward as the Second Circuit has not explicitly addressed the issue. See Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 234 (E.D.N.Y. 2005) (citations omitted) (explaining that "the Second Circuit, without analyzing the issue, has affirmed an award of compensatory damages in a retaliation case brought under the ADA[ ]"; "employees who prevail on a claim under Title I of the ADA may recover compensatory and punitive damages and demand and receive a trial by jury[ ]" and the remedies available for retaliation under the ADA are commensurate with those available under Title

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 67 of 147

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

I[.]"). At this juncture, the undersigned need not determine whether plaintiff could recover punitive damages for an ADA retaliation claim because, as explained infra, plaintiff has not sufficiently stated a claim for relief.

### a. Discrimination

To support an ADA discrimination claim, "a plaintiff must show the following: (1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity; and (3) such exclusion or discrimination was due to [plaintiff's] disability." B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (citation and quotation marks omitted). "Although the scope of Title II is not limitless, the phrase services, programs, or activities has been interpreted to be a catch-all phrase that prohibits all discrimination by a public entity." Hulett v. City of Syracuse, 253 F. Supp. 3d 462, 484 (N.D.N.Y. 2017) (quoting, inter alia, Noel v. N.Y.C. Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012)) (quotation marks and internal citation omitted). [11]

> [11] The undersigned incorporates by reference its previous discussion concerning whether defendant is a "public entity"—an analysis that the undersigned need not perform as plaintiff has not alleged sufficient facts to surpass the threshold "disability" inquiry. See Dkt. No. 6 at 12, n.5; 14-15, n.6.

As with her original complaint, here too, plaintiff's claim fails because she has not plausibly alleged a "disability." Dkt. No. 6 at 13-15. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[ ]." 42 U.S.C. § 12101(1).

### i. Whether plaintiff has, or has a record of, a physical or mental impairment that substantially limits one or more major life activities

"[A] plaintiff who seeks to show that he [or she] is disabled within the meaning of the ADA must do more than 'merely submit evidence of a medical diagnosis of an impairment.' " Sussle v. Sirina Prot. Sys. Corp., 269 F.

Supp. 2d 285, 305 (S.D.N.Y. 2003) (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S 184, 198 (2002), overturned on other grounds by ADA Amendments Act of 2008, Pub. L 110-325, 122 Stat. 3553 (Jan. 1, 2009)). "A diagnosis alone is insufficient to establish disability under the statute." Ibela v. Allied Universal, No. 21-1995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (citing Toyota Motor Mfg., 534 U.S at 198). Additionally, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working[ ]"; as well as "major bodily functions" such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions' within the definition of 'major life activities.' " 42 U.S.C. § 12102(2) (A),(B).

**\*9** The Second Circuit has clarified that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one." Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021). The substantial-limitation inquiry "usually will not require scientific, medical, or statistical analysis," and is "made without regard to the ameliorative effects of mitigating measures[.]" 29 C.F.R. § 1630.2(j)(1)(v), (vi); see also 42 U.S.C. 12102(4)(E). Additionally, "a plaintiff's actual disability claim under the ADA does not fail solely because he [or she] failed to "state that his [or her disability] will be permanent or chronic ... [or] indicate the duration or long-term impact of his [or her] impairment such that the Court may infer that his [or her] injury was not temporary." Id. at 93-94 (citation and quotation marks omitted) (alterations in original). However, "[w]hile an impairment lasting less than six months can constitute a disability since the 2008 amendments, it obviously does not follow that such an impairment will constitute a disability." Id. (citation omitted); see 28 C.F.R. § 35.108(d)(1)(i).

Plaintiff does not explicitly state what her "disability" is but asserts that she had a stroke and was hospitalized, and that defendant did not believe her hospitalization and "her health and safety" were reason enough to adjourn the custody proceeding. [12] Am. Compl. at 13-17. Plaintiff has not alleged any facts explaining how her stroke or hospitalization substantially limited one or more of her major life activities. See generally Am. Compl. In the hospital record documenting plaintiff's stroke, it was noted that an "[e]chocardiogram was found to have global hypokinesis with ejection fraction of

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

40-45%." Id. at 15. The hospital record also notes that plaintiff was diabetic and had low iron form uterine bleeding. See Am. Compl. at 15. However, plaintiff does not allege that either of these conditions caused her hospitalization or are a "disability." See generally Am. Compl.

> 12    As explained in the undersigned's April 28, 2022, Report-Recommendation and Order, in her original complaint, plaintiff alleged that because of defendant's actions, she developed post-traumatic stress disorder ("PTSD"). See Dkt. No. 6 at 14-15; see also Compl. at 14. Plaintiff does not reallege any facts related to PTSD in her amended complaint. See generally Am. Compl.

Although plaintiff provided documentation to corroborate that she was in the hospital following a stroke, there is no indication of how it limited her activities. See id. at 15-16. This is insufficient to establish a "disability." See Ouderkirk, 2021 WL 4958845, at *5 (determining that the plaintiff's complaint "failed to allege facts plausibly suggesting that [the p]laintiff is disabled within the meaning of the ADA" where the plaintiff alleged that the defendant "took [the p]laintiff's arm brace that she 'wore for a disability and subjected her to several weeks of physical pain.' "); but see Bernheim v. N.Y.C. Dep't of Educ., No. 19-CV-9723 (VEC/JLC), 2021 WL 2619706, at *8 (S.D.N.Y. June 25, 2021) (concluding that the plaintiff "sufficiently alleged a disability under the ADA by pleading" "that her severe [irritable bowel syndrome ("IBS")] has substantially limited her ability to work. Specifically, she alleges that due to her severe IBS, she has had to 'take a number of absences on an intermittent basis' and also points to a 'six month medical sabbatical' she took for her condition.... [The plaintiff] has thus sufficiently alleged a disability under the ADA by pleading that the irregularity of her bowel functions, due to her 'severe' IBS, limited her ability to attend her teaching job on an intermittent to long term basis."), report and recommendation adopted, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021); Blair v. SUNY Univ. at Buffalo, No. 17-CV-1317S, 2020 WL 695870, at *6 (W.D.N.Y. Feb. 11, 2020) (explaining that the plaintiff's complaint referring "to a need for 'frequent visits to the bathroom' to manage his Crohn's disease[ ]" and "his allegation of 'low blood volume' " is sufficient to establish a disability).

**\*10** It is generally known that that a stroke impacts numerous functions including, for example, walking, memory, emotion regulation, and talking. [13] Plaintiff's

echocardiogram also indicated that she had an "ejection fraction[.]" Am. Compl. at 15. If an ejection fraction is between forty to fifty-five percent, that is "[b]elow normal heart function. Can indicate previous heart damage from heart attack or cardiomyopathy." [14] This result appears to indicate that plaintiff's circulatory system was not functioning perfectly. See 42 U.S.C. § 12102 (including "the operation of a major bodily function" such as "circulatory" in the definition of "a major life activity"). However, neither the hospital reports, nor plaintiff's amended complaint indicate how plaintiff's impairments substantially limited her in one or more major life activity and it was only through the undersigned's independent research that it learned of the symptoms from a stroke and an ejection fraction may be experienced by the general public. See generally Am. Compl.; see O'Connor v. N.Y. State Dep't of Fin. Servs., No. 1:21-CV-00828 (BKS/ATB), 2022 WL 3998099, at *3 (N.D.N.Y. Sept. 1, 2022) (The "[p]laintiff fails to identify any activity that her depression or PTSD impairs. But even assuming [the p]laintiff sufficiently alleged the first two steps with respect to hearing loss, depression, and PTSD, the Amended Complaint is devoid of factual details that would allow an inference that these impairments 'substantially limit' any major life activity."); Owens v. Longo, No. 06-CV-0281 (GLS/DRH), 2008 WL 84594, at *6 (N.D.N.Y. Jan. 7, 2008) ("[A] plaintiff will not automatically be found disabled upon presentation of records of a medical appointment or surgery regarding an impairment."), aff'd, 326 F. App'x 626 (2d Cir. 2009) (summary order); Horwitz v. L. & J.G. Stickley, Inc., 20 F. App'x 76, 80 (2d Cir. 2001) (summary order) ("Because past hospitalization, even coupled with continued treatment, does not create a record of a substantially limiting medical condition, the plaintiff was not protected by the ADA.").

> 13    Stedmans Medical Dictionary 397760 (Nov. 2014); Mayo Clinic, Stroke, https://www.mayoclinic.org/diseases-conditions/stroke/symptoms-causes/syc-20350113 (last visited September 26, 2022).

> 14    Ejection Fraction: What the Numbers Mean, Penn Heart and Vascular Blog, (April 13, 2022), https://www.pennmedicine.org/updates/blogs/heart-and-vascular-blog/2022/april/ejection-fraction-what-the-numbers-mean.

Although the standards to be applied are liberal for pro se plaintiffs and the definition of "disability" is to be construed broadly, plaintiff has failed to allege any facts concerning how any impairment limits her major life activities other than her being in a generally "weakened[,]" "[s]ick," and

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 69 of 147

"crushed" state. Am. Compl. at 17. This is insufficient to plead a qualifying disability under the ADA. See O'Connor, 2022 WL 3998099, at *3 (citations omitted) ("While courts broadly apply the term 'substantially limits,' a '[p]laintiff still must plead sufficient facts to raise a right to relief above a speculative level.' ").

### ii. Whether plaintiff was "regarded as" having an impairment that substantially limits one or more major life activities

A "disability" can be established if an individual is "regarded as having" an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(C). An individual can be "regarded as having such an impairment" "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). A "plaintiff need only establish that [the] defendant regarded him [or her] as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [defendant] believed the impairment affected him [or her].' " Rodriguez v. Verizon Telecom, No. 13-CV-6969 (PKC/DCF), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) (quoting Hilton v. Wright, 928 F. Supp. 2d 530, 554 (N.D.N.Y. 2013)). However, "[a]n individual is not 'regarded as having [a disability]' if the public entity demonstrates that the impairment is, objectively, both 'transitory' and 'minor,' with 'transitory' statutorily defined as 'lasting or expected to last six months or less.' " Hamilton v. Westchester Cnty., 3 F.4th 86, 94 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(f)(2)); see also 42 U.S.C. § 12102(3)(B).

Plaintiff asserts that she "made a reasonable request to adjourn the court date and necessary for the provisions of her health and safety[.]" Am. Compl. at 16-17. The hospital record similarly states that "because Family Court judge did not consider her hospitalized status as justification to delay deciding on custody for her minor children, ... discharge was attested in order for patient to appear in family court." Id. at 15. There is no indication of what defendant was told or believed concerning plaintiff's "hospitalization[,]" such as whether or what physical or mental impairment plaintiff had or how long it would last.[15] Id. Whether a plaintiff is "regarded" as having a disability is "a question of intent[.]" Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). Plaintiff has not alleged what defendant believed or perceived concerning an impairment. See generally Am. Compl. For instance, there is no indication if defendant believed the veracity of plaintiff's statement that she was in the hospital, or that she was suffering from any mental or physical impairment. See Sacks v. Gandhi Eng'g Inc., No. 11-CV-5778 (DAB/DF), 2013 WL 8282955, at *13 (S.D.N.Y. Aug. 23, 2013) (citing 29 C.F.R. § 1630.2(h)(1) ("Physical or mental impairment" to mean "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.")) (concluding that there was sufficient evidence to withstand summary judgment where the defendant told the plaintiff he was fired because of "his lack of 'agility' "), report and recommendation adopted, 999 F. Supp. 2d 629, 636 (S.D.N.Y. 2014); see also Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018) (citation omitted) ("While the [p]laintiff has alleged that he informed the [d]efendants of his disability, he has not alleged that his employer, BOCES, regarded him as disabled under the ADA. In fact, even when BOCES agreed to temporarily accommodate his disability, [a defendant] specifically noted that 'it is not clear we are obligated to provide you with an accommodation.' ").

15    In plaintiff's original complaint, she specified that her family court attorney told defendant that plaintiff had a stroke. See Compl. at 6. However, even if plaintiff had repleaded this specific information, plaintiff has not sufficiently alleged what defendant's belief was concerning any impairment. See generally Am. Compl. Plaintiff is reminded that amended pleadings are intended to completely replace prior complaints and she must include all of the allegations, without reference to a prior complaint, that she seeks to base her claims on.

*11    Accordingly, plaintiff has not shown that she was "regarded as" having a disability within the meaning of the ADA. Cf. Gentile v. Potter, 509 F. Supp. 2d 221, 238 (E.D.N.Y. 2007) (citation omitted) ("Mere knowledge is insufficient to prove 'either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.' "). As plaintiff has not sufficiently plead a "disability" or that defendant "regarded" her as having a disability, the undersigned recommends dismissing plaintiff's

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 70 of 147
Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17418268

ADA discrimination claims against defendant in his official capacity without prejudice.

As to the undersigned's April 28, 2022, Report-Recommendation and Order discussion concerning the sufficiency of the original complaint and whether plaintiff was denied access to services "because of" a disability, the undersigned clarifies that it does not appear that plaintiff is making an intentional discrimination claim. Dkt. No. 6 at 13-15. Rather, plaintiff is making a reasonable accommodation claim. See Am. Compl. at 2, 16-17. To plead such a claim, plaintiff is not "required [to] pro[ve] that the defendants' actions were motivated by animus towards the [disabled]." Amato v. McGinty, No. 1:17-CV-1280 (GLS/TWD), 2019 WL 8064011, at *3 (N.D.N.Y. Aug. 7, 2019) (quoting Good Shepherd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 562 (7th Cir. 2003)). Rather, plaintiff "must [ ] 'demonstrate that a denial of benefits occur[ed] ... because of [her] disability.' " Id. (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 278 (2d Cir. 2003)) (internal quotation marks and citations omitted). "Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." Henrietta, at 277. However, as plaintiff has not sufficiently alleged a disability, the undersigned need not determine whether plaintiff sufficiently alleged that a disability caused her difficulty accessing any "benefits[ ]" that would amount to a denial of a "reasonable accommodation." Id. at 282 (citation omitted) ("A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought.").

### b. Retaliation

To plead a claim for retaliation under the ADA, there must be facts alleging that: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002) (citations omitted). "Requesting reasonable accommodations for a disability may also constitute protected activity." Konieczny v. N.Y. State Div. of Parole, 647 F. Supp. 2d 256, 264 (W.D.N.Y. 2009) (citation omitted). "Generally, any activity designed

to resist or antagonize ...; to contend against; to confront; resist; [or] withstand discrimination prohibited by Title VII constitutes a protected oppositional activity." Straw v. Wolters Kluwer United States, Inc., No. 20-CV-3251 (LLS), 2020 WL 2115177, at *4 (S.D.N.Y. May 1, 2020), appeal dismissed (July 2, 2020) (quotation marks omitted) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 317 (2d Cir. 2015)). "[A] plaintiff pursuing a retaliation claim need not prove that he or she was actually 'disabled' within the meaning of the ADA." Frantti v. N.Y., 414 F. Supp. 3d 257, 290 (N.D.N.Y. 2019) (citation omitted).

**\*12** Plaintiff's initial reference to a retaliation claim is in her recitation of various statutes, in which she includes the ADA's retaliation provision, 42 U.S.C. § 12203. See Am. Compl. at 1. Plaintiff then states that defendant's "willfully brazen behavior can no longer threaten my family and/ or retaliate against potential witnesses, and profit off of someone else's loss." Id. at 2. Plaintiff explains that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Although is it possible for a retaliation claim to be based on action taken towards a thirty-party, plaintiff does not allege that defendant acted in such a way towards plaintiff's sister because of an exercise of protected activity. But see Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 174-75 (2011) (explaining that in the context of a Title VII claim, retaliation against a third party may constitute an adverse action if it would have dissuaded the plaintiff from engaging in his or her protected activity); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). It is also not clear whether plaintiff contends that defendant took actions against her sister because of her request to adjourn the proceedings, because plaintiff was in the hospital, or for some other non-disability related reason. See Am. Compl. at 17.

Plaintiff does not otherwise allege facts concerning retaliation against her for engaging in protected activity. See generally Am. Compl. Plaintiff does not assert, for example, that any adverse action was taken against her because she "made a reasonable request to adjourn the court date[.]" Id. at 16. Rather, plaintiff states that defendant denied her request "with blatant disrespect for the well being of [p]laintiff" and he subsequently granted her children's father custody, "without explanation[.]" Id. at 17; but see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) ("A retaliatory purpose can be shown indirectly by timing: protected activity

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 71 of 147

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

followed closely in time by adverse [ ] action."). Plaintiff also states that defendant's conduct was the result of "cultural and class bias" and was an "outrageous unauthorized social experiment[ ]" which does not implicate retaliation against protected activity under the ADA. Am. Compl. at 3.

Although plaintiff's pro se complaint is to be read liberally and to raise the strongest arguments it suggests, it is not the function of initial review to read any claims into the complaint. See Triestman, 470 F.3d at 477 (citations and quotation marks omitted) ("There are many cases in which we have said that a *pro se* litigant is entitled to 'special solicitude,' that a *pro se* litigant's submissions must be construed 'liberally,' and that such submissions must be read to raise the strongest arguments they 'suggest[.]' At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not 'consistent' with the *pro se* litigant's allegations, or arguments that the submissions themselves do not 'suggest[.]' ").

As plaintiff has not elaborated on any purported retaliation claim beyond listing the statute as one of many under which she seeks to bring this action, and using the word "retaliation," the undersigned recommends dismissing it without prejudice. See Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *9 (N.D.N.Y. Jan. 26, 2022) (citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning")) (explaining that "[t]he use of 'buzz words' such as 'disability,' 'accommodation,' and 'retaliation' does not cure a pleading defect.... She does not allege any facts suggesting a plausible connection between her alleged PTSD and '[Legal Abuse Syndrome]' and the actions that were taken against her in the state court proceedings.").

### 4. "Tortious Interference with Parental Rights Under the Common Law"

Plaintiff purports to assert a claim of "tortious interference with parental rights under the common law[.]" Am. Compl. at 1. The Eastern District of New York has explained that "[w]ith respect to 'parental' rights, [the] plaintiffs have not cited, nor has this Court identified, any cause of action related to such rights. Most cases involve the more specific right of custody...." Decter v. Second Nature Therapeutic

Program, LLC, 42 F. Supp. 3d 450, 457 (E.D.N.Y. 2014). "[T]he existence and contours of a tort cause of action for interference with parental custody under New York law are far from clear." Pittman by Pittman v. Grayson, 149 F.3d 111, 120 (2d Cir. 1998). However, "[t]he 'unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort.' " Whalen v. Cnty. of Fulton, 941 F. Supp. 290, 299 (N.D.N.Y. 1996) (quoting Kajtazi v. Kajtazi, 488 F. Supp. 15, 18 (E.D.N.Y. 1978)), aff'd, 126 F.3d 400 (2d Cir. 1997). "The plaintiff must have a legal right to custody in order to possess a cause of action for custodial interference." Id. (citation omitted).

**\*13** "[T]he State of New York has not waived its Eleventh Amendment immunity to suit in federal court for state common law [torts]." Hayut v. State Univ. of N.Y., 127 F. Supp. 2d 333, 340 (N.D.N.Y. 2000); cf. Lambert v. N.Y. State Office of Mental Health, No. 97-CV-1347 (JG), 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000) ("Likewise, the Eleventh Amendment bars [the plaintiff]'s common law tort claim for intentional infliction of emotional distress."), aff'd, 22 F. App'x 71 (2d Cir. 2001) (summary order). Judicial immunity has also been applied to common law torts. See, e.g., Holbert v. Cohen-Gallet, No. 05-CV-1281 (NGG), 2006 WL 47452, at *6 (E.D.N.Y. Jan. 9, 2006) ("Because the doctrine of judicial immunity rests on the need for uninhibited judicial decision-making, immunity extends to the exercise of judicial power by any judicial officer.... Presiding over the [the p]laintiff's custody modification proceeding was without question a judicial act and [the defendant], as a Family Court Referee, had jurisdiction to do so. Thus, [the defendant's] actions in the courtroom ... cannot be grounds for tort liability against her."). As such, defendant is immune in both his individual and "judicial" capacities.

Further, "a district court 'cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.' " Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). As the undersigned recommends denying plaintiff's federal claims, the undersigned also recommends declining to exercise supplemental jurisdiction over any purported state law claim. See id. (citing Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed)). [16]

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 72 of 147

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

16    Plaintiff also includes a header titled "Defendant's Fraudulent Scheme to Hide and/or Tamper with Witness and/or Alter Court Records." Am. Compl. at 21. Plaintiff submitted a one-page letter from a court clerk at the Town of Rochester Justice Center which states, "We have no records pertaining to Docket No. 18070010." Id. at 22. Plaintiff also states that she has been unable to obtain transcripts from the relevant custody proceedings. See id. at 17. Plaintiff has not otherwise plead any facts that suggest that defendant has taken any actions to tamper with evidence, or hide or alter any records; thus, there are no facts on which the undersigned could find a plausible claim for relief. See London v. Cnty. of Ulster, No. 1:14-CV-01095 (MAD), 2015 WL 1579147, at *9 (N.D.N.Y. Apr. 9, 2015) ("While [the p]laintiff has scripted pages upon pages of accusations against these two [d]efendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here. Thus, we recommend dismissing these [d]efendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).").

### D. Amendment of the Complaint

"Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile." Griffin v. Doe, 71 F. Supp. 3d 306, 319-20 (N.D.N.Y. 2014) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)). "[A]n opportunity to amend is not required where the plaintiff has already amended the complaint." Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (citation omitted). In light of plaintiff's pro se status, it is recommended that she be afforded another opportunity to amend her complaint for the claims that defendant is not immune and where there is a cognizable cause of action. See Amato, 2022 WL 226798, at *12 ("[I]n light of [the p]laintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save [the p]laintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review.").

### III. Appointment of Counsel

**\*14** In Judge Suddaby's June 13, 2022, Decision and Order, he addressed plaintiff's two motions to appoint counsel. See Dkt. Nos. 4, 7; Dkt. No. 8 at 2-3. Judge Suddaby denied plaintiff's request for counsel without prejudice because plaintiff had not substantiated her efforts to procure counsel, it was too soon to determine whether plaintiff's claims were of substance, and the other relevant factors weighed against granting the request. See Dkt. No. 8 at 2-3.

In her amended complaint, plaintiff states that "[a]lthough this Court noted that this Pro Se litigant is able to effectively litigate this action thus far, ... my disabilities put me in an inferior position and not on equal ground as a highly trained and skilled professional attorney"; therefore, she "specifically request[s] appointed counsel to ensure a just and proper opportunity to further present my claim...." Am. Compl. at 2.

"[T]he indigent [person must demonstrate that they are] unable to obtain counsel before appointment will even be considered." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff has not asserted any information indicative of an attempt to secure counsel. See generally Am. Compl. Additionally, "in deciding whether to appoint counsel ... the [court] should first determine whether the indigent's position seems likely to be of substance." Hodge, 802 F.3d at 61. If the claim is likely to be of substance, the Court must consider certain factors, including

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

Id. "[A]ppointments of counsel are not to be granted 'indiscriminately.' " Edwards v. Troy Police Dept., No. 1:19-CV-543 (LEK/CFH), 2019 WL 13217234, at *1 (N.D.N.Y. Oct. 23, 2019) (quoting Cooper v. A. Sargente & Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)). "Although 28 U.S.C. § 1915(e)

**Terpening v. McGinty**, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 73 of 147

(1) authorizes the court 'to request an attorney to represent any person unable to afford counsel,' a civil litigant has no constitutional right to the assistance of counsel." Id. (quoting Berrios v. N.Y.C. Housing Auth., 564 F.3d 130, 135 (2d Cir. 2009)).

As Judge Suddaby stated in his Decision and Order, "because [d]efendant has not yet appeared and answered, the Court is unable to determine, as a threshold matter, whether [p]laintiff's claims are likely to be of substance." Dkt. No. 8 at 2-3 (citing Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994)). Next, "although plaintiff contends that h[er] mental illness/diagnoses make it difficult for h[er] to litigate this action, it appears that plaintiff has been able to represent h[erself] thus far by communicating with the Court and filing a detailed complaint in this action." Edwards, 2019 WL 13217234, at *2. Plaintiff was able to then review the undersigned's Report-Recommendation and Order, and Judge Suddaby's Decision and Order and produce an amended complaint attempting to address the faults identified in her original complaint. See Am. Compl. As such, it does not appear that, as to date, plaintiff has been unable to effectively litigate this action. Finally, "[a]ppointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances, not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation." Edwards, 2019 WL 13217234, at *2. "Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case." Id. Accordingly, plaintiff's request for the appointment of counsel is denied without prejudice.

### IV. Conclusion

**\*15 WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that any purported claims under 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 12301(3)(5)(7)(A)(B), 42 U.S.C. § 12182, and "tortious interference with parental rights under the common law" (Dkt. No. 9) be **DISMISSED WITHOUT PREJUDICE WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's purported (1) 42 U.S.C. § 1985 claim against defendant in his individual and official capacities seeking injunctive and declaratory relief; and (2) ADA claims against defendant in his official capacity seeking

injunctive relief (Dkt. No. 9) be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**;[17] and it is further

[17]  Should the District Judge adopt this Report-Recommendation & Order, permitting plaintiff file a second amended complaint, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate by reference any portion of earlier complaints and may not attempt to replead claims that have already been dismissed by this Court with prejudice.

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is further

**ORDERED**, that plaintiff's request for the appointment of counsel is **DENIED without prejudice**.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[18]

[18]  If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day

2022 WL 17418268

that is not a Saturday, Sunday, or legal holiday. Id.
§ 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17418268

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 75 of 147
Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17415121

2022 WL 17415121
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,

v.

Anthony MCGINTY, in both judicial
and individual capacity, Defendant.

1:21-CV-1215 (GTS/CFH)
|
Signed December 5, 2022

**Attorneys and Law Firms**

TAMMY TERPENING, Plaintiff, Pro Se, 17 Blair Road, Apt.
6, Kerhonkson, New York 12446.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil
rights action filed by Tammy Terpening ("Plaintiff") against
Anthony McGinty ("Defendant"), is United States Magistrate
Judge Christian F. Hummel's Report-Recommendation
recommending that certain of the claims asserted in Plaintiff's
Amended Complaint be dismissed with prejudice, and that the
remainder of those claims be dismissed without prejudice and
with leave to amend. (Dkt. No. 10.) Plaintiff has not filed an
objection to the Report-Recommendation, and the deadline in
which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant filings in this action, the
Court finds no error in the Report-Recommendation, clear or
otherwise.[1] Magistrate Judge Hummel employed the proper
standards, accurately recited the facts, and reasonably applied
the law to those facts. As a result, the Court accepts and adopts
the Report-Recommendation for the reasons stated therein.

[1]     When no objection is made to a report-
        recommendation, the Court subjects that report-
        recommendation to only a clear error review. Fed.
        R. Civ. P. 72(b), Advisory Committee Notes: 1983
        Addition. When performing such a "clear error"
        review, "the court need only satisfy itself that there
        is no clear error on the face of the record in order to

accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 10) is **ACCEPTED** and
**ADOPTED**; and it is further

**ORDERED** that the following claims asserted in Plaintiff's
Amended Complaint (Dkt. No. 9) are **DISMISSED with
prejudice**:

 (1) any claims under 18 U.S.C. §§ 241 and 242,

 (2) any claims under 42 U.S.C. § 12301(3)(5)(7)(A)(B),

 (3) any claims under 42 U.S.C. § 12182, and

 (4) any claim for "tortious interference with parental rights
    under common law"; and it is further

**ORDERED** that the remaining claims asserted in Plaintiff's
Amended Complaint (Dkt. No. 9)–specifically, her claim
under 42 U.S.C. § 1985 against Defendant in his individual
and official capacities seeking declaratory and injunctive
relief, and her claims under the Americans with Disabilities
Act against Defendant in his official capacity seeking
injunctive relief–**shall be DISMISSED with prejudice**
and without further order of the Court **UNLESS, within
THIRTY (30) DAYS** of the date of this Decision and
Order, Plaintiff files a Second Amended Complaint curing
the pleading defects in those claims identified in the Report-
Recommendation; and it is further

**ORDERED** that, should Plaintiff file a Second Amended
Complaint, the Second Amended Complaint must be a
complete pleading that supersedes and replaces the Amended
Complaint in all respects and does not incorporate by
reference any portion of the Amended Complaint; and it is
further

 **\*2 ORDERED** that, should Plaintiff file a Second Amended
Complaint, the Second Amended Complaint will be referred
to Magistrate Judge Hummel for further review pursuant to
28 U.S.C. § 1915(e).

2022 WL 17415121

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17415121

---

**End of Document**                                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 77 of 147

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,

v.

Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774, Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding *pro se*, filed an action against Ulster County Family Court Judge Anthony McGinty ("Defendant" or "Judge McGinty"). (Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid the filing fee, but instead seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed below, the Court grants Plaintiff's fourth IFP application (Dkt. No. 16) and recommends dismissal of the amended complaint (Dkt. No. 6) in its entirety.

[1]     Amato was terminated as party plaintiff in the related action by Order entered August 7, 2019. *See Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 73. The Court assumes familiarity with the related case.

**I. BACKGROUND**
Plaintiff initiated this action and moved to proceed IFP on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial pleading was not signed and Plaintiff was directed to submit a signed copy of the complaint. (Dkt. No. 5.) On August 13, 2021, Plaintiff submitted a signed copy of the complaint, but also attached five exhibits that were not submitted with the

original pleading. (Dkt. No. 6.) As such, the signed pleading was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17, 2021, and December 17, 2021, this Court denied Plaintiff's motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December 17, 2021, Order, Plaintiff was afforded one final opportunity to submit a fully completed IFP application or pay the entire filing fee by January 6, 2022. (Dkt. No. 14.) Despite the foregoing directive, Plaintiff's fourth IFP application was not filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**
Plaintiff declares in her fourth IFP application that she is unable to pay the filing fee. (Dkt. No. 16.) After reviewing the submission, the Court finds Plaintiff meets the requirement for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED COMPLAINT**

**A. Legal Standard**
28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**\*2** In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### B. Summary of the Amended Complaint

Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1. [2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')—hereby makes these allegations against Defendant herein as follows[.]").

[2]    Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Her disabilities are listed as "ptsd" and "LAS", which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> **\*3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 79 of 147

violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentiality program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.* [3]

[3]  Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

Plaintiff explains that "anytime I enter the Family Court it will be the three of them [4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

[4]  Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

**\*4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 80 of 147

2022 WL 226798

he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15.[5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

[5]     However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16.

He also denied C.A.B. his "full service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.*[6]

Amato v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 226798

6    Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

### C. Discussion

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **\*6**    (b)    Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

### 1. Minor Plaintiff

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 82 of 147

2022 WL 226798

bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at *4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

**\*7** Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

## 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity. [7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at *4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at *4. The same result is required here.

[7]   Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v.*

*Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

**\*8** As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous.[8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

[8]     Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.'" *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to

**Amato v. McGinty, Not Reported in Fed. Supp. (2022)**

2022 WL 226798

liability under Title VII.") (quotation marks and citation omitted).

**\*9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

## 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at \*9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at \*18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed. [9]

[9]
The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, 2018 WL 2108282, at \*4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity, [10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

[10]
As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at \*5 (S.D.N.Y. June 28, 2019) (allowing ADA claims

Case 6:24-cv-00722-BKS-TWD Document 10 Filed 07/16/24 Page 85 of 147

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

**\*10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman* [11] Doctrine, and *Younger* [12] Abstention

[11]   *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414-17 (1923).

[12]   *Younger v. Harris,* 401 U.S. 37 (1971).

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall,* 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City,* 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards,* 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt,* 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal

courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti,* 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g., Amato v. McGinty,* No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at \*8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky,* No. 12-CV-4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005); *Dorce v. City of New York,* 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky,* 2014 WL 5823116, at \*3 (quoting *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir. 1999)).

**\*11** The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive

such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g.*, *Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]

[13]    At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

[14]    If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

### V. PLAINTIFF'S ADDRESS

**Amato v. McGinty, Not Reported in Fed. Supp. (2022)**

2022 WL 226798

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15] ) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

> [15]    While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

## VI. CONCLUSION

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

> [16]    Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

**\*13  RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

> [17]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 226798

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1142144
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,
v.
Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)
|
Signed March 15, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, 175 Parkside Ave, Syracuse, NY 13207, Plaintiff, pro se.

### ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

 **\*1** The Clerk has sent a *pro se* complaint together with an application to proceed *in forma pauperis* ("IFP") filed by Plaintiff John A. Porter, III, to the Court for review. (Dkt. Nos. 1, 2.)

### I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 alleging Defendant Susan Hamlin Nasci, "acting as a non-judicial court employee without proper authority and jurisdiction," violated his "constitutional rights." [1] *Id.* Plaintiff claims "Defendant's actions constitute a violation of the Plaintiff's right to a trial by jury, equal protection of the law, and due process, resulting in substantial emotional and financial harm to the Plaintiff." [2] *Id.* The complaint does not include any other factual allegations.

[1]    The Court takes judicial notice Susan Hamlin Nasci, Esq., is a New York Family Court Support Magistrate. *See* https://ww2.nycourts.gov/courts/5jd/onondaga/index.shtml (last visited Mar. 13, 2024).

[2]    Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

As relief, Plaintiff seeks: (1) $50,000 in actual damages "for medical conditions and lost income due to severe anxiety and reduced work capacity"; (2) $50,000 in compensatory damages for emotional distress "caused by the estrangement from the Plaintiff's son"; (3) $50,000 in punitive damages to "penalize the Defendant and deter similar future misconduct"; (4) "the immediate dismissal" of the "fraudulent child support financial order imposed upon the Plaintiff"; and (5) the "return of all payments made by the Plaintiff under the fraudulent child support order up to the present day." *Id.* at 2.

### II. IFP APPLICATION

Plaintiff declares in his IFP application that he is unable to pay the statutory filing fee to commence this action. (Dkt. No. 2.) After reviewing his application, this Court finds Plaintiff is financially eligible for IFP status. According, Plaintiff's IFP application is granted. [3]

[3]    Plaintiff is advised that he will still be required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

### III. STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion thereof, if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

**\*2** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." Id. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555; see also Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Court will construe the allegations in the complaint with the utmost leniency. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

## IV. ANALYSIS

Liberally construed, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." German v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); see also Myers v. Wollowitz, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) ("42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").[4]

[4]    Plaintiff also claims Defendant, "acting as a non-judicial court employee without proper

authority and jurisdiction, has trespassed upon the Plaintiff's right, specifically under 18 USC Section 242." (Dkt. No. 1 at 1.) However, 18 U.S.C. § 242 is a criminal statute, which does not give rise to civil liability or authorize a private right of action. See Storm-Eggink v. Gottfried, 409 F. App'x 426, 427 (2d Cir. 2011) (holding there is "no private right of action" under 18 U.S.C. § 242).

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).

Having carefully reviewed Plaintiff's complaint and for the reasons discussed below, the Court recommends dismissal of complaint without prejudice and with leave to amend.

### A. Failure to State a Claim

The complaint alleges Defendant denied Plaintiff his "right to a trial by jury, equal protection of the law, and due process." (Dkt. No. 1 at 1.) However, Plaintiff has failed to adequately set forth sufficient factual content to allow this Court to reasonably infer Defendant was personally involved and liable for the alleged unconstitutional conduct. See Iqbal, 556 U.S. at 678. Specifically, he has failed to set forth a short and plain statement stating what Defendant did to him, when she did it, and how he was injured. See id.; see also Fed. R. Civ. P. 8(a)(2). Absent these basic details, Plaintiff's complaint has failed to give Defendant fair notice of what his claims are, and the Court is left with "an unadorned, the-defendant-harmed-me accusation." See Iqbal, 556 U.S. at 678.

**\*3** Therefore, it is recommended that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a).

### B. Judicial Immunity

Judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. Mireles v. Waco, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or

malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action "outside" his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

"New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings."[5] *Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, at *2 (S.D.N.Y. Feb. 5, 2024) (citing *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order)); *see, e.g.*, *Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at *4 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity."), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

[5]    According to the website maintained by the New York State Unified Court System, "[a] 'Support Magistrate' conducts the hearing, taking testimony from both sides concerning their income and expenses and the cost of supporting the child. The parties can present evidence and witnesses and cross-examine each other and the witnesses. The Support Magistrate calculates how much support the non-custodial parent must pay to the parent with custody, and sets a schedule for regular payments." *See* https://ww2.nycourts.gov/courts/5jd/family/support.shtml (last visited Mar. 13, 2024).

While not entirely clear, Plaintiff seems to assert claims for damages and injunctive relief pursuant to Section 1983

against Defendant, a Support Magistrate, who presumably presided over the child support proceedings that resulted in the alleged "fraudulent child support financial order imposed upon the Plaintiff." (Dkt. No. 1 at 1-2.) Plaintiff, however, fails to allege any facts showing Defendant acted beyond the scope of her judicial responsibilities or outside her jurisdiction. *See Mireles*, 509 U.S. at 11-12. Moreover, Plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable.

**\*4** Thus, insofar as Plaintiff sues Defendant "for acts arising out of, or related to, individual cases before [her]," Defendant would be entitled to judicial immunity.[6] *Bliven*, 579 F.3d at 210; *see* 28 U.S.C. § 1915(e)(2)(b)(iii); *see also Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

[6]    Defendant also would be protected under the doctrine of sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). That holding was recently reaffirmed by the Second Circuit. *Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit.").

### C. Jurisdiction

Although the nature of Plaintiff's complaint makes it difficult to precisely determine which doctrines apply, based on the relief Plaintiff seeks, this Court may lack jurisdiction to hear Plaintiff's claims and/or it should likely abstain from hearing Plaintiff's claims.

Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with

jurisdiction over such cases." (citing 28 U.S.C. § 1257)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Sims v. Kaufman*, No. 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) (citing *Legister v. Radowitz*, No. 1:20-CV-9330, 2020 WL 7405672, at *3 (S.D.N.Y. Dec. 16, 2020)) ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted). [7]

> [7] To the extent Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court proceedings, including any post-judgment proceedings, the Court must likely abstain from hearing those claims under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

**\*5** Plaintiff's claims also appear to implicate the domestic relations abstention doctrine, which requires federal courts to abstain from exercising federal question jurisdiction of domestic relations issues such as divorce, child support payments and child custody. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621-24 (2d Cir. 2019) (holding that federal district courts must abstain from exercising federal-question jurisdiction of claims involving domestic-relations issues); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that where a federal district court is "asked to grant a divorce or annulment, determine support payments, or award custody of a child," the court should abstain from exercising its jurisdiction of such claims if "there is no obstacle to their full and fair determination in [the] state courts.") (internal quotation marks omitted); *see, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[C]alculation of support payments is the type of

domestic relations issue that the Court generally abstains from hearing.").

## V. OPPORTUNITY TO AMEND

As discussed above, the Court finds Plaintiff's complaint is subject to dismissal failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a). Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Although the Court has serious doubts about whether Plaintiff can amend to assert an actionable claim given the various jurisdictional and immunity principles discussed above, since this is Plaintiff's initial complaint and out of an abundance of caution, the Court recommends that Plaintiff be given an opportunity to amend to cure the deficiencies identified above.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. [8] Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

> [8] "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

## VI. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. [9] **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[9] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**\*6  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1142144

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3158645
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,

v.

Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)

|

Signed June 25, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, Plaintiff, Pro Se, 175 Parkside Ave, Syracuse, New York 13207.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by John A. Porter, III ("Plaintiff") against Susan Hamlin Nasci, Support Magistrate employed by the Onondaga County Family Court ("Defendant"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be *sua sponte* dismissed with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's Objection to the Report-Recommendation and Amended Complaint. (Dkt. Nos. 4, 5.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no error in the Report-Recommendation, clear or otherwise: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*See generally* Dkt. No. 4.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only two points.

First, even when construed liberally, Plaintiff's "Objection" fails to contain a *specific* challenge to a finding or conclusion contained in the Report-Recommendation. (See generally Dkt. No. 5.) As a result, the "challenged" portions of the Report-Recommendation are entitled to only

a clear-error review, [1] which they easily survive. In the alternative, the Court finds that those portions of the Report-Recommendation survive a *de novo* review.

[1]     When no specific challenge is made to a magistrate judge's report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

Second, rather than file a specific challenge to the Report-Recommendation, Plaintiff has filed an Amended Complaint. (Dkt. No. 5.) This haste to litigate has complicated matters because, even assuming Plaintiff had an absolute right to file such an Amended Complaint under Fed. R. Civ. P. 15(a)(1) despite that he had not yet served his Complaint, [2] an amended complaint supersedes an original complaint in all respects. [3] This means that, potentially, Plaintiff's Amended Complaint has partially mooted Magistrate Judge Dancks' Report-Recommendation, which analyzed Plaintiff's *original* Complaint.

[2]     Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course *within* ... 21 days after serving it ...." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). Here, Plaintiff never served his Complaint; thus, he was arguably not yet *within* the 21-day window in which he could properly file an Amended Complaint as a matter of course. *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at *4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff

never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) never **commenced**.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at *2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within ... 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required.").

3    *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, at 556-57 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."); *cf.* N.D.N.Y. L.R. 7.1(a)(4) ("[T]he proposed amended pleading ... will supersede the pleading sought to be amended in all respects.").

**\*2**  Out of a desire for judicial efficiency, the Court is tempted to apply the recommendations in the Report-Recommendation to Plaintiff's Amended Complaint. However, the Court is mindful of the Second Circuit's admonition that a *pro se* plaintiff's request to amend his complaint when a motion to dismiss is pending should be denied only without prejudice, or perhaps stayed until he has had the benefit of the district court's ruling on the motion to dismiss. 4

4    *See Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find

deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

As a result, the Court has chosen to apply Magistrate Judge Dancks' Report-Recommendation to Plaintiff's original Complaint while deeming Plaintiff's "Amended Complaint" (Dkt. No. 5) as a *proposed* Amended Complaint, and holding that proposed Amended Complaint in abeyance pending confirmation from him that it is indeed the Amended Complaint on which he wishes to proceed.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 4) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No 1) shall be **DISMISSED with prejudice UNLESS, within THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, if Plaintiff wishes his proposed Amended Complaint (Dkt. No. 5) to serve as that Amended Complaint, he shall notify the Court of that fact in writing within thirty days of the date of this Decision and Order; and it is further

**ORDERED** that, should Plaintiff file a timely Amended Complaint (by either of the two methods identified in the two prior paragraphs), it shall be automatically referred to Magistrate Judge Dancks for her review.

**All Citations**

Slip Copy, 2024 WL 3158645

---

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,
v.
Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

TOWNES, District Judge.

*1 Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section– Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4,

Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction. [1]

[1] Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

**Legal Standard**

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at *10 (E.D.N.Y. June 18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

**Factual History**

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York, Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that

the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez [*sic*] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further obligations and all subsequent child support collection efforts were unconstitutional.[2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia,* lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

[2]    *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

## Discussion

### A. *Domestic Relations Exception to Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v.*

*Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *aff'd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at \*11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at \*2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic

2014 WL 5823116

relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at *2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at *1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly-to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid child support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters.").[3] This Court need not resolve whether such a narrow challenge would be barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,*[4] the *Rooker–Feldman* doctrine.

[3] *But see King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not

examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted).

[4] Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

**B.** *Rooker–Feldman Doctrine*
The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of

2014 WL 5823116

these requirements may be loosely termed procedural; the second and third may be termed substantive.

**\*4** *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKit hen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at \*6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at \*3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Felman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Felman* also bars such claims because the enforcement is inextricably intertwined with the state court judgment." *Sorenson,* 2009 WL 580426, at \*7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Felman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the

child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Felman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Felman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

**\*5** The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, ––– F. App'x ––––, 2014 WL 4233392, at \*1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

### SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 5823116

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 99 of 147

2017 WL 6021838
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-00510 (BKS/TWD)
|
Signed 10/26/2017
|
Filed 10/27/2017

**Attorneys and Law Firms**

KIPLIND L. CRUZ, 5825 Townline Road, Cincinnatus, NY 13040, pro se.

**ORDER AND REPORT-RECOMMENDATION**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** This matter has been referred to the undersigned by the Hon. Brenda K. Sannes, U.S. District Judge, for a report and recommendation on the initial review of *pro se* Petitioner/ Plaintiff (hereinafter "Plaintiff") Kipland L. Cruz's motions to amend his complaint and for a temporary restraining order ("TRO") and preliminary injunction. (Dkt. Nos. 8, 9 and 11.) The Court also has before it the initial review under 28 U.S.C. § 1915(e) of Plaintiff's original filings (Dkt. Nos. 1, 1-1, and 1-2.) For the reasons explained herein, the Court recommends that (1) none of the state court proceedings Plaintiff has described in his removal notice and exhibits be deemed to have been properly removed to, or to be subject to removal to, federal district court[1]; (2) his petition for a writ of habeas corpus be dismissed with prejudice on initial review; (3) his motion to amend be denied; (4) civil rights complaint be dismissed on initial review; and (5) his motion for a temporary restraining order and preliminary injunction be denied as moot or, in the alternative, on the merits.

[1]   Since Plaintiff has acknowledged there are no pending state court proceedings, remand does not appear to be an option. (Dkt. No. 1 at 40.)

**I. BACKGROUND**

**A. Plaintiff's Original Filings**
On May 9, 2017, Plaintiff Kipland L. Cruz, individually and on behalf of his two minor children, submitted for filing by the Clerk a notice of removal to federal court, pursuant to 28 U.S.C. § 1443, and with it a habeas corpus petition under 18 U.S.C. §§ 242, 1512(b)(3), and 1513(b).[2] The various state court proceedings identified by Plaintiff, and out of which his habeas corpus petition arises, involve unpaid child support, child custody, and visitation disputes between Plaintiff and his estranged wife Nicole A. Cruz. (*See generally* Dkt. Nos. 1; 1-1 at 1-3.[3])

[2]   Plaintiff also submitted an application for leave to proceed *in forma pauperis* (Dkt. No. 2), which was granted by the Court in its June 13, 2017, Order. (Dkt. No. 6.)

[3]   Page references to documents identified by docket number are to the numbers assigned by the CM/ ECF docketing system maintained by the Clerk's Office.

Plaintiff also filed a civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. Nos. 1 and 1-2.) Plaintiff named nearly seventy defendants whom he presumably believes to have been involved in matters related, either directly or indirectly, to the subject matter of the state court proceedings, reports made to the New York State Central Register of Child Abuse and Maltreatment ("SCR"), or his former employment. (*See generally* Dkt. No. 1-2.) The complaint contains factual allegations similar to those in Plaintiff's removal/habeas corpus papers.[4]

[4]   Plaintiff's complaint also contains factual allegations that his minor children were subjected to repeated sexual, mental, and emotional abuse. (Dkt. No. 1-2 at 15.) Those allegations will be considered solely to the extent, if at all, they are relevant to claims asserted by Plaintiff solely on his own behalf.

**\*2** In addition to his federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff has asserted claims for unfair employment practices and discrimination; claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. §§ 245 (federally protected activities), § 2258 (sexual exploitation of children), and 18 U.S.C. § 3509 (child victims and witnesses rights); and

Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 101-105, *et seq.* [5] (Dkt. No. 1-2 at 16.) Plaintiff's complaint seeks money damages, along with declaratory and injunctive relief. *Id.* at 29-31.

[5]   The applicability of the statutes cited by Plaintiff will be addressed only to the extent, if at all, they are relevant to claims asserted by him solely on his own behalf.

**B. Stay Order**

In May of this year, the Clerk sent Plaintiff's notice of removal with habeas petition and civil rights complaint to the Court for initial review pursuant to 28 U.S.C. § 1915(e). The Court, noting that Plaintiff, who is not an attorney, was impermissibly seeking to represent both his own and the interests of his two minor children in the case, issued an Order finding that initial review was premature and staying the action for ninety days in order to give Plaintiff time to retain counsel to represent the interests of his children. [6] (Dkt. No. 6 at 6.) The Order advised Plaintiff if the Court did not receive notice by September 11, 2017, that Plaintiff had retained counsel with regard to all claims being pursued on behalf of his minor children, moved for appointment of counsel, or filed an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children, it would issue a Report-Recommendation to the assigned District Court judge recommending dismissal of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint without prejudice. *Id.*

[6]   The only effect of the Court's ninety-day stay Order was to place the Court's initial review of the lawsuit on hold while Plaintiff pursued legal representation for his minor children. (Dkt. No. 6 at 6.) The stay did not, as Plaintiff appears to claim in his motion papers, have any impact on the ability of those individuals and entities whom Plaintiff has named as Defendants herein to take action or refrain from taking action, or upon the jurisdiction, orders, or other actions of the New York State courts. (See Dkt. Nos. 8-3 at 3; 9-1 at ¶ 1.) Plaintiff's apparent attempted service of summonses and papers to which Defendants would be required to respond was premature and unauthorized.

**C. Plaintiff's Failure to Comply with the Court's Stay Order**

Plaintiff has failed to comply with the Court's Order regarding counsel for his minor children. (Dkt. No. 6.) He has, however, filed motions to amend and for a TRO and preliminary injunction in which he has omitted his minor children from the caption and has identified himself as "Man-prosecutor." (Dkt. Nos. 8-9, 11.) Therefore, the Court concludes that Plaintiff, whom the Court notes has requested that he be called by his natural name, Beau Jangles, [7] intends to proceed in federal district court solely on his own behalf. As such, the Court will conduct its initial review of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint under 28 U.S.C. § 1915(e), in conjunction with its review of Plaintiff's motions to amend and for a TRO and preliminary injunction, with the understanding that Plaintiff is appearing solely on his own behalf. It is the express intention of the Court that the recommendations made by it with respect to claims that may relate in some fashion to his minor children have no affect whatsoever on the minor children's right to have those claims properly pursued by them, or by counsel on their behalf, in any other proceeding.

[7]   Plaintiff, who describes himself as an American Patriot, has also filed as a part of his motion for a preliminary injunction, a "Declaration, Proclamation and Reclamation to his natural rights as Son of the Revolution & The Original Republic of 1789," in which he describes his ancestors as having included soldiers in the French and Indian War, the American Revolution, and the Civil War. (Dkt. No. 8-5.)

**II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT**

**\*3** 28 U.S.C. § 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage*

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 101 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

*Co.,* 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

## III. NOTICE OF REMOVAL AND HABEAS CORPUS PETITION

**\*4** On May 9, 2017, Plaintiff submitted to the Clerk a petition which he entitled:

> 5 Day Notice: Petition for Writ of Habeas Corpus in United States District Court pursuant to 18 USC 1512(b)(3) & 18 U.S.C. § 1513(b)[;] 18 USC § 242[;] Defendants Federal Removal from State of New York, County of Cortland, Chenango, Onondaga, New York State[;] Cortland County Combined Court to US District Court pursuant to 28 U.S.C. § 1443[;] State of New York, County Court Case # 9788 Docket#v-01361/1362 16/16A file # 9788 docket #v01361-16/17B file #9788 docket#v-1361/1362 16/17F file #9788 docket # v-1361/1362 16/17F and any other unlawfully ordered hearings of cases Federal Removal pursuant to 28 U.S.C. § 1443 child abuse cover-up U.S. Code § 241 For witness and victim Retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of Justice, Unlawful Activities, slander, perjury, false Statements, violations and denial of movants Constitutional I, V, VI & XIV Amendment Rights's, privileges, and immunities, Civil Human Universal, International & Fundamental

(Dkt. No. 1 at 1-2.)

Plaintiff has named as Respondents in his removal notice and petition for a writ of habeas corpus the State of New York, Cortland County, Chenango County, Onondaga County, Hon. William Ames, Hon. Julie Campbell, Chenango and Cortland County Departments of Social Services, CPS/DSS,

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Court appointed Law Guardian Ad Litem Natalie Miner, Nicole Cruz, and S. Francis Williams, attorney for Nicole Cruz. (Dkt. No. 1 at 1.) Plaintiff has identified his grounds for removal to federal district court under 28 U.S.C. § 1443 and for a writ of habeas corpus as: (1) deprivation of rights under color of law in violation of criminal statute 18 USC § 242; (2) witness and victim retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of justice, unlawful activities, slander, perjury, false statements in violation of criminal statutes 18 U.S.C. §§ 1512(b)(3) and 1513(b), the United States Constitution Amendments I, V, VI and XIV, and civil human, universal, international, and fundamental rights. *Id.* at 4.

### A. Plaintiff's Affidavit in Support of Removal and his Habeas Corpus Petition

In an affidavit submitted by Plaintiff in support of his notice of removal and petition for a writ of habeas corpus, he describes a child support proceeding in Chenango County Family Court in which he planned to place a lien and judgment on real property his estranged wife, Nicole Cruz, that had a pending sale during the spring and summer of 2016. (Dkt. Nos. 1 at 5-7; 1-1 at 1-4; 8-5 at 2.) Nicole Cruz owed Plaintiff back child support in the amount of $7,813.97. *Id.* In response, Nicole Cruz filed what Plaintiff claims to have been a fraudulent contempt proceeding against him claiming violation of her visitation rights with the couple's minor children. *(*Dkt. No. 1-1 at 5-8.)

According to Plaintiff, a hearing was held on August 10, 2016, behind closed doors with the Judge and counsel, after which his attorney came out and told him that the Judge had made him an offer that he should accept. (Dkt. No. 1 at 11.)

 **\*5** Plaintiff's employment with the New York State Education Department was terminated on September 19, 2016, and Plaintiff claims the termination was unlawful. (Dkt. No. 1 at 32.) Thereafter, the superintendent and administration at Unadilla Central School began to make false allegations against Plaintiff, his home was broken into and recordings of court hearings were stolen, and he was forced to move to Cayuga County. *Id.* at 33.

On October 7, 2016, Plaintiff was advised by his counsel that his former wife had no intention of continuing a relationship with his minor children, and the Judge was forcing the children to go with abusers. *Id.* at 34. On December 21, 2016, Plaintiff appeared for a custody hearing in Cortland County

Family Court, planning to submit documentary evidence that would result in dismissal of the case. *Id.* at 37. Instead, the Judge denied Plaintiff's right to be heard and appointed a guardian ad litem for the minor children. (Dkt. No. 1 at 37.)

On January 3, 2017, Plaintiff realized everything was a conspiracy in which his counsel were members, and his minor children were being targeted by Chenango, Cortland, and Onondaga County, and the State of New York. *Id.* at 38. The same day he emailed his attorney, demanding that she recuse herself and informing her of his findings of fraud and malpractice. *Id.* at 39; Dkt. No. 1-1 at 24. In another email to his attorney the same day, Plaintiff stated that his children had been abused for five years. (Dkt. No. 1-1 at 24.)

Plaintiff received a January 9, 2017, letter from the Cortland County Department of Social Services informing him that a suspected child abuse or maltreatment report against him had been received by the SCR. (Dkt. Nos. 1 at 39; 1-1 at 27-28.) From that point forward, Plaintiff has constantly received summonses for preliminary conferences held by a clerk or county attorney in the Judge's chambers, with a woman named J. Kuhn impersonating Nicole Cruz at the hearings. *Id.* at 40.

On March 30, 2017, Plaintiff tried to serve a federal removal notice on Cortland County Family Court but was told he could not serve it because he had no case in the court. *Id.* at 41. On April 5, 2017, the Cortland County Family Court Judge dismissed all petitions. *Id.* Plaintiff claims retaliation against him and his children by the Cortland County Sheriff, Cortland County DSS/CPS, and the Cortland County Family Court since he served removal papers. *Id.* at 43. According to Plaintiff, they have ignored his removal notice. *Id.*

### B. Removal

Plaintiff seeks to remove Cortland County Family Court proceedings involving child support, custody, and visitation, which Plaintiff has stated are no longer pending (*see* Dkt. No. 1 at 41), to federal district court pursuant to 28 U.S.C. § 1443, which provides that:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

> **(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**\*6** 28 U.S.C. § 1443.

28 U.S.C. § 1446(a) provides that "a defendant ... shall file in the district court ... a notice of removal containing a short and plain statement of the grounds for removal, with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446. Plaintiff's notice of removal identifies two state court proceedings his petition for child support and Nicole Cruz's petition to hold Plaintiff in contempt for violating a visitation order. (Dkt. Nos. 1 at 5-6; 1-1 at 1-8.) Plaintiff has also submitted documentation regarding a custody/visitation proceeding commenced by Nicole Cruz in Cortland County Family Court, FF No. 9788, Dkt. No. V-01361/132-16/16A, for enforcement of a preliminary conference agreement reached on August 10, 2016, in connection with the proceeding referenced in the notice of removal. (Dkt. No. 1-1 at 35-42.)

### 1. No Action or Proceeding is Pending in State Court

Under the clear language of § 1443, a state court action must be pending in order for the provision to apply. *See, e.g., Nuccio v. Heyd*, 299 F.Supp. 939, 940 (E.D. La. 1969) (there must exist either a civil action or criminal prosecution to invoke federal jurisdiction under § 1443; otherwise there is nothing to remove). Plaintiff has stated in his affidavit that the Cortland County Family Court Judge dismissed all state court petitions on April 5, 2017. (Dkt. No. 1 at 40.) Documentation submitted by Plaintiff shows that Nicole Cruz's petition in FF No. 9788 was dismissed by the Family Court Judge on April 5, 2017. (Dkt. No. 1-1 at 36-37.) Therefore, by Plaintiff's own admission, there is no federal removal jurisdiction under § 1443.

Furthermore, even if the child support proceeding against Nicole Cruz were still pending, as petitioner in that proceeding, Plaintiff lacks authority to remove the proceeding to federal district court under the applicable federal removal statutes. *See* 28 U.S.C. §§ 1441(a), (b); 1443(a); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (no section in the removal statutes provides for removal by a plaintiff).

### 2. The Court is Without Removal Jurisdiction under 28 U.S.C. § 1443

Even if Nicole Cruz's visitation contempt and custody/ visitation proceedings were presently pending in state court, Plaintiff has failed to show the state court proceedings are subject to removal under § 1443.[8] In *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), the Supreme Court concluded that the phrase " 'any law providing for ... equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *See also Chestnut v. People of State, N.Y.*, 370 F.2d 1, 3-4 (2d Cir. 1966) (only due process and equal protection claims which specifically involve racial equality can support a valid claim for removal under § 1443(1)).

[8]      Plaintiff's notice of removal also appears to be untimely since it was filed more than thirty-days after he received the petitions in the contempt and custody/visitation proceedings. *See* 28 U.S.C. § 1446(b). However, because the thirty-day requirement, while mandatory, is procedural rather than jurisdictional, and can be waived by the plaintiff/petitioner in the state court action, the Court finds that Plaintiff's failure to file a timely notice of removal does not provide grounds for *sua sponte* dismissal on initial review. *See Flood v. CSX Transp., Inc.*, No. 11-CV-162S (WMS), 2012 WL 464189, at * 2 (W.D.N.Y. Feb. 13, 2012) (while the thirty-day time limit under § 1446(b) is mandatory, failure to adhere to it constitutes a procedural rather than a jurisdictional defect) (citing *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005)).

**\*7** Plaintiff has not alleged the violation of his civil rights based on race as a ground for removal under § 1443, nor has he identified himself as a member of a racial minority. (*See generally* Dkt No. 1.) Furthermore, Plaintiff is identified in SCR records as "White." (Dkt. No. 8-10 at 7.) Therefore, the Court finds Plaintiff has failed to make a plausible showing that removal is available under § 1443(1).

Removal is likewise unavailable under § 1443(2). In *People of State of N.Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965), the Second Circuit described the phrase "color of authority" in § 1443(2) as "primarily aimed" at "acts of officers or

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 104 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

quasi-officers," and concluded it was necessary that the party seeking removal not be "relying on a general constitutional guarantee but on a special statute or order telling him to act." *Id.* The Court determined that "[a] private person claiming the benefit of § 1443(2) can stand no better; he must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him." *Id.* Plaintiff has failed to point to any law directing or encouraging him to act in a certain manner with regard to his estranged wife's visitation contempt or custody/visitation proceedings which he seeks to remove to federal court.

The "refusal to act clause" of § 1443(2) is available "to state officers, and those acting with or for them including local and municipal officers." [9] *White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980); *see also Wells Fargo Bank, N.A. v. Stephens*, No. 3:14-cv-1982 (VLB), 2015 WL 6551782, at *3 (D. Conn. Oct. 29, 2015) [10] (citing *White*, 627 F.2d at 585). Plaintiff has not alleged facts plausibly showing that he is a state officer or that he was or is acting with or for state actors in connection with the proceedings on which he seeks removal.

[9]   In *White v. Wellington*, 627 F.2d 582, 585 n.4 (2d Cir. 1980), the Second Circuit opined that the statutory language would also allow removal by federal officials.

[10]   Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

### 3. The Domestic Relations Exception Would Divest the Court of Subject Matter Jurisdiction in Any Event

In *Ex Parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890), the Supreme Court held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State and not to the laws of the United States." A century later, in *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the Supreme Court reaffirmed what had become known as "the domestic relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees."

Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction. *See, e.g., Sobel v. Prudenti*, 25 F.Supp.3d 340 (E.D.N.Y. 2014) (federal district court without jurisdiction to hear child support claims); *Neustein v. Orbach*, 732 F.Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation ..."). Courts have relied on the domestic relations exception to dismiss complaints and petitions removed to federal court under 28 U.S.C. § 1443 for lack of subject matter jurisdiction on initial review under 28 U.S.C. § 1915(e). *See, e.g., Steele v. Steele*, No. 1:12-cv-439 (KLL), 2012 WL 3061028 (S.D. Ohio July 3, 2012) (dismissal on initial review on removal dealing with dispute over child support and custody in state court domestic relations proceeding). It is clear that even if there were a pending state court proceeding subject to removal jurisdiction under 28 U.S.C. § 1443, the district court would be without subject matter over claims related to custody, child support, and visitation under the domestic relations exception. [11]

[11]   The papers do not provide the Court with sufficient information to determine on initial review whether the *Younger* abstention, (*see Younger v. Harris*, 401 U.S. 37, 53-54 (1971)), or *Rooker Feldman* doctrines apply to Plaintiff's filings. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal courts may not sit in direct review of state court judgments unless directly authorized by Congress).

**\*8** Based upon the foregoing, the Court recommends that none of the state court proceedings Plaintiff has described in his removal notice or with respect to which he has submitted documentation be deemed to have been properly removed to, or to be subject to removal to federal district court.

### C. Habeas Corpus Petition

Plaintiff has filed his writ for a petition for habeas corpus under 18 U.S.C. §§ 242, 1512 (b)(3), and 1513(b). All three are criminal statutes. Section 242 is for criminal deprivation of rights under color of law. Section 1512(b)(3) is for hindering, delaying, or preventing communication to a law enforcement officer or federal judge relating to the possible commission of a federal offense or violation of conditions

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 105 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

of probation, supervised release, parole, or release pending judicial proceedings. Section 1513(b) is for "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damages to the tangible property of another person, or threaten[ing] to do so, with the intent to retaliate against a person for (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in any official proceeding; or (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer." 18 U.S.C. § 1513.

None of the three criminal statutes provides a private right of action. *See Weinstein v. City of New York*, No. 13 Civ. 06301 (LGS), 2014 WL 2991000, at *4 (S.D.N.Y. April 8, 2014) (collecting cases). Nor has the Court found any legal support for seeking a writ of habeas corpus under any of the criminal statutes. Furthermore, the Supreme Court long ago held that a habeas petition under 28 U.S.C. § 2254 could not be used to collaterally attack a state decree awarding child custody. *Lehman v. Lycoming Co. Children's Services Agency*, 458 U.S. 502, 515-16, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017) ("It is well established that a petitioner for habeas relief pursuant to section 2254 is not an appropriate vehicle for challenging a child custody determination.") (citing *Davis v. Baldwin*, 594 Fed.Appx. 49, 50 (2d Cir. 2015)).

The Court, therefore, recommends that Plaintiff's petition for a writ of habeas corpus be dismissed with prejudice.

## IV. PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Plaintiff has filed a civil rights complaint under 42 U.S.C. §§ 1983, 1985, and 1986 with his notice of removal and habeas corpus petition. (Dkt. No. 1-2.) As noted above, the Court's initial review of Plaintiff's complaint presumes he is proceeding solely on his own behalf.

### A. Named Defendants in Plaintiff's Complaint, Including Parties added in Joinder and as Necessary Parties

Plaintiff's complaint names nearly seventy Defendants including those named in the caption and those identified as "required parties in joinder." (Dkt. No. 1-2 at 1-5.) Party

Defendants named in the caption of Plaintiff's complaint include:

> Chenango, Cortland, Onondaga Counties, the State of New York & the following additional defendants in joinder: Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; Joseph McBride, District Attorney; Steven M. Dunshee, Chenango County First Assistant District Attorney; Chenango County Public Defender; Sabrina Dier Public Defenders Office; James Taylor, Esq.; James H. Fertig, Esq., Court appointed Guardian ad Litem; Chenango County Sheriff's Office; Ernest R. Cutting, Sheriff; Joe Warren owner of Lakeside Rentals—landlord; Ben Bergman part owner of Jackson Bergman LLP; Alyssa Cogden, Jackson Bergman LLP; Hon. William Ames; Kristen Monroe, Commissioner Cortland County DDS; David K. Knickerbocker, Director of Administrative Services, Cortland County DDS; Cortland County CPS; Melissa Archer, CPS; Colin [CPS], Supervisor Cortland County Child Advocacy Center; Jane Doe, Cortland County; 2 Cortland County Officer John Does; S. Francis Williams, Esq.; Cincinnatus CSD—Board of Education; Thomas Durkot, Elementary Principal; Cathy Aitchison LCSW, Cincinnatus CSD; Carnitra White, County Director of Human Resources at Anne Arundel CSCU; City of Annapolis, State of Maryland; Nicole Cruz, Broward County, Davie, State of Florida.

**\*9** (Dkt. No. 1-2 at 1-2.) The following Defendants have been joined by Plaintiff as necessary defendants:

Brian J. Doliver, Second Ward Alderman; Detective John Fern; Sheila J. Poole, Acting Commissioner NYS Central Register OFCS; Sarah Simon, Regional Director of Child Welfare Services; Betty Osborne, Commissioner, Cathy Lavoli, Supervisor, Beth Beers, and CPS Patricia Luca, Chenango County DSS; Sarah Fitzpatrick, Esq., Chenango County DSS; Irene A. Flores, Esq.; DCMOBOCES Board of Education Superintendent Doreen Rowe, Deputy Superintendent Kim Corcoran, District School Lunch Director, Connie Bambino, Asst. District School Lunch Director, Pam Rowe, School Lunch Cook; City of Norwich Fire Department, Terry Kuhn; Johanna Kuhn, City of Norwich Police Department; Chief Joseph Angelino; Sergeant John Doe; Norwich Central School District Board of Education President Joseph McBride, Vice-President Tom Sutton, and member Howie Sullivan; Gerrard O'Sullivan Superintendent; Karrie Stainbauer Director of Special Education; Nicole A. Cruz, Special Education Teacher; Christine Bienick, NYSUT President, Unadilla Valley Teacher Assoc.; Dr. Alfred Barnes; Unadilla Valley Central School District Board of Education President Kristen Romavicz, Vice-President Mark Davis, Vicky Gregory, Kim Murray, and Robert Mackey; Superintendent Mike Brown; Business Official Frank Johnson; Building Principal Chris Harper; Elementary Principal Sherri Houck; Elementary School Counselor; Chris Wilkinson, Labor Negotiations; and Mike Lyn, Regional President.

(Dkt. No. 1-2 at 3-5.)

Another group of defendants added in joinder include Cortland County Sheriff's Department; Hon. Julie Campbell, Cortland County Family Court; three Jane Doe Cortland County Family Court Clerks; and four John Doe officers. *Id.* at 6.

**B. Factual Allegations in the Complaint**

The factual allegations in Plaintiff's complaint and his claims for relief arise in substantial part out of the child support, custody, and visitation disputes between the Plaintiff and Nicole Cruz. (*See generally* Dkt. No. 1-2.) Reference is also made to both Nicole Cruz and the Plaintiff having been made the subject of reports of child abuse or maltreatment received by the SCR. *Id.* at 12; Dkt. No. 1-1 at 27-28. In addition, there are references in the complaint to the transfer and subsequent termination of Plaintiff's employment. (Dkt. No. 1-2 at 13-14.)

Plaintiff has made specific factual allegations against a mere fraction of the Defendants named by him in his original complaint. They include the following.

1. Defendants Nicole Cruz, Terry Kuhn, and Johanna Kuhn

Plaintiff alleges that beginning in June 2012, he and estranged wife Nicole were in the process of starting a business in the City of Norwich and were approved for loans from the City and Chamber of Commerce. (Dkt. No. 1-2 at 10-11.) Plaintiff claims that Terry Kuhn, acting out of power and jealousy, along with his wife Johanna Kuhn, forced Nicole to force Plaintiff from his home and to default on the loans and a business Plaintiff and Nicole were buying. *Id.* at 11. A short time later, Terry Kuhn, through the abuse of his power as a local firefighter, conspired with his friends at the Chenango County Sheriff's office and buddy Frank Revoir and conjured up baseless false statements about Plaintiff. *Id.* at 11-12. Terry Kuhn also allegedly has the Chenango County Sheriff's Department and the court in his pocket. *Id.* at 19.

**\*10** The alleged conspiracy caused a temporary order for protection to be issued against Plaintiff, who received no due process, not even a hearing. *Id.* at 12. Plaintiff was required to pick his children up at the police department for three years while one of the Kuhns was president of the Union, and he was harassed and discriminated against the entire time. *Id.* From December 2012 to the present, Nicole Cruz had three

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 107 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

indicated reports of child abuse and two indicated reports for child maltreatment. *Id.* Copies were given to Plaintiff by Defendant Sheila Poole, Acting Commissioner of the New York State Office of Children and Family Services ("OCFS"). *Id.*

Plaintiff alleges that Nicole Cruz fled the State in July 2016 in the middle of a child abuse trial, owing Plaintiff over $8,000 in back child support since October 2015. *Id.* at 13. On August of 2016, Plaintiff learned that Nicole had moved to North Carolina. (Dkt. No. 1-2 at 13.) Plaintiff has also alleged:

18. Complainant(s) have been subjected to and have witnessed as well as fell subject to multiple crimes and actions committed by the defendants, including crimes committed and against minor children under the ages of 5 years old. The Complainants minor children were victims of repeated sexual abuse, mental and emotional abuse, and child maltreatment by N. Cruz an elementary Special Education teacher, abused the oldest Minor Child while on duty at work in the School, Johanna Kuhn, Terry Kuhn City of Norwich Paid Fireman, and from (sic) I been told the President of the Union for the Fireman and Police officers, see NYS Registry case # the defendants have committed multiple federal felonies and misdemeanor crimes and actions committed against the complainant.

19. The complainant alleges that the defendants Nicole A. Cruz, Johanna Kuhn and Terry Kuhn, recently have committed Multiple federal crimes including HUD Fraud, mail fraud, recent S. Francis Williams Esq., and Johanna posing as N. Cruz, (I have documentary evidence and eye witnesses to this crime False Impersonation in Cortland County Family Court), falsifying government documents, perjury libel in writing on court documents, Multiple at least 40 counts of False information and Hoaxes placed against the complainant, child abuse, child exploitation, public corruption, Unlawful transfer and Unlawful termination of the complainants tenure position with the NYSED, and conspiracy with 5 counties, 4 in the State of NY and 1 in the State of Maryland.

(Dkt. No. 1-2 at 14-16.)

Plaintiff further alleged that "Nicole Cruz appeared before Chenango County Court and Hon. Kevin M. Dowd in violation of a federal Felony owing the complainants over $8,000 in back non-paid child support, and also had fled the state in the middle of a child abuse custody trial, this abuse was repeated sexual abuse ..." *Id.* at 20.

#### 2. Chenango County Sheriff's Department

Plaintiff alleges that members of the Chenango County Sheriff's Department conspired with Terry Kuhn to conjure up baseless false statements against Plaintiff. (Dkt. No. 1-2 at 11.) Plaintiff also alleges that Terry Kuhn has the Chenango County Sheriff's Department in his pocket. *Id.* at 19.

#### 3. Hon. Kevin M. Dowd, New York State Supreme Court Justice, Chenango County

Plaintiff alleges that after purposefully postponing a custody trial between Plaintiff and Nicole Cruz for over a year, during which time Nicole fled the State, Judge Dowd held a "surprise" initial appearance "that apparently overruled the complaints (sic) due process mandated by the congressional act of CAPTA Act of 2010 and the Adam Walsh Act 2006." (Dkt. No. 1-2 at 13.) Plaintiff claims that he was deprived of the opportunity to be heard and call witnesses, and that Judge Dowd, who met with counsel behind closed doors for almost an hour, then told Plaintiff that Nicole had moved and explained an offer being made to Plaintiff. *Id.*

 **\*11**  Plaintiff also alleges that Judge Dowd had his brother-in-law and his assistant pay a staff member at the Public Defender's Office to impersonate a child care provider at a non-profit childcare center paid for by Plaintiff without financial assistance from his estranged wife. *Id.* at 19. In addition, Plaintiff contends that Judge Dowd's order, received by Plaintiff via email fifty-nine days after the hearing, was completely illegal and unconstitutional, and that Judge Dowd is in contempt and in violation of an act of Congress as well as international law and treaties. *Id.* at 20. Plaintiff claims that Judge Dowd's order is null and void under the Supremacy Clause, Cannon Law, and the Fourteenth Amendment, and that Judge Dowd became a witness and denied Plaintiff his rights under the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments continuously, and purposely, and engaged in a completely premeditated action with malice. (Dkt. No. 1-2 at 21.)

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

#### 4. Hon. William Ames, Cortland County Family Court

In the affidavit in support of his notice of removal and habeas corpus petition, Plaintiff stated that certain petitions had been transferred to Cortland County Family Court, and Plaintiff reported for a hearing before Judge Ames on December 21, 2016. (Dkt. No. 1 at 37.) The sole allegation regarding Judge Ames in Plaintiff's civil rights complaint is that:

> The complainant appeared before the Hon. Ames at Cortland County Family Court locked and loaded with enough documentation to tear the Court house down, the complainant aske (sic) Honorary W. Ames to be herd (sic) at this very hearing, my 1 st amendment right as a US Citizen, not to mention Son of the Revolution. The Complainant explained clearly and sternly that he had the documentation to have the petition dismissed on the ground of documentary defense, not to mention the defendant N. Cruz petition also lacks validity nor executes any claim. Hon. W. Ames denied the complainants right to be heard as well as right as a pro se litigant, Hon. Ames is also guilty of misappropriate of Federal funds by hiring a Law Guardian for an act of fraud and conspiracy.

(Dkt. No. 1-2 at 20.)

#### 5. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's counsel in the Family Court proceedings involving child support and visitation issues. (*See* Dkt. No. 1 at 38.) In his civil rights complaint, Plaintiff appears to allege that Williams appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole Cruz. (Dkt. No. 1-2 at 15.)

Attorney James Taylor, Esq. was Plaintiff's counsel prior to April 2016. (Dkt. No. 1 at 40.) In his civil rights complaint, Plaintiff alleges that Judge Dowd had his brother-in-law, the Chenango County Public Defender, and his assistant, an associate of Taylor, pay a staff member at the Public Defender's Office "to impersonate a child care provider at a non-profit childcare center" paid for by Plaintiff. (Dkt. No. 1-2 at 19.)

Attorney James Fertig was appointed as Guardian ad Litem for Plaintiff's children in connection with the child support and visitation proceedings. (Dkt. Nos. 1 at 6; 1-2 at 1.) In his civil rights complaint, Plaintiff alleges that Fertig, as law guardian, engaged in misconduct and malpractice by: (1) violating the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 5101-5106, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act; and (2) violating 18 U.S.C. § 3509, and the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911 *et seq.*, transferred to 34 U.S.C. § 20911 (eff. September 1, 2017), thereby denying Plaintiff the services and privileges he deserved. (Dkt. No. 1-2 at 21-22.)

#### 6. Sheila Poole, Acting Commissioner of OCFS

Plaintiff has alleged that Sheila Poole, the Acting Commissioner of the OCFS (Dkt. No. 1-2 at 4), released three indicated reports of child abuse and two indicated reports of child maltreatment, including sealed reports, from December 2012 to the present to Plaintiff. *Id.* at 12.

#### 7. Chenango County Department of Social Services

**\*12** It is not clear from Plaintiff's complaint that he named the Chenango County Department of Social Services ("Chenango County DSS") as a Defendant. He has, however, named Chenango County. (Dkt. No. 1-2 at 4.)

Plaintiff alleges that the Chenango County DSS and CPS (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.,* formerly 42 U.S.C. §§ 16911 *et seq.,* thereby denying Plaintiff the protection, safety, services, and privileges he deserved by failing to prosecute defendants. (Dkt. No. 1-2 at 21-22.)

8. Cortland County Department of Social Services,
   Commissioner Kristen Monroe, and Director of
   Administrative Services David Knickerbocker

It is also not clear from Plaintiff's complaint that he named the Cortland County Department of Social Services ("Cortland County DSS") as a Defendant. He did, however, name Kristen Monroe, Commissioner; David Knickerbocker, Director of Administrative Services; and employees in CPS. (Dkt. No. 1-2 at 2, 5.) Plaintiff alleges that Commissioner Monroe and Knickerbocker tried to trick and then force Plaintiff to rent Monroe's parents' house and stole $1000 from Plaintiff's grandmother, who last he knew was left in a home with no shower or means to take one. (Dkt. No. 1-2 at 2, 19.)

Plaintiff also alleges that the Cortland County DSS and CPS, which is within the Department: (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.,* formerly cited at 42 U.S.C. §§ 16911, *et seq.,* thereby denying Plaintiff the protection, safety, services and privileges he deserved by failing to prosecute defendants. *Id.* at 21-22.

9. DCMO BOCES and Unadilla
   Valley Central School District

Plaintiff alleges that he was illegally transferred from DCMO BOCES to Unadilla Valley Central School District ("Unadilla"). Plaintiff's employment at Unadilla was terminated effective October 3, 2016. (Dkt. No. 1-1 at 15.) Plaintiff alleges that the termination was unlawful, and that he was denied tenure and rights under the Taylor Law, and section 75. (Dkt. No. 1-2 at 13.)

Plaintiff's complaint includes no factual allegations against named Defendants Mike Lyn or Lynch, Unadilla Principal Chris Harper, Superintendent Robert Mackey, Business Officer Mike Brown, Food Service Director Kim Corcoran, and Cook Manager Pamela Rowe. In his affidavit in support of his notice of removal and petition for habeas corpus, Plaintiff states that when he was illegally transferred to Unadilla, he was stripped of his benefits and forced to fill two full time management positions at Unadilla while he had custody of his children. (Dkt. No. 1 at 33.) Plaintiff also

claims that following his termination, Superintendent Robert Mackey, named as a Defendant, and unidentified members of the administration at Unadilla, began to make false allegations against Plaintiff. *Id.*

Furthermore, in his motion papers on his motion for a TRO and preliminary injunction, Plaintiff claims that Lyn or Lynch was involved in denying Plaintiff a hearing, tenure, and section 75 rights. (Dkt. No. 8-7 at 8.) Plaintiff also claims that he was subjected to involuntary servitude and peonage, purposefully harassed at work, and bullied by Harper, Mackey, Brown, Corcoran, and Rowe. *Id.*

10. Conspiracy

**\*13** Plaintiff alleges in conclusory fashion that Defendants acted in a premeditated conspiracy for the one objective of covering up the sexual abuse by an elementary school special education teacher somehow connected to Terry and Johanna Kuhn. (Dkt. No. 1-2 at 23.) Plaintiff has identified the membership in the conspiracy as follows:

> The Defendants constructed a conspiracy, this conspiracy was premeditated, and it was 5 counties wide, including the total of three states, 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 110 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Defendants continually denied the complainant(s) (sic) rights.

*Id.* Plaintiff alleges that the conspirators are "guilty of intentionally interfering, denying, absolutely stripping the complainant of [his] Constitutional privileges, rights, and protections, and did so with malice. The complainant[ ]'s 1 st, 2 nd, 4 th, 5 th, 6 th 8 th, 9 th, 10 th, 13 th (sec. 1) and 14 th (equal protection of the law)." (Dkt. No. 1-2 at 23-24.)

### C. Claims and Relief Requested

Plaintiff has identified "actions" against the Defendants under: (1) 42 U.S.C. § 1983 civil action for deprivation of rights, including violation of Amendments 1, 4-8, 10, and 14 to the Constitution; (2) 42 U.S.C. § 1985 (1)-(3) for conspiracy to interfere with civil rights; (3) 42 U.S.C. § 1986 for neglect to prevent action; (4) 42 U.S.C. § 3631 for criminal interference with right to fair housing; (5) 18 U.S.C. § 245 federally protected activities; (6) 42 U.S.C. § 14141 for pattern and practice; and (7) 18 U.S.C. § 2258 for failure to report child abuse.[12] (Dkt. No. 1-2 at 16.) Plaintiff also claims to have been the victim of sex discrimination in his employment and to have filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

[12]   There is no private right of action under 42 U.S.C. § 3631 (*see DeSouza v. Taiman*, No. 3:16-cv-00490 (MPS), 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases)); 42 U.S.C. § 14141 (*see Miller v. Carpinello*, No. 06 CV 12940 (LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); 18 U.S.C. § 245 (*see, Gunter v. Long Island Power Auth./Keyspan*, No. 08 CV 498 (RRM) (LB), 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011)); or 18 U.S.C. § 2258. *See Davis v. City of New Haven*, No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Con. March 30, 2014).

Plaintiff seeks monetary damages for sex discrimination; defamation; retaliation and prevention of his business venture in Norwich; loss of tier 4 State retirement benefits; loss of family and loved ones; destruction of social relationships, friendships, and his family relationship; unlawful labor practices; unlawful termination; disruption of the parent child relationship; past, present, and future medical expenses, court and attorney's fees; and the cost of providing a nanny for the children until age eighteen. *Id.* at 30. Plaintiff also seeks

damages in the amount of $60,000,000, with the ability to seize retirement and properties for illegal actions. *Id.*

**\*14** In addition, Plaintiff seeks appropriate injunctive and declaratory relief in his complaint. *Id.*

## V. MOTION TO AMEND

Prior to the Court's initial review of his original filings under 28 U.S.C. § 1915(e), Plaintiff submitted to the Clerk an ex parte motion to amend. On September 11, 2017, Plaintiff filed a "Motion to Amend due to failure to comply By the State of New York, *et al.*" (Dkt. No. 9 at 1.) Plaintiff's request to amend his complaint arises out of: (1) New York State's stonewalling his request under the State Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90, his appeals, and his requests for crucial information necessary to amend his complaint; (2) the Defendants/Respondents' failure to return a waiver of service of the summons, object to removal, seek remand, file an answer, file Plaintiff's requests, file any motions; and (3) an unidentified Defendant's actions in exceeding his or her jurisdiction by repeatedly and irreparably injuring Plaintiff, unlawfully kidnaping his children, and seizing his property. *Id.* at 2.

Plaintiff also filed a document entitled "Motion to Amend State Action for violation of a man's I, IV, V, XIV, VI amendments of the US constitution, 42 U.S.C. 1983." (Dkt. No. 9-1.) In the motion, Plaintiff has added as Defendants New York State Governor Andrew Cuomo; Attorney General Eric Schneiderman; Cortland County Sheriff Mark E. Helms; Budd Rigg, Cortland County Undersheriff; Captain Robert Derkson; Sgt. Paul Knapp; and Jane Doe, Deputy. *Id.* at 1. Plaintiff alleges in what he has identified as a "complaint" in the motion to amend that he has served three notices, three requests for waiver of summons, electronic and certified mailings to all of the Defendants in the action, and that because this Court ordered a stay "this means ALL matters pursuant of the case, if this court Cortland County Family Court or Chenango County Family Court or either County department of Social Services Proceed any further in any more unlawful and fraudulent actions against the complainant will take this matter to the United States Attorney's Office Immediately proceeds any further this will be yet another trespass on the complainant and his people." (Dkt. No. 9-1 at 2.)

Plaintiff also alleges that the Defendants have all been served with FOIL requests and requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as well as the complaint,

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Case 6:24-cv-00722-BKS-TWD Document 10 Filed 07/16/24 Page 111 of 147

and that State has stonewalled his FOIL requests and is engaged in a conspiracy to cover up the abuse of his children by a special education teacher and a Norwich fireman in violation of the Federal Child Kidnaping laws. [13] *Id.* at 3.

[13]  In his complaint, Plaintiff identifies the abuser of his children as N. Cruz. (Dkt. No. 1-2 at 14-16.) However, because Plaintiff never specifically identifies the alleged abuser as his estranged wife, Nicole Cruz, the Court is uncertain as to whether that is the case.

## VI. MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On September 11, 2017, Plaintiff submitted to the Clerk a "Motion for Verbal Argument and ORDER to Show Cause, before Honorable Daniel J. Stewart ... for Preliminary ORDER and Judgement RULE 72 Pretrial Order." [14] (Dkt. No. 8.) Included among Plaintiff's submissions in support of his motion for a TRO and preliminary injunction are: (1) Table of Authorities with father's rights case law (Dkt. No. 8-1); (2) Table of Authorities with case law involving removal of children from the home (Dkt. No. 8-2); (3) "DEMANDANTS DEMAND WRIT OF QUO WARRANTO DEMAND TO VACATE CPLR 5015(a)(4)," in which Plaintiff demands that Respondents vacate and dismiss immediately any New York State matters for lack of subject matter jurisdiction pursuant to CPLR 5015(a)(4) (Dkt. No. 8-3); (4) "NOTICE: Ex parte Motion for Order to Show Cause for a Writ of Mandamus for Writ of Habeas Corpus; Ex Parte motion for Order to Show Cause for Writ of Mandamus; Order to Show Cause for preliminary injunction and Temporary Restraining order; prayer for remedies for irreparable harm pursuant to Invidious Gender Discrimination, 18 U.S. Code § 1201, Kidnaping, 18 U.S. Code § 242 Deprivation of rights under color of law, and 18 U.S. Code § 241 Conspiracy against rights (RUL 72 Pretrial Order)" (Dkt. No. 8-4); (5) Plaintiff's "Declaration, Proclamation and Reclamation to His natural rights as Son of the revolution & The Original Republic of 1789" (Dkt. No. 8-5); (6) "Written Objections to Chenango and Cortland County Family Court for Lack of Subject Matter & Personal Jurisdiction & Cross Claim" (Dkt. No. 8-6); (7) "Affidavit in support of written objections to the State of New York et al. For Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Cross Claim" (Dkt. No. 8-7); (8) "NOTICE: ex parte Motion Order to Show Cause for Writ of Habeas Corpus ex parte Motion for Order to Show Cause for Writ of Mandamus" (Dkt. No. 8-8); (9) July 15, 2017,

"Actio Contrcto Actio Vi Bono Rum Raptorum Actio Ex Contractu Actio Mixta Actio Personum Actio Ex Delicto" to Governor Andrew Cuomo (Dkt. No. 8-9); (10) records from the SCR labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 8-10); (11) "Order to Show Cause for Injuries of Irreparable Injury caused by Trespass exceeding Jurisdiction Discrimination, and Malice (Ex Parte)" (Dkt. No. 8-11); (12) "Memorandum of the Law and Laws of a Writ of Quo Warrento (Rule 72 Pretrial order)" (Dkt. No. 8-12); (13) "Affidavit and Memorandum of the law in Support of a Writ of Quo Warrento and Complaint pursuant to US federal Codes: 18 U.S.Code § 1201 Kidnaping, 18 U.S. Code 242 Deprivation of rights under color of law, 18 U.S. Code § 241 Conspiracy against rights 28 U.S.C. § 1343(a)(3)" (Dkt. No. 8-13); and (14) collection of statutory provisions labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 14.)

[14]  The undersigned, not Judge Stewart, is the U.S. Magistrate Judge to whom the case has been assigned.

**\*15**  Unfortunately, Plaintiff's voluminous submissions consist largely of irrelevant material, repetitive accusations, conclusory assertions, and hard to follow open ended allegations against frequently unidentified Defendants, with few nonconclusory assertions of wrongdoing by specific Defendants, and an ill-defined request for the injunctive relief being sought. As best the Court can ascertain, Plaintiff's request for injunctive relief is based at least in part on his mistaken belief that the Court's earlier Order staying this action stayed all state court proceedings and in essence enjoined any actions by the multitude of Defendants named by him with regard to matters about which Plaintiff complains herein. (*See* Dkt. No. 9-1 at 2.) Plaintiff, failing to understand that his notice of removal, petition for a writ of habeas corpus, and civil rights complaint have yet to be accepted for filing by the District Court, also appears to justify his request for injunctive relief on the absence of any response to those papers by Defendants, for whom summonses will not be issued unless and until those papers are accepted by the District Court and Defendants are directed by the District Court to respond in some fashion. (*See* Dkt. No. 9 at 2.)

Plaintiff may be seeking a mandatory injunction directing Defendants to respond to his notice of removal habeas petition, and civil complaint. (Dkt. 8-3 at 2.) Plaintiff has also raised the State Defendants' failure to respond to his FOIL requests and may be seeking a mandatory injunction directing

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

a response. (Dkt. Nos. 8-11 at 5; 8-13 at 2-3.) Plaintiff claims that the day after he commenced this action/proceeding, his children were unlawfully seized and taken to Florida by unidentified "respondents" in violation of federal kidnaping laws, and he may be seeking injunctive relief with regard to the allegedly illegal seizure. (Dkt. 8-11 at 2.) Plaintiff also claims he is being harassed, defamed, and attacked; he has had false allegations placed against him on the SCR; and the State has black balled him from future state employment. (Dkt. No. 8-11 at 3-4.) Plaintiff may be seeking injunctive relief with regard to those claims as well. In addition, Plaintiff is seeking a mandatory injunction directing the payment of back wages and health care benefits; placing him back on the payroll with benefits; and returning various property taken from him. *Id.* at 5-7.

## VII. LEGAL ANALYSIS OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT, MOTION TO AMEND, AND MOTION FOR A TRO AND PRELIMINARY INJUNCTION

### A. Elements of a 42 U.S.C. §§ 1983 Claim

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, —— U.S. ——, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." [15] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

> 15    A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

**\*16** In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do more than plead in conclusory fashion that a defendant "conspired" with a state actor. [16] *Ciambriello*, 292 F.3d at 324; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

> 16    Plaintiff has also alleged a conspiracy under 42 U.S.C. § 1985(3) and a claim under 42 U.S.C. § 1986. (Dkt. No. 1-2 at 1.) However, under § 1985(3), "the conspiracy must [ ] be motivated

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 113 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Securities, Corp.*, 7 F.3d 1085, 1088 (2d Cir. 2d Cir. 2000), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). As noted above, Plaintiff has been identified as White, and there are no facts in any of Plaintiff's submissions suggesting any otherwise class-based animus. When a claim under 42 U.S.C. § 1985(3) fails, a claim under 42 U.S.C. § 1986 fails as well. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

The elements of a conspiracy claim under § 1983 are: "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

**B. Personal Involvement Requirement of § 1983**

A § 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant ... § 1983 requires individualized, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint. *See McAvoy v. Suffolk County Sheriff DeMarco*, No. 14-CV-6293 (SJF) (AKT), 2015 WL 1802601, at *5 (E.D.N.Y. April 16, 2015); *McClenic v. Shmettan*, No. 15-CV-00705 (SJF) (SIL), 2015 WL 1930088, at *5 (E.D.N.Y. April 28, 2015); *Rogue v. Iannotti*, No. 3:11-cv-2012 (SRU), 2012 WL 3939922, at *2 (D. Conn. Sept. 10, 2012).

Therefore, the Court recommends dismissal of Plaintiff's complaint as against Defendants Onondaga County,

Chenango County District Attorney Joseph McBride, Steven M. Dunshee (First Assistant District Attorney), Sabrina Dier, Sheriff Ernest R. Cutting, Joe Warren, Ben Bergman, Alyssa Cogden, Melissa Archer, Colin Supervisor Cortland County Advocacy Center), Cortland County Jane Doe, two Cortland County Officer John Does, Thomas Durkot, Cathy Aitchison, Carnita White, Brian Doliver, Detective John Fern, Sarah Simon, Betty Osborne, Cathy Lavoli, Beth Beers, Patricia Luca, Sarah Fitzpatrick, Irene Flores, Connie Bambino, Joseph Angelino, Norwich Sgt. John Doe, Norwich School District School Board of Education President Joseph McBride, Tom Sutton, Howie Sullivan, Gerrard O'Sullivan, Karrie Stainbauer, Christine Bienick, Dr. Alfred Barnes, Kristen Romavicz, Mark Davis, Vicky Gregory, Kim Murray, Frank Johnson, Sherri Houck, Chris Wilkinson, three Jane Doe Cortland County Family Court Clerks, and four John Doe Officers. [17]

[17]    The Court has not included Defendants Lyn or Lynch, Harper, Brown, Corcoran, or Rowe on the list of those against whom dismissal is recommended for failure by Plaintiff to include any allegations of wrongdoing by them in the complaint because of the allegations against them in his TRO and preliminary injunction papers. (Dkt. No. 8-7 at 8.) The Court has recommended dismissal against school board members and administrators at the Cincinnatus School District and Norwich Central School for lack of factual allegations against them in the complaint. Because it appears that they have been named as Defendants with respect to claims involving Plaintiff's minor children, which should not be addressed by the District Court without the interests of the children being properly represented, the Court would recommend dismissal even if Plaintiff had included allegations to that effect.

**\*17** Although Plaintiff would ordinarily be granted leave to amend to allege facts plausibly showing that the Defendants listed above had violated his constitutional rights under § 1983, for reasons discussed below, the Court finds that allowing amendment in this case would be futile.

**C. Eleventh Amendment Immunity**

Plaintiff has sued New York State. (Dkt. No. 1-2 at 1.) It is well settled that in the absence of consent by the state or abrogation of immunity by Congress under the Fourteenth Amendment, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 114 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment also bars suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Although the allegations in Plaintiff's complaint are inadequate to provide notice of any claim against the State, in his motion to amend Plaintiff complains of the State's alleged bad faith in stone-walling his FOIL request and his appeals and failing to provide information necessary to finish his complaint. (Dkt. No. 9 at 1.) Federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios v. New York Executive Dept. of Parole*, No. No. 07-CV-3598 (DLI) (LB), 2008 WL 150209, at * 2 (E.D.N.Y. Jan. 14, 2008). Plaintiff's recourse is the commencement of a CPLR Article 78 proceeding in state court. *Id.*

In addition, although Plaintiff has not named the OCFS as a Defendant in his complaint, he has alleged that the State agency was a member of a conspiracy to deny Plaintiff of his constitutional rights. (Dkt. No. 1-2 at 23-24.) Were the agency a named Defendant, Plaintiff's conspiracy claim under § 1983 against it would be barred by the Eleventh Amendment.

Finding that Plaintiff has failed to allege any claim against New York State with respect to which there has been consent to suit by the State or an abrogation of Eleventh Amendment immunity by Congress, the Court recommends that Plaintiff's complaint be dismissed with prejudice against the State of New York and to the extent Plaintiff intended to name the OCFS as a Defendant, against the agency as well.

### D. Judicial Immunity

In his original complaint, Plaintiff has named as Defendants the Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; the Hon. William Ames, Cortland County Family Court; and the Hon. Julie Campbell, Cortland County Family Court.[18] (Dkt. No. 1-2 at 1, 4, 6.) All are sued in connection with the support, visitation, and custody

proceedings involving Plaintiff and his estranged wife Nicole. (*See generally* Dkt. Nos. 1, 1-2, and 9-1.)

[18]   While Plaintiff did not include specific factual allegations against Judge Campbell in his complaint, he did contend in his habeas corpus petition that Judge Campbell dismissed all of his Cortland County Family Court petitions and "apparently" placed a conditional discharge against Plaintiff. (Dkt. No. 1 at 41-42.)

**\*18**  It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) (holding that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. A judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of authority." *Id.* at 13, 112 S.Ct. 286 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

Because the allegations in Plaintiff's complaint indicate that his claims against Judges Dowd, Ames, and Campbell, and Support Magistrate Dunshee were all related to the support, visitation, and/or custody proceedings between Plaintiff and Nicole Cruz, the Court finds that they are all entitled to judicial immunity and recommends dismissal of Plaintiff's complaint against them with prejudice on judicial immunity grounds.

### E. Plaintiff's Conspiracy Claim

Plaintiff has alleged a conclusory claim for conspiracy against:

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee.

(Dkt. No. 1-2 at 23.)

Plaintiff claims that those Defendants conspired for the sole purpose of covering up the sexual abuse, apparently of Plaintiff's children, by an elementary school special education teacher connected to Terry and Johanna Kuhn, possibly Nicole Cruz. *Id.* at 23-24. Plaintiff's complaint is devoid of facts regarding the alleged sexual abuse, and is equally devoid of facts plausibly showing that the identified parties conspired to interfere with, deny, or strip Plaintiff of his constitutional rights. *Id. See Dwares*, 985 F.2d at 100 (requiring allegations of specific acts of misconduct as a part of the conspiracy). Furthermore, because the rights of Plaintiff's minor children would clearly be implicated in any conspiracy to cover up sexual abuse by a teacher, the Court finds that consideration of the issue without proper representation of the interests of the children would be improper.

Therefore, the Court recommends that Plaintiff's conspiracy claim against 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD, City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz['s] Attorney, the OFCA

Albany, NY, the Law Guardian Ad Litem, Plaintiff's own Self hired attorneys, and the Hon. Dowd and Hon. Dunshee be dismissed.

**F. Chenango and Cortland Counties**

**\*19** Plaintiff has named Chenango and Cortland Counties as Defendants. (Dkt. No. 1-2 at 1.) Plaintiff has asserted claims against both the Chenango and Cortland County Departments of Social Services and Sheriff's Departments. Because the Departments of Social Services and Sheriff's Departments are administrative arms of their respective counties, the Court will treat Plaintiff's claims against the County Departments as claims against the Counties themselves and recommend dismissal of the complaint with prejudice against both the Departments of Social Services and Sheriff's Departments. *See Mulvihill v. New York*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013).

1. Claims Against the Departments of Social Services

Plaintiff claims in wholly conclusory fashion that the Chenango and Cortland County Departments of Social Services violated CAPTA, 18 U.S.C. § 3509, and SORNA, 34 U.S.C. §§ 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911, *et seq.* (Dkt. No. 1-2 at 21-22.) CAPTA does not create a private right of action for sexual and physical abuse, neglect, and maltreatment while in foster care. *See Alger v. County of Albany, New York*, 489 F.Supp.2d 155, 159 (N.D.N.Y. 2006) (collecting cases). Moreover, even if it did that would be a claim that should not be addressed in this action in which the interests of Plaintiff's minor children are not represented by counsel. *See, e.g., Ingrao v. County of Albany, NY*, No.1:01-CV-730 (TJM), 2006 WL 2827856 (N.D.N.Y. Oct. 2, 2006) (counseled lawsuit raising unsuccessful CAPTA claim by plaintiffs as parents and natural guardian of an infant).

18 U.S.C. § 3509, which is entitled "Child victims' and child witnesses' rights," is a criminal statute that provides for the manner in which child victims and their right to privacy is protected in connection with the judicial process in criminal matters involving abuse, including sexual abuse. If by chance a person were found to have a private right of action under the provision, it would be Plaintiff's minor children, whose interests are not before the Court in this litigation. SORNA provides for the registration of convicted sex offenders and appears to have no relevance whatsoever to Plaintiff's lawsuit.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

### 2. Claims Against the Sheriff's Departments

The sole claim against the Chenango County Sheriff's Department is that members of the Department conspired with Terry Kuhn to conjure up baseless claims against Plaintiff resulting in the issuance of a temporary protective order against Plaintiff. (Dkt. No. 1-2 at 11-12.) Plaintiff's conclusory claim of conspiracy is inadequate to state a claim under § 1983. *See Pangburn,* 200 F.3d at 72. Plaintiff has alleged no specific facts plausibly showing wrongdoing by the Cortland County Sheriff's Department resulting in the violation of Plaintiff's constitutional rights under § 1983.

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cause of action against either Chenango or Cortland County and recommends that the complaint be dismissed as against them.

### G. Nicole Cruz and Terry and Johanna Kuhn

Although the relationship between Nicole Cruz and Terry and Johanna Kuhn is not well explained in the complaint, the Kuhns appear to be Nicole's friends. The allegations in the complaint indicate that Nicole and Johanna Kuhn are private actors. Terry Kuhn is a member of the City of Norwich Fire Department. (Dkt. No. 1-2 at 14-16.) However, except for wholly conclusory allegations that Terry Kuhn abused his power as a Norwich fireman by conspiring with his friends at the Chenango County Police Department to conjure up baseless false statements against Plaintiff which resulted in issuance of a temporary order of protection against Plaintiff, the allegations against him arise of out his actions as an individual rather than a state actor. [19] *Id.* at 11-12.

[19]     Plaintiff also alleges that Terry Kuhn's buddy Frank Revoir was involved in the conspiracy. (Dkt. No. 1-2 at 11-2.) That is the sole mention of Revoir in the complaint. He has not been identified as a state actor and the wholly conclusory allegation that he was part of a conspiracy is insufficient to state a claim against him under § 1983. *See Dwares,* 985 F.2d at 100. Therefore the Court recommends dismissal of the complaint against Revoir and that the dismissal be with prejudice since the allegations in the complaint give no indication Plaintiff could state a claim against him.

*20 Nicole Cruz is alleged to have joined with the Kuhns in forcing Plaintiff from his home and causing him to default on a loan Plaintiff and his estranged wife had on a business they were buying. *Id.* at 11. Plaintiff alleges that Nicole fled the State in July of 2016 in the middle of a child abuse trial owing Plaintiff over $8,000 in child support. *Id.* at 13. According to Plaintiff, Nicole and Terry and Johanna Kuhn are guilty of multiple federal felonies and misdemeanors against him including HUD fraud, mail fraud, false impersonation, falsifying government documents, and unlawful termination of Plaintiff's tenured position in the New York State Education Department. ("NYSED"). *Id.* at 14-16.

The factual allegations against the three do not plausibly show that they were acting under color of state law with regard to Plaintiff's claims. *See Cornejo,* 592 F.3d at 127. Moreover, the allegations of conspiracy by Terry Kuhn are wholly conclusory and therefore inadequate to make a plausible showing that he was acting in concert with state actors. *See Dwares,* 985 F.2d at 100. Therefore, the Court recommends that the complaint be dismissed as against Nicole Cruz and Terry and Johanna Kuhn for failure to state a claim under § 1983. The Court further recommends that the dismissal be with prejudice given the absence of factual allegations in the complaint suggesting Plaintiff could state a cause of action against them under § 1983 if given leave to amend.

### H. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's attorney in connection with the child support, visitation, and custody dispute and is alleged to have appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole. (Dkt. Nos. 1 at 38; 1-2 at 15.) Attorney Taylor was Plaintiff's attorney in the domestic relations dispute for a period of time. (Dkt. No. 1 at 40.) The sole allegation against Taylor in Plaintiff's complaint is that an associate of his was involved in paying a third party to impersonate a child care provider at the daycare center attended by Plaintiff's children. (Dkt. No. 1-2 at 19.) Attorney James Fertig was appointed as a guardian ad litem for Plaintiff's children, and Plaintiff has alleged that he engaged in misconduct and malpractice in violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Private attorneys do not act under color of state law and are not state actors for purposes of § 1983 simply by virtue of their state-issued licenses to practice law. *See Fine v. City of N.Y.,* 529 F.2d 70, 74 (2d Cir. 1975) (private attorney not a state actor). Similarly, public defenders and court-appointed counsel do not act under color of state merely by virtue of their

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 117 of 147

position. *Harrison v. New York,* 95 F.Supp.3d 293, 328-29 (E.D.N.Y. 2015) (collecting cases). Guardians ad litem are included among court-appointed counsel who do not act under color of state law by virtue of their position. *Neustein v. Orbach,* 732 F.Supp. 333, 346 (E.D.N.Y. 1990). Furthermore, Plaintiff has failed to plead any nonconclusory facts showing that the three attorneys were conspiring with state actors. *See Dwares,* 985 F.2d at 100.

Moreover, for the reasons set forth above in the analysis of Plaintiff's claims against Defendants Chenango and Cortland Counties, the Court finds that Plaintiff has failed to state a claim against Fertig violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed as against Defendants Williams, Taylor, and Fertig with prejudice inasmuch as a better pleading will not correct the deficiencies in Plaintiff claims.

### I. Kristen Monroe and David Knickerbocker

**\*21** Plaintiff claims that Monroe and Knickerbocker, both officials in the Cortland County DSS, attempted to trick and then force Plaintiff to rent Monroe's parents' house. (Dkt. No. 1-2 at 2, 19.) Plaintiff has not alleged facts plausibly showing that Monroe and Knickerbocker were acting under color of state law in connection with the rental of Monroe's parents' house. Nor has he alleged facts showing that Monroe or Knickerbocker deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Cornejo,* 592 F.3d at 127.

Therefore the Court recommends that the complaint be dismissed as against Monroe and Knickerbocker, and because the allegations against them do not remotely support the existence of a civil rights claim against them under § 1983, that the complaint be dismissed against them with prejudice.

### J. Sheila Poole

While Plaintiff has alleged that Poole, in her capacity as Acting Commissioner of the NYS OCFS, released indicated reports of child abuse and mistreatment of Plaintiff children by him and Nicole Cruz, his complaint is devoid of factual allegations plausibly showing that she deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States by doing so. *See Cornejo,* 592 F.3d at 127.

Therefore, the Court recommends that the complaint be dismissed as against Poole, and that in light of the failure by Plaintiff to allege any facts suggesting he might be able to plead a § 1983 claim against Poole the dismissal be with prejudice. [20]

[20]    As noted above, Plaintiff has alleged that the OCFS was part of a conspiracy to cover up sexual abuse against Plaintiff's minor children by a special education teacher which the Court has recommended be dismissed. There are no allegations in Plaintiff's complaint suggesting that Poole played any role in the alleged conspiracy.

### K. DCMO BOCES and Unadilla Valley Central School District

Plaintiff claims, *inter alia,* that his transfer from DCMO BOCES to Unadilla was illegal, that his termination was unlawful in that he was denied tenure, rights under the Taylor Law, and Section 75 rights, and that Defendant Lyn or Lynch was involved in the denial. (Dkt. Nos. 1-1 at 15; 1-2 at 13; 8-7 at 8.) Plaintiff also claims that he was harassed, bullied, and forced into involuntary servitude by Defendant Harper, Mackey, Brown, Corcoran, and Rowe at Unadilla. (Dkt. No. 8-7 at 8.) According to Plaintiff, he was also the victim of sex discrimination in his employment and has filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." *Baumgart v. Stony Brook Children's Serv., P.C.,* 249 Fed.Appx. 851, 852 (2d Cir. 2007). Public employees covered under the Public Employees' Fair Employment Act ("Taylor Law"), N.Y. Civ. Serv. Law § 201(7) are precluded from filing federal claims under the LMRA. *See Sales v. Clark,* No. 14-CV-8091 (PAC)(SN), 2017 WL 892609, at \*5 (S.D.N.Y. Feb. 3. 2017). Plaintiff concedes he is covered under the Taylor Law. (Dkt. No. 1-2 at 13.)

Furthermore, Plaintiff's claims, if any, against the individual Defendants for involuntary servitude, harassment, and bullying are state law claims over which this Court has no jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 118 of 147

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir. 2002). Federal question jurisdiction exists if a plaintiff's claim "aris[es] under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

**\*22** Plaintiff's claims against DCMO BOCES and Unadilla and the individual Unadilla Defendants do not present a federal question.[21] Moreover, diversity jurisdiction requires complete diversity between Plaintiff and all of the Defendants, which does not exist in this case. *See Cushing v. Moore,* 970 F.2d 1103, 1106 (2d Cir. 1992) ("complete diversity [is required] between all plaintiffs and all defendants.").

[21]  A plaintiff bears the burden of establishing subject matter jurisdiction over his claims, including citing the relevant federal statute. *Cherry v. New York City Dept. of Corr.,* 698 Fed.Appx. 27, 2017 WL 4457140 (Mem), at \*1 (2d Cir. Oct. 5, 2017.)

In addition, it is not clear from the complaint that the amount in controversy exceeds $75,000. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to be a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago,* 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time action is commenced. *Id.*

Finally, Plaintiff claims to have filed a sex discrimination complaint with the New York Human Rights Division but has provided no information regarding the nature and status of that claim, including whether the EEOC has issued a right to sue letter. Therefore, the Court recommends dismissal.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed against DCMO BOCES, Unadilla, Harper, Mackey, Brown, Corcoran, and Rowe, and that with the exception of his sex discrimination claim against his employer, that the dismissal be with prejudice.

**L. Domestic Relations Exception**
The Court has recommended dismissal on various grounds of all of Plaintiff's claims either with or without prejudice. Even if it had not, with the exception of Plaintiff's employment

claims, all of the claims asserted by him in his civil rights complaint fall within the domestic relations exception discussed above, which divests the district court of subject matter jurisdiction because the claims relate, directly or indirectly, to the issues of support, custody, and visitation. *See Ankenbrandt,* 504 U.S. at 703, 112 S.Ct. 2206. Therefore, the Court recommends that Plaintiff's complaint, with the exception of his employment related claims, be dismissed with prejudice under the domestic relations exception.[22]

[22]  The Court intends for its recommendation for dismissal with prejudice to apply solely to Plaintiff and to have no impact on pursuit of the minor children's claims.

**M. Plaintiff's Motion to Amend**
Plaintiff's motion to amend his complaint does not change the Court's recommendation that his civil rights action be dismissed. Plaintiff's notice to amend involves the failure of the State and perhaps other Defendants to respond to his FOIL requests, Defendants' failure to return waivers of summonses and to respond to papers he has served on them in the action, and the alleged kidnaping of his children. (Dkt. No. 9 at 2.) As noted above, federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios,* 2008 WL 150209, at \*2. Furthermore, inasmuch as Plaintiff's complaint has not yet been accepted for filing, Defendants are under no obligation to return service waivers or respond to any of Plaintiff's papers.

**\*23** Finally, there is no private right of action under 18 U.S.C. § 1201, the federal criminal statute relating to kidnaping. *See Giano v. Martino,* 673 F.Supp. 92, 95 (E.D.N.Y.), *aff'd,* 853 F.2d 1429 (2d Cir. 1987) (Table). Moreover, to the extent the alleged kidnaping of Plaintiff's minor children is a part of the custody dispute between Plaintiff and his estranged wife, Plaintiff's claim falls within the domestic relations exception to subject matter jurisdiction.[23]

[23]  The Court has refrained from considering the legal rights the minor children may have in connection with the alleged kidnaping.

Therefore, the Court recommends that Plaintiff's motion to amend (Dkt. No. 9) be denied.

**N. Motion for a TRO and a Preliminary Injunction**

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Inasmuch as the Court is recommending dismissal of Plaintiff's complaint, its recommends that Plaintiff's motion for a TRO and a preliminary injunction be denied as moot. *See Melnitzky v. Lopreto*, No. 06 Civ. 13206 (SHS), 2006 WL 3500016, at *4 (S.D.N.Y. Dec. 4, 2006) (request for a TRO and preliminary injunction moot where underlying complaint dismissed). Even if the request were not moot, the Court would recommend denial because Plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits of his claims to make them a fair ground for litigation, and a balance of hardships decidedly tipping in his favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Therefore, the Court recommends that Plaintiff's motion for a TRO and preliminary injunction (Dkt. No. 8) be denied as moot, or in the alternative, on the merits.

**ACCORDINGLY**, the Court hereby

**RECOMMENDS** that if there are presently any state court proceedings that arguably could be covered by Plaintiff's notice of removal (Dkt. No. 1) that the District Court issue an order remanding them to state court, and if not, that the Court find that no state court proceedings have been properly removed to state court; and it is further

**RECOMMENDED** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to amend his complaint (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1-2) be **DISMISSED** on initial review under 28 U.S.C. 1915(e)(2)(B)(ii), and that with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be **WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion for a TRO and a preliminary injunction (Dkt. No. 8) be denied as moot or, in the alternative, on the merits; and it is further

**RECOMMENDED** that the District Court order that the determination in this matter have no effect on the legal rights of Plaintiff's minor children; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[24] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[24]   If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6021838

---

End of Document                 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**

2017 WL 6001833

2017 WL 6001833
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-0510 (BKS/TWD)
|
Signed 12/04/2017

**Attorneys and Law Firms**

Kiplind L. Cruz, Cincinnatus, NY, Plaintiff, pro se

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**\*1** On May 9, 2017, pro se Plaintiff Kiplind L. Cruz initiated this action by filing a document described as a "petition for writ of habeas corpus" and "defendants federal removal from State of New York, County of Cortland, Chenango, Onondaga, New York State Cortland County Combined Court" to this Court (Dkt. No. 1), with an attached "Complaint" under 42 U.S.C. §§ 1983, 1985, and 1986 (Dkt. No. 1-2). Plaintiff later filed a motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) and a motion to amend (Dkt. No. 9). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on October 27, 2017, issued an Order and Report-Recommendation recommending that: 1) any state court proceedings arguably covered by Plaintiff's notice of removal be remanded to state court, and the Court find that no state court proceedings have been properly removed; 2) Plaintiff's petition for writ of habeas corpus be dismissed with prejudice; 3) Plaintiff's motion to amend be denied; 4) Plaintiff's complaint be dismissed on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), and, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be with prejudice; 5) Plaintiff's motion for a temporary restraining order and a preliminary injunction be denied as moot, or in the alternative, on the merits; and 6) the Court order that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children. Dkt. No. 15. Magistrate Judge Dancks advised Plaintiff that, under 28 U.S.C. § 636(b)(1),

he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. *Id.* at 49. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue,* 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 15) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's petition for writ of habeas corpus (Dkt. No. 1) is **DISMISSED WITH PREJUDICE;** and it is further

**ORDERED** that no state court proceedings have been properly removed to this Court; and it is further

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1-2) is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal is **WITH PREJUDICE**; and it is further

**\*2 ORDERED** that Plaintiff is granted leave to file an amended complaint with respect to the sex discrimination claim which is the subject of his Human Rights Division complaint, within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within the thirty (30) days, that this action be closed without further Order of the Court; and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) is **DENIED AS MOOT**; and it is further

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**

2017 WL 6001833

**ORDERED** that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children, and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6001833

---

          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00722-BKS-TWD    Document 10    Filed 07/16/24    Page 122 of 147

Reeves v. Department of Children, Youth and Families, Not Reported in Fed. Supp....

2020 WL 5898866

2020 WL 5898866
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christine Marie REEVES, Plaintiff,

v.

The DEPARTMENT OF CHILDREN,
YOUTH AND FAMILIES, Defendant.

1:20-CV-987 (BKS/DJS)
|
Signed 09/04/2020

**Attorneys and Law Firms**

CHRISTINE MARIE REEVES, Plaintiff, Pro Se, 54 The
Crossway, Delmar, New York 12054.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent to the Court a *pro se* Complaint which
Plaintiff originally filed in the Western District of New York.
Dkt. No. 1. Plaintiff was granted leave to proceed *in forma
pauperis* in the Western District, which then transferred
the action to this Court. Dkt. No. 7. In accordance with 28 U.S.C.
§ 1915(e), the Court will *sua sponte* review the sufficiency of
the Complaint.

## I. DISCUSSION

### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed *in forma pauperis*,
"the court shall dismiss the case at any time if the court
determines that ... the action or appeal (i) is frivolous or
malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).
Thus, it is a court's responsibility to determine that a plaintiff
may properly maintain his complaint before permitting him
to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912
F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme
caution ... in ordering *sua sponte* dismissal of a *pro se*
complaint *before* the adverse party has been served and both
parties (but particularly the plaintiff) have had an opportunity
to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983) (emphasis in original) (citations omitted). Therefore, a
court should not dismiss a complaint if the plaintiff has stated
"enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing
*Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the
court should construe the factual allegations in the light most
favorable to the plaintiff, "the tenet that a court must accept
as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." *Id.* "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell Atl.
Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-
pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged
– but it has not 'show[n]'–'that the pleader is entitled to
relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A
pleading that only "tenders naked assertions devoid of further
factual enhancement" will not suffice. *Id.* at 678 (further
citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the
proposition that Federal Rule of Civil Procedure 8 "demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation"). Allegations that "are so vague as to fail
to give the defendants adequate notice of the claims against
them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.
Appx. 102, 104 (2d Cir. 2009).

**\*2** Furthermore, a court's initial review of a complaint under
§ 1915(e) must encompass the applicable standards of the
Federal Rules of Civil Procedure. Rule 8 of the Federal Rules
of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's
> jurisdiction ...;

> (2) a short and plain statement of the claim showing that
> the pleader is entitled to relief; and

> (3) a demand for the relief sought, which may include relief
> in the alternative or different types of relief.

Case 6:24-cv-00722-BKS-TWD  Document 10  Filed 07/16/24  Page 123 of 147

Reeves v. Department of Children , Youth and Families, Not Reported in Fed. Supp....

2020 WL 5898866

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b)     Paragraphs;     Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1323 at 735 (1990)).

A complaint that fails to comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Hudson v. Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. *See Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Allegations Contained in Plaintiff's Complaint

What has been docketed as the Complaint in this case is a brief four-paragraph pleading which Plaintiff actually captions as a petition for a writ of habeas corpus. *See* Compl. It alleges that Plaintiff is the mother of a minor child who "has been seized unlawfully from his safe loving home" with his mother. *Id.* at ¶ 2. She alleges in conclusory terms that the she is being improperly denied access to her son. *Id.* at ¶¶ 2-4. The Complaint makes no specific allegation of how her federal constitutional or statutory rights have been violated.

### C. Analysis of Plaintiff's Claims

**\*3** At the outset, the Court notes that Plaintiff's Complaint fails to satisfy the basic pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, making it challenging to assess whether or not she has stated a viable claim for relief. *See generally* Compl. From a purely form perspective, the Complaint fails to provide specific facts relevant to the claims or to relate them to federal causes of action. This alone would be a sufficient basis to dismiss the Complaint upon initial review.

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiff alleges that the Court has federal question jurisdiction over this case. Dkt. No. 1 at p. 3, Civil Cover Sheet. The relief sought in this case appears to be an order directing the return of Plaintiff's minor son to her custody. Compl. at p. 2.

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing

Reeves v. Department of Children , Youth and Families, Not Reported in Fed. Supp....

2020 WL 5898866

"competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted) (citation omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, insofar as the present *pro se* Complaint seeks the restoration of custody over her son, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at *5 (N.D.N.Y. Sept. 15, 2017).

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). Here, a lack of jurisdiction would normally result in dismissal with prejudice. Given the sparse nature of the pleadings, it is perhaps possible that Plaintiff, who is proceeding *pro se*, may be attempting to assert a claim over which this court would have jurisdiction. *See LeClair v. Vinson*, 2019 WL 1300547, at *1 (N.D.N.Y. Mar. 21, 2019), *report and recommendation adopted*, 2019 WL 2723478 (N.D.N.Y. July 1, 2019). The Court therefore recommends that the Complaint be dismissed without prejudice to the filing of an Amended Complaint that specifically details Plaintiff's precise claims.

**\*4** The Court advises Plaintiff that should she be permitted to amend her Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that her civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, she should include a corresponding number of paragraphs in her amended complaint for each such allegation, with each paragraph specifying: (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of her prior Complaint shall be incorporated into her amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims she intends to assert against the defendant and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.

Also pending is Plaintiff's "emergency" motion for return of her son which appears to seek temporary injunctive relief. Dkt. No. 2. In light of this Court's recommendation that the Complaint be dismissed for lack of jurisdiction, the Court recommends that this Motion be dismissed as moot.

## II. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with prejudice as to all claims seeking custody of her minor child, but that Plaintiff be granted leave to replead any additional claim she may be intending to assert in this action**; and it is further

**RECOMMENDED**, that Plaintiff's Emergency Motion be **DENIED** as moot; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [1] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

1    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5898866

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5891564
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christine Marie REEVES, Plaintiff,

v.

The DEPARTMENT OF CHILDREN
YOUTH AND FAMILIES, Defendant.

1:20-cv-0987 (BKS/DJS)
|
Signed 10/05/2020

**Attorneys and Law Firms**

Plaintiff, pro se, Christine Marie Reeves, Delmar, New York.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, United States District Judge:

 *1 Plaintiff *pro se* Christine Marie Reeves commenced this action in the Western District of New York on August 18, 2020, together with an "emergency motion for immediate return of minor child" and a motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1-3). Western District of New York Chief United States District Court Judge Frank P. Geraci, Jr. granted Plaintiff's motion to proceed IFP and transferred Plaintiff's action to this Court. (Dkt. No. 7). This matter was assigned to United States Magistrate Judge Daniel J. Stewart who, on September 4, 2020, issued a Report-Recommendation recommending that Plaintiff's complaint be dismissed as to all claims seeking custody of her minor child because this Court lacks subject matter jurisdiction of any such claim, but that Plaintiff be granted leave to replead any additional claims she may be intending to assert in this action. (Dkt. No. 9). Magistrate Judge Stewart also recommended that Plaintiff's emergency motion be denied as moot. (*Id.*). Magistrate Judge Stewart advised Plaintiff that under 28 U.S.C. § 636(b)(1), she had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.*, at 9). No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error.

See *Petersen v. Astrue*, 2 F. Supp. 3d 223, 229 (N.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes to 1983 amendment). Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation. [1]

[1]  The Court notes that while the Report-Recommendation recommended dismissal of the child custody claim with prejudice, a dismissal for lack of subject matter jurisdiction must be without prejudice. *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017).

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 9) is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED without prejudice** for lack of subject matter jurisdiction**, and without leave to amend as to any claim seeking custody of her minor child;** and it is further

**ORDERED** that Plaintiff be granted leave to replead any claim she may be intending to assert in this action that is not seeking custody of her minor child; and it is further

**ORDERED** that Plaintiff may file an amended complaint within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days from the date of this Order, or request an extension of time to do so, the Clerk is directed to close this case without further Order of the Court; and it is further

**ORDERED** that Plaintiff's Emergency Motion (Dkt. No. 2) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon Plaintiff in accordance with the Local Rules.

 *2 **IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5891564

2020 WL 5891564

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Boyle v. Town of Hammond, Not Reported in Fed. Supp. (2008)

2008 WL 11416992

2008 WL 11416992
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James F. BOYLE, et al., Plaintiffs,

v.

TOWN OF HAMMOND, et al., Defendants.

7:08-CV-1065 (TJM/GJD)
|
Signed 10/24/2008

**Attorneys and Law Firms**

JAMES F. BOYLE, Plaintiff, pro se.

**MEMORANDUM DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**\*1** The Clerk has sent to this court a complaint filed by plaintiff James F. Boyle (Dkt. No. 1). Although it is unclear where the complaint ends and the exhibits to the complaint begin, the entire document is *183* pages long. The title page of the complaint states that it is being brought under the "False Claims Act" and "Slavery Appeal." [1] (Dkt. No. 1 at 1). The first six pages of the document are numbered and page six contains plaintiff James F. Boyle's signature, thus, this court assumes that the first six pages constitute the complaint in this action, and the rest of the pages constitute unnumbered and unlabeled exhibits to the complaint. [2] Plaintiff has also moved for appointment of counsel. (Dkt. No. 3).

[1] Plaintiff refers to these causes of action as "Federal Crimes." Compl. at 1.

[2] These pages contain photographs, drawings; letters; court decisions; "invoices" from plaintiff to various individuals including the undersigned and Clerk of the Court Lawrence Baerman; and various other writings by the plaintiff.

**DISCUSSION**

**1. Filing Fee**

The law provides a filing fee of $350.00 for most civil actions. 28 U.S.C. § 1914(a). Plaintiff in this case has now paid

the filing fee. [3] Notwithstanding that plaintiff has paid the filing fee, the court has "inherent authority" to dismiss a frivolous complaint. *Fitzgerald v. First East Seventh Street Tenants*, 221 F.3d 362, 363-64 (2d Cir. 2000). To survive dismissal for failure to state a claim, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above a speculative level.' " *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) ). In determining whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). With these standards in mind, the court will proceed to review plaintiff's complaint.

[3] When plaintiff filed this action on October 6, 2008, he had neither paid the fee nor moved to proceed *in forma pauperis* under 28 U.S.C. § 1915. Plaintiff paid the filing fee on October 22, 2008.

**2. Parties**

The problems with the complaint in this action begin on the first page. The caption of the case indicates that there are seven plaintiffs: James F. Boyle; Pamela Boyle; Keith Wilson; William Miller; Martha Miller; Beverly Camelier; and James Gardner. Compl. at 1. However, under the heading "Appearances," only "James F. Boyle, Plaintiff, pro se" is listed. *Id.* The "complaint" is signed only by James F. Boyle. Compl. at p.6. There is no indication that James F. Boyle is a licensed attorney who may represent other individuals in court.

The statute governing appearances in Federal Court provides that "parties may plead and conduct their own cases personally or by counsel...." 28 U.S.C. § 1654. The Second Circuit has interpreted this statute to allow two types of representation, " 'that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself.' " *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)(quotation omitted). The statute does not allow "unlicensed laymen" to represent anyone but themselves. *Id.* In this case, James F. Boyle may not represent any of the other individuals that he lists as plaintiffs. Those

Case 6:24-cv-00722-BKS-TWD Document 10 Filed 07/16/24 Page 129 of 147

Boyle v. Town of Hammond, Not Reported in Fed. Supp. (2008)

2008 WL 11416992

individuals could have signed the complaint and appeared as *pro se* plaintiffs, but James F. Boyle may not sign the complaint for them or proceed on their behalf. Thus, for purpose of this case, the court must treat James F. Boyle as the only plaintiff in this action.

### 3. Background and Procedural History

**\*2** In his complaint, plaintiff alleges that the government of Hammond Town, led by its Town Supervisor, Janie Hollister [4] made "false claims" and improperly billed plaintiff, taking away more Social Security than was lawful to "support the general welfare." Compl. at 2. Plaintiff appears to be complaining that his land was improperly assessed, resulting in his payment of illegally inflated property taxes. Plaintiff states that at one time, he was able to get an assessment corrected, but that the "honest" assessor was dismissed. Compl. at 2. Plaintiff also seems to claim that, at the same time, Town Supervisor Hollister and the Hammond Town Board were allowed to pay substantially less taxes than plaintiff. Compl. at 2-4. Plaintiff alleges that this false and unequal assessment was imposed by the "Queen's Assessor Stephen Teele" using "larceny by trick." Compl. at 4. Plaintiff then states that "[t]he Queen's Assessor makes a False Claim to George the III's court." *Id.*

[4]      Plaintiff refers to the Town Supervisor as the "Queen" throughout the complaint.

The complaint then abruptly turns to plaintiff's claim that the Hammond Town Board and the "Queen" allowed a probationary snowplow driver to stop plowing and sanding during an ice storm, causing a dangerous condition for plaintiff's wife and the other residents of plaintiff's development on December 16, *2003*. Compl. at 5. Apparently the Town stopped plowing the access road to plaintiff's development. [5] Plaintiff states that as the "only able bodied seaman," he was "thrown into SLAVERY at hard labor clearing New York State and the Queen's roadway." *Id.* Plaintiff seems to be claiming that he has no choice but to plow the road, and this constitutes slavery, imposed upon him by defendants in violation of the 13th Amendment. Compl. at 6. Plaintiff states that the "New York State/Hammond Town SLAVE matter is before local Court Judge Demarest seeking injunction to prevent further public 'Reckless Endangerment'...." Compl. at 5.

[5]      It is unclear from the six page complaint when the Town stopped plowing the road, and how long this

situation has lasted, however, one of the plaintiff's exhibits is a decision by New York State Supreme Court Justice David Demarest, dated May 15, 2008, indicating that this dispute is still in the process of being resolved.

This complaint is not Mr. Boyle's first attempt at making the essentially same claims in this court. Plaintiff filed a previous action [6] in this court against several defendants, including the Hammond Town Board; several Town Board members; the Hammond Town Attorney; the Town of Hammond "truck driver;" the Hammond Town Assessor (Teele); and Town Supervisor Hollister. *Boyle v. Paddock*, 7:07-CV-84 (TJM/GJD). The original complaint in 07-CV-84 made the same factual allegations that he makes in this complaint, however, in 07-CV-84, in addition to the Town of Hammond, plaintiff sued the individual Town Board Members, Assessor, Supervisor, and truck driver. The original complaint also alleged that Town Assessor Teele "selectively assessed" plaintiff's property and that the Town truck driver "abandoned his duties in the December 12, 2003 ice storm leaving a hazardous ice slope ...", endangering plaintiff's wife.

[6]      Plaintiff also paid the filing fee in that action.

Plaintiff filed 07-CV-84 pursuant to 42 U.S.C. § 1983, and on February 8, 2007, this court issued an Order, finding that plaintiff had cited no basis for this court's jurisdiction, but affording plaintiff time to file an amended complaint. (Dkt. No. 8 in 07-CV-84). Plaintiff complied with the court's order and filed an amended complaint, however, this court found that the amendment did not cure the defects in the original complaint, and did not state a claim for relief. On March 13, 2007, the complaint was dismissed for failure to state a claim. (Dkt. No. 12 in 07-CV-84). Although plaintiff was granted an extension of time to file an appeal, it does not appear that any appeal was ever filed. *See* (Dkt. No. 16 in 07-CV-84).

**\*3** Plaintiff has filed this new action in which he essentially makes the same claims as in 07-CV-84, but names only the Town of Hammond and the New York State Department of Transportation. The other difference in this action is that plaintiff is attempting to sue under different bases of jurisdiction. Instead of bringing this action under 42 U.S.C. § 1983, plaintiff is now attempting to bring his claims under the False Claims Act, 31 U.S.C. § 3729 *et seq.* for the property tax claim, and directly under the 13th Amendment for his alleged slavery cause of action. He also mentions that this is a complaint for two "FEDERAL CRIMES." Plaintiff does not state a claim under the False Claims Act, nor does he state

Boyle v. Town of Hammond, Not Reported in Fed. Supp. (2008)

2008 WL 11416992

a claim for a violation of the 13th Amendment. Finally, he cannot bring a complaint "for two FEDERAL CRIMES."

**4. False Claims**

The False Claims Act, 31 U.S.C. § 3729 *et seq.* contains a "qui tam" provision authorizing private citizens, called "relators," to sue on behalf of the United States government to recover treble damages from those who knowingly make false claims for money or property upon the Government or who knowingly submit false statements in support of those claims or to avoid the payment of money or property to the Government. *See* 31 U.S.C. § 3730(b). The False Claims Act applies to claims against the United States government. In order to bring an action under the False Claims Act, the relator must file the complaint under seal and give the government an opportunity to intervene. *Id.* § 3730(b)(2). The Government then has an initial period of 60 days to decide whether to intervene. *Id.* If the Government chooses not to intervene, the relator may proceed on the Government's behalf and, in either case, the relator is entitled to a percentage of any award received. 31 U.S.C. §§ 3730(c)(3); 3729(d).

Plaintiff in this case does not claim that either of the defendants is making false claims directly against the United States government. Plaintiff alleges that the Town of Hammond made "FALSE CLAIMS to bill plaintiff pro se falsely...." Compl. at 2. Plaintiff then states that the Town of Hammond falsely "removed" Social Security from the plaintiff. *Id.* Plaintiff may be attempting to claim that by over assessing his property and taking his money, which included Social Security payments from the Government, the Town of Hammond was actually making a "false claim" against the United States for which plaintiff could then sue under the False Claims Act. The court makes this assumption because plaintiff's reference to Social Security is the only reference that has any relationship to the United States government. Plaintiff does not allege that the New York State Department of Transportation had anything to do with this "taking." Thus, the claim does not appear to be made against the New York State Department of Transportation.

Plaintiff's apparent claim is not the type of "false claim" for which plaintiff can sue under the False Claims Act. Once the Social Security Administration pays plaintiff his benefits, the money no longer belongs to the Government. It belongs to the plaintiff. If plaintiff was falsely billed or his property improperly assessed, resulting in an inflated tax payment, it is the plaintiff who is injured, and it is not a claim that plaintiff

can bring "on behalf of" the United States. Thus, plaintiff may not proceed under the False Claims Act. [7] Any claim that he can file this action on behalf of the United States government has absolutely no basis in law or in fact, and may be dismissed both as frivolous and for failure to state a claim.

[7]   The court would also point out that plaintiff did not proceed in accordance with the False Claims Act by filing the action under seal. Since the substance of plaintiff's claim under the Act is frivolous, the fact that he did not proceed properly is irrelevant to this decision.

**5. Involuntary Servitude and the 13th Amendment**

**\*4**   Although the complaint itself is unclear, the court has read a May 15, 2008 decision by New York State Supreme Court Justice David Demarest, attached to the complaint in order to clarify the facts surrounding plaintiff's claim. Justice Demarest's decision states that, the petitioners [8] claim that on December 16, 2003, after many years of plowing the road that connects New York State Route 12 with Lillebridge Lane and Overlook Drive, the Town of Hammond stopped maintaining the road. *James Boyle, et al. v. Town of Hammond and New York State DOT*, Index. No. 126663, IAS # 44-1-2008-0059 (Demarest, J.). Plaintiff and the other individuals who are owners of property that is served by the access road claim that the New York State Department of Transportation (DOT) should have begun maintaining the road when the Town of Hammond stopped doing so in 2003. *Id.* at 2.

[8]   The caption in this case is identical to the caption in the state court action. The state court action is an Article 78 proceeding under N.Y. CIV. PRAC. L. & R. § 7801 *et seq.* The "petitioners" in the state court action are the "plaintiffs" listed in the caption of this complaint.

This plaintiff, together with the other individuals that he lists as plaintiffs in this case brought the Article 78 proceeding in New York State Supreme Court, to determine which entity should be responsible for maintaining the road. The Article 78 petition also asked for damages. The case in New York State Supreme Court was ongoing as of May 2008. In Justice Demarest's decision, he found that "[n]otwithstanding the determination that the access road is a public road, Petitioners' ultimate relief sought cannot be made on the submissions alone." *Id.* at 6. Justice Demarest found that a "plenary hearing" would be necessary to take testimony and resolve

Boyle v. Town of Hammond, Not Reported in Fed. Supp. (2008)

2008 WL 11416992

factual issues regarding which entity would be responsible for the road's maintenance. *Id.* at 6-7. The judge then stated that after discovery was completed, counsel should file a Note of Issue, and a date would be set for the hearing. *Id.* This court must point out that the petitioners in the Article 78 proceeding are represented by counsel. In fact, plaintiff has attached various letters from the attorney representing the petitioners in state court to this complaint.

In this case, plaintiff states in the complaint that the ultimate issue of who is responsible for maintaining the road is before Justice Demarest. Plaintiff's claim in federal court appears to be that because he was ***forced*** to take up the maintenance of the road himself, the Town and the DOT have subjected him to "SLAVERY" in violation of the 13th Amendment. Plaintiff states that he was "the only able bodied seaman," and he was "thrown into hard labor clearing New York State and the Queen's roadway." Compl. at 5.

### A. New York State DOT

The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). A claim against a state agency is considered a claim against the state and implicates the Eleventh Amendment because the state is the "real" party in interest. *Id.* at 101, 104 S.Ct. 900. The Eleventh Amendment bars suits against the state, state agencies, and state officers in their official capacities. *See Huang v. Johnson,* 251 F.3d 65, 70 (2d Cir. 2001). Exceptions to Eleventh Amendment immunity exist if the state waives immunity and consents to suit in federal court or if Congress abrogates the state's immunity by statute. *Id.* at 69-70. When the issue is waiver of immunity, the state's consent to suit must be "unequivocally expressed." *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900.

In this case, the New York State DOT is an agency of New York State and is, thus, immune from suit unless the state has waived that immunity or Congress has abrogated the immunity by statute. Plaintiff states the he is suing directly under the 13th Amendment of the United States Constitution, not under any federal statute in which Congress may have abrogated immunity. There is no evidence that the state has waived immunity for such actions. Thus, any 13th Amendment claim may be dismissed as against the New York State DOT, regardless of how plaintiff is attempting to raise this claim.[9]

[9] Plaintiff has not mentioned 42 U.S.C. § 1983 in this case, perhaps because this court dismissed his claims in 07-CV-84, when he attempted to raise similar issues against individual defendants and the Town of Hammond under section 1983. The Eleventh Amendment immunity would apply to any claims against New York State DOT in any event. It is now well-settled that the state and its agencies cannot be sued under section 1983. *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.

### B. Town of Hammond

**\*5** Even assuming that plaintiff could bring his 13th Amendment claim against the Town, plaintiff does not state a claim for any 13th Amendment violation in this case. The Thirteenth Amendment to the United States Constitution states that "neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII, § 1. The Supreme Court has stated that the exact range of conditions that the Thirteenth Amendment prohibits is harder to define than the "spirit of the phase 'involuntary servitude.' " *United States v. Kozminski,* 487 U.S. 931, 942, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988). The phrase "involuntary servitude" was intended " 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.' " *Id.* (quoting *Butler v. Perry,* 240 U.S. 328, 332, 36 S.Ct. 258, 60 L.Ed. 672 (1916) ).

The Second Circuit has stated that courts have consistently found that the involuntary servitude standard "is not so rigorous as to prohibit all forms of labor that one person is compelled to perform for the benefit of another." *Immediato v. Rye Neck Sch. Dist.,* 73 F.3d 454, 459 (2d Cir.), *cert. denied,* 519 U.S. 813, 117 S.Ct. 60, 136 L.Ed.2d 22 (1996). The Thirteenth Amendment "does not bar labor that an individual may, at least in some sense, choose not to perform, even where the consequences of that choice are 'exceedingly bad.' " *Id.* (quoting *United States v. Shackney,* 333 F.2d 475, 486 (2d Cir. 1964) ). In *Immediato,* the Second Circuit listed

Boyle v. Town of Hammond, Not Reported in Fed. Supp. (2008)

2008 WL 11416992

instances in which the state could require an individual to work without running afoul of the Thirteenth Amendment. *Id.* at 486. Included in those cases were situations in which attorneys could be required to perform *pro bono* services or choose not to practice law, to situations in which individuals were forced to work to keep up public roads or face criminal prosecution. *Id.* (citing *inter alia United States v. 30.64 Acres of Land,* 795 F.2d 796, 800-801 (9th Cir. 1986)(pro bono work by attorney); *Butler v. Perry,* 240 U.S. at 333, 36 S.Ct. 258 (upkeep of roads) ).

Plaintiff in this case has apparently taken it upon himself to maintain the road that is the subject of plaintiff's state court litigation. Neither the Town nor the New York State DOT has **required** him to do so. Plaintiff is currently suing in New York State court to determine which of the two defendants is responsible for the road maintenance, and has also asked for damages in the state court action. He now wishes to sue the Town and the New York State DOT in federal court for involuntary servitude because plaintiff **chose** to maintain the road. Plaintiff states he was forced to do so in order to maintain the safety of his family and the other families that live in his subdivision. Unfortunately, based on the case law discussed above, plaintiff cannot state a cause of action under the Thirteenth Amendment no matter why he chose to plow the road, even if the consequences of choosing not to plow the road would have been "exceedingly bad." Thus, plaintiff's Thirteenth Amendment claim must be dismissed as against both defendants.

### 6. "Federal Crimes"

The court must mention that plaintiff's complaint also states that he is bringing an action for two "Federal Crimes." The court would first point out that a "qui tam" action is a **civil** complaint. 31 U.S.C. § 3730(b). The law specifically provides that a private party may only bring a "civil action" for a violation of section 3729. *Id.* Plaintiff also cites no basis for his bringing a criminal action under the Thirteenth Amendment. The law is quite clear that in the federal system, crimes are always prosecuted by the Federal Government, not by private complaints. *Hill v. DiDio,* 191 Fed. Appx. 13, 14-15 (2d Cir. 2006)(citing *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86-87 (2d Cir. 1972) ). To conclude otherwise, the party must show that Congress specifically intended to create a private right of action pursuant to the statutes that plaintiff seeks to enforce. *Id.*

**\*6** Plaintiff in this case has not shown that Congress has provided a private right of action to bring a criminal action

pursuant to the statute or Constitutional provision that he cites. Thus, to the extent that plaintiff alleges that he is bringing a complaint for Federal Crimes, the complaint must also be dismissed as frivolous.

### 7. New York State Property Taxes

To the extent that plaintiff's complaint can be read as raising any challenges to his state property tax assessment, plaintiff cannot bring these claims in federal court. The Tax Injunction Act, 28 U.S.C. § 1341 specifically prevents a federal court from enjoining, suspending, or restraining the assessment, levy or collection of any tax under state law where there is a plain, speedy, and efficient remedy available in State court. The Supreme Court has held that even in cases not specifically covered by section 1341, the federal court should refrain from interfering with state taxation as a principle of comity. *Fair Assessment In Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). In *Fair Assessment,* plaintiffs sought to challenge the unequal assessment of local property taxes under 42 U.S.C. § 1983. *Id.*

It has been held that New York provides a "plain, speedy, and efficient" remedy to challenge state tax assessments. *See 423 South Salina St., Inc. v. Syracuse,* 566 F.Supp. 484, 491-92 (N.D.N.Y.), *aff'd,* 724 f.2d 26, 27 (2d Cir. 1983); *Izzo v. City of Syracuse,* 98-CV-778, 2000 U.S. Dist. LEXIS 19784, \*7-10 (N.D.N.Y. Aug. 3, 2000). In *Izzo,* plaintiff claimed that the defendants "illegally and fraudulently" over assessed certain of his properties. 2000 U.S. Dist. LEXIS 19784 at \*6-7. The court specifically held that it was precluded from exercising jurisdiction over challenges to state, local or municipal tax assessments, regardless of what type of relief was sought. *Id.* at \*7-8 & n.3. The court in *Izzo* also reviewed the state's system of challenging real property tax assessments and found them sufficient. *Id.* at \*9-10.

Thus, plaintiff in this case cannot challenge his state tax assessment in federal court, regardless of his claim that the assessor has acted illegally, unequally, or falsely. To the extent that this complaint or the exhibits attached to it can be read to challenge plaintiff's tax assessment, the claim may be dismissed with prejudice.

### 8. Appointment of Counsel

Since this court is dismissing plaintiff's action, the court need not consider whether to appoint counsel. However, the court would also point out that there is no constitutional right to appointment of counsel in a civil case, and the Second Circuit

has cautioned against "routine" appointment of pro bono counsel. *Harmon v. Runyon*, No. 96 Civ. 6080, 1997 WL 118379, at *1, 1997 U.S. Dist. LEXIS 2849, *2 (S.D.N.Y. Mar. 17, 1997)(citing *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) ). Additionally, in order to qualify for appointment of counsel, the party must be indigent, and the indigent party must have attempted to obtain counsel on his or her own. *See* 28 U.S.C. § 1915(e)(1)(the court may request an attorney to represent any person unable to afford counsel); *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994); *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) ).

 **\*7** First, the court notes that plaintiff paid the filing fee, and is represented by counsel in his state court action. Plaintiff states that he has had to hire an attorney in state court that has cost him thousands of dollars, and that plaintiff's social security combined with his wife's social security is not likely to "support a Federal Trial." Pl. Declaration at p.3. Although plaintiff states that he cannot afford to proceed, plaintiff has failed to complete an application to proceed *in forma pauperis*, which contains other questions relevant to plaintiff's assets. A review of plaintiff's motion for appointment of counsel shows that he has not accurately completed the form for appointment of counsel. The form requests the names of attorneys contacted by plaintiff in an attempt to obtain counsel. The form also requires that plaintiff attach any letters that he received from those attorneys. (Dkt. No. 3 at 1). Although plaintiff lists the names of four attorneys, [10] only one of those attorneys may have been contacted to represent plaintiff.

[10]     Plaintiff also lists the name of a former defendant Town Assessor Teele, but clearly this is not an individual from whom plaintiff requested pro bono representation.

Plaintiff has listed Scott Goldie, Esq., who is the attorney representing plaintiff and the other individuals in the state court action. The letter that plaintiff sent to Attorney Goldie was dated October 10, 2008, and merely stated that plaintiff had "filed" in federal court. Pl. Ex. C. The letter further states that plaintiff believes that a jury will be convinced of "governmental tax theft and retaliatory 'compelled servitude,'" however, "[t]he paperwork has blocked me from exercising constitutional right." *Id.* Plaintiff ends the letter by asking: "Can you help me get before the Court?" *Id.* No response from Attorney Goldie has been included as an exhibit to plaintiff's

motion, and it is unclear whether anyone reading plaintiff's letter would understand that he was attempting to obtain pro bono counsel by that request.

The rest of the letters that plaintiff has attached to his motion for appointment of counsel are not letters requesting attorneys to take plaintiff's case in federal court. Some of the letters are dated 2007 and are written to various state officials such as the New York State Comptroller, Thomas P. Di Napoli. Pl. Ex. D. Oddly enough, plaintiff states in this letter, dated December 21, 2007 that he has "asserted" his "civil right of appeal to the Federal Court." *Id.* Plaintiff also states that he believes that "the Court has found probable cause to allow criminal or civil penalty." *Id.* This court does not know what federal court plaintiff is referring to, but plaintiff's 2007 case was dismissed by the undersigned in March of 2007, and although plaintiff requested an extension of time to appeal, he did not do so. This letter is clearly not an attempt to obtain pro bono counsel. Plaintiff's motion for appointment of counsel is **_denied_**, both as moot because the court is ordering dismissal of this action and because plaintiff has not properly shown his eligibility for such appointment.

## 9. Opportunity to Amend

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, plaintiff has already attempted to bring his claims in 07-CV-84. This court gave him an opportunity to amend his complaint to state a claim, and plaintiff's amended complaint did not cure the deficiencies in the original, resulting in a dismissal. Now he has returned in an attempt to re-cycle his original claims by bringing them under new and different bases, while making the same allegations that were dismissed in 2007.

Additionally, it is quite clear that plaintiff will not be able to amend his complaint in any way to bring a "qui tam" action for the reasons stated above. Nor can plaintiff amend his complaint to properly state a claim for involuntary servitude. His claims have no basis in law or in fact and may be dismissed as frivolous.

 **\*8  WHEREFORE,** based on the findings above, it is

Boyle v. Town of Hammond, Not Reported in Fed. Supp. (2008)

2008 WL 11416992

**ORDERED**, that the complaint is **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** as frivolous, and it is further

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2008 WL 11416992

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 6122960
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.

Yvonne Joe GOODE, and

Charles Marvin Goode, Plaintiff,

v.

Ruth HALDERMAN, and Deloris Medeiros, Defendants.

No. 3:11–cv–01461–BR.
|
Dec. 9, 2011.

**Attorneys and Law Firms**

Yvonne Joe Goode, Portland, OR, pro se.

Charles Marvin Goode, Portland, OR, pro se.

ORDER TO DISMISS

BROWN, District Judge.

**\*1** Plaintiffs brings this civil action *pro se.* Pursuant to an order entered by the court this date, Plaintiff Charles Marvin Goode was granted leave to proceed *in forma pauperis.* However, for the reasons set forth below, the Complaint is dismissed.

**BACKGROUND**

Plaintiffs allege they agreed with Defendants to move into a mobile home trailer owned by Defendants and to make repairs to the trailer.[1] They allege the parties agreed the cost of repairs would be deducted from the monthly rent. Plaintiffs allege the property was illegally sub-leased to them by Defendants, that it was uninhabitable, and that Defendants refused to abide by the agreement to credit the cost of repairs against the monthly rent. By way of remedy, Plaintiffs seek money damages in the amount of $1,260.

[1] The Court notes the Complaint, while purportedly brought by both Yvonne Joe and Charles Marvin Goode, was signed only by Charles Marvin Goode. The parties are advised that a *pro se* Plaintiff may not bring an action on behalf of another; instead, both *pro se* Plaintiffs must sign every pleading or other document submitted to the Court. *See* Fed.R.Civ.P. 11(a); *Storseth v. Spellman,* 654 F.2d 1349, 1355 (9th Cir.1981) (a non-lawyer may not file papers with the court or otherwise represent the rights of a *pro se* litigant).

**STANDARDS**

Where a plaintiff is granted leave to proceed *in forma pauperis,* the court shall dismiss the case at any time if the court determines that:

(B) the action ...

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). This provision applies to all actions filed *in forma pauperis,* whether or not the plaintiff is incarcerated. *See Lopez v. Smith,* 203 F.3d 1122, 1129(9th Cir.2000) (en banc).

In order to state a claim, Plaintiff's complaint must contain sufficient factual allegations which, when accepted as true, give rise to a plausible inference that Defendants violated Plaintiff's constitutional rights. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949; *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir.2009).

As the Ninth Circuit has instructed however, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler,* 627 F.3d 338, 341 (9th Cir.2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id.* (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam)).

Before dismissing a *pro se* civil rights complaint for failure to state a claim, this Court supplies the plaintiff with a statement of the complaint's deficiencies. *Eldridge v. Block,* 832 F.2d 1132, 1136 (9th Cir.1987). A *pro se* litigant will be given

leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Lopez,* 203 F.3d at 1130–31.

## DISCUSSION

Federal courts are courts of limited jurisdiction and cannot hear every dispute presented by litigants. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir.1995). A district court is empowered to hear only those cases which are within the judicial power conferred by the United States Constitution and those which fall within the jurisdiction granted by Congress. *Richardson v. United States,* 943 F.2d 1107, 1112–12 (9th Cir.1991). Original jurisdiction must be based either on diversity of citizenship, in suits involving more than $75,000 between citizens of different states, 28 U.S.C. § 1332, or on a claim involving the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331.

**\*2** Diversity jurisdiction requires that all plaintiffs be of different state citizenship than all defendants. *Pullman Co. v. Jenkins,* 305 U.S. 534, 541 (1939). To establish diversity jurisdiction, Plaintiffs must allege that they are citizens of one state, that all of the Defendants are citizens of other states, and that the damages are more than $75,000. To invoke federal question jurisdiction, Plaintiffs must plead that Defendants have violated some constitutional or statutory provision.

Plaintiffs do not allege facts establishing diversity of citizenship between Plaintiffs and Defendants and, in any event, the amount of damages sought by Plaintiffs does not reach the $75,000 threshold. Plaintiffs also do not allege that their claim against Defendants is based upon the Constitution, laws, or treaties of the United States. Accordingly, this Court lacks subject matter jurisdiction over Plaintiffs' Complaint, and must therefore dismiss the Complaint. *See* Fed.R.Civ.P. 12(h) (court is required to dismiss an action "[w]henever it appears [by suggestion of the parties or otherwise] that the court lacks jurisdiction of the subject matter"); *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983).

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiffs' Complaint is DISMISSED. Plaintiffs may file an amended complaint, curing the deficiencies noted above, within 30 days of the date of this order. Plaintiffs are advised that failure to file an amended complaint which cures the deficiencies noted shall result in the dismissal of this proceeding, with prejudice.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 6122960

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 137 of 147

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

### I. SUFFICIENCY OF THE COMPLAINT

#### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that − ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff

may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 138 of 147

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

**B. Analysis of the Complaint**

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

 **\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the

location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[3]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-00722-BKS-TWD   Document 10   Filed 07/16/24   Page 140 of 147
Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)
2023 WL 3170384

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

 **\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y.
Mar. 16, 2011)* (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, *5 (N.D.N.Y. Nov. 2, 2015)* ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

 **\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Case 6:24-cv-00722-BKS-TWD  Document 10  Filed 07/16/24  Page 141 of 147

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)
2023 WL 3170384

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1641587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard GRIFFITH, Plaintiff,

v.

NEW YORK STATE, Attorney General, Defendant.

5:23-CV-1266 (DNH/ML)
|
Signed March 20, 2024

**Attorneys and Law Firms**

HOWARD GRIFFITH, Plaintiff, Pro Se, 2903 James Street, #1R, Syracuse, New York 13206.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**I. INTRODUCTION**

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2) filed by Howard Griffith ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend.

**II. BACKGROUND**

The Complaint is forty-four pages long and includes a series of allegations that are difficult to follow and appear to have little in common. (*See generally* Dkt. No. 1.)

More specifically, Plaintiff appears to allege that between October 2019 and July 2020 he had issues with various individuals on real property that he rented from non-party Jan Nastri in the City of Syracuse. (Dkt. No. 1 at 4-5.) Plaintiff alleges that he drafted a N.Y. C.P.L.R. Article 78 petition against Onondaga County and provided a copy of the draft petition to Jan Nastri. (*Id.* at 5-6.)

Plaintiff alleges that on September 14, 2020, he attempted to comply with his obligation to update his address with the sex offender registry but that the Syracuse Police Department would not include an apartment number with his address. (*Id.*

at 7.) Plaintiff alleges that he filed the Article 78 petition he previously drafted with the addition of three points. (*Id.*) Plaintiff alleges that on October 30, 2020, New York State Judge McClusky rejected Plaintiff's request for poor person status. (Dkt. No. 1 at 9.)

The Complaint refers to an action that Plaintiff previously commenced in this Court, *Griffith v. New York*, 5:20-CV-1312 (GLS/ML) ("*Griffith I*"), which was dismissed. (Dkt. No. 1 at 11.)

The Complaint alleges that on November 3, 2020, Plaintiff contacted then-Congressman Katko to lodge a complaint about his "false address demonstrated with his sex offender registry which provided the remedy to obtain mail-in ballots." (*Id.* at 12.) Plaintiff alleges that in response to his correspondence, then-Congressman Katko sued the Onondaga County Board of Elections. (*Id.*)

The Complaint alleges that on January 10, 2002, Plaintiff was convicted of Rape in the first degree pursuant to N.Y. Penal Law § 130.35(1). (Dkt. No. 1 at 13.) The Complaint alleges that as a result of that conviction, Plaintiff was deemed a Level III sex offender pursuant to N.Y. Correct. Law § 168. (*Id.*) Plaintiff alleges that he sought (1) to vacate his judgment of conviction, (2) modification of his sex offender registry obligations, and (3) habeas corpus relief. (*Id.* at 13-19.)

Plaintiff alleges that on March 9, 2021, he responded to a reward notification posted by the Federal Bureau of Investigation with information about individuals producing pipe bombs and explosive devices used on January 6, 2021, in Washington DC. (Dkt. No. 1 at 19.) The Complaint alleges that Plaintiff discovered evidence in the dumpster where he disposes of trash and referred the evidence to the Onondaga County District Attorney's office. (*Id.* at 19-20.)

The Complaint alleges that on June 8, 2021, Plaintiff was incarcerated for failure to register as a sex offender pursuant to N.Y. Correct. Law § 168-f(3). (Dkt. No. 1 at 22.) The Complaint alleges that Plaintiff was incarcerated "because the police needed a reason to place [Plaintiff] in jail for a psychiatric evaluation ... after he had recovered from a grand-mal seizure." (*Id.*)

**\*2** The Complaint alleges that Plaintiff sought a modification to his SORA level, which apparently was denied because, the Complaint alleges that had the modification been granted, he would have only been required to register once

2024 WL 1641587

per year. (Dkt. No. 1 at 23.) Plaintiff alleges that he was denied access to the law library while incarcerated at the Onondaga County Justice Center because he was not given the inmate handbook. (*Id.*) Plaintiff alleges that he was placed in segregated housing because he struck a deputy who refused to authorize him use of the law library. (*Id.*) Plaintiff alleges that he was unable to exhaust his administrative remedies with respect to the associated disciplinary hearing because he was transferred to the Central New York Psychiatric Center ("CNYPC"). (*Id.*)

The Complaint alleges that Plaintiff was released from custody on bail on October 18, 2021. (Dkt. No. 1 at 27.) The Complaint alleges that after Plaintiff was released, "he obtained a medicare voucher at his mailbox for the person identified on the flier that he filed with 'Howard Griffith v. Onondaga County, [ ]'. The medicare voucher was addressed to the fake address he attempted to demonstrate with his sex offender registry.... Plaintiff demonstrated how New York citizens had just voted against proposals that would ease restrictions on voting laws with regards to redistricting, mail-in ballots and same day voter registration." (*Id.*)

The Complaint alleges that on February 18, 2022, Plaintiff was convicted of failing to fulfill his duty to register as a sex offender pursuant to N.Y. Corr. Law § 168-f(3). (Dkt. No. 1 at 30.) The Complaint alleges that on March 7, 2022, Plaintiff was arrested and charged with harassment in the second degree for striking his roommate, Rebecca Sklaney. (*Id.* at 31.)

The Complaint does not appear to assert any causes of action, but states that it is "brought pursuant to 42 USC § 1983, to remedy the deprivation, under color of state law, of the rights guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution." (Dkt. No. 1 at 2.) As relief, the Complaint seeks, *inter alia*, (1) reconsideration of *Griffith I*, (2) a declaration that mail-in voting ballots be eliminated from elections, and (3) an investigation "into whether any person or entity has engaged in ... fraudulent, illegal or deceptive conduct in the ownership, operation or management of the residential properties owned, operated and/or managed by Jan Nastri." (Dkt. No. 1 at 43-44.)

### III. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however,

to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [2]

[1] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2] Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

### IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional

2024 WL 1641587

theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Complaint is largely incomprehensible and must be dismissed for two reasons.

### A. Frivolous

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

As it currently stands, Plaintiff's Complaint wholly fails to provide fair notice of the claims he attempts to assert. Although the Complaint begins using numbered paragraphs on pages 1 and 2, the remaining forty-two pages of the Complaint are unnumbered paragraphs. (*See generally* Dkt. No. 1.) Moreover, the Complaint is extremely difficult to follow and, as mentioned above, alleges a series of grievances that appear to have little to do with one another. As best as the undersigned can decipher, Plaintiff appears to believe that his arrest—and ultimate conviction—for failing to comply with his duty to register as a sex offender is somehow related to voting regulations in New York State. (*Id.*) Given its lack of clarity, the undersigned recommends dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear.

### B. Immunity

**\*5** Second, and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from New York State, which is immune from suit.

The Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Eleventh Amendment immunity in this case extends to arms of New York State, including the New York State Attorney General. *See Smith v. United States*, 554 F. App'x 30, 31 (2d Cir. 2013) (affirming dismissal of claims against the New York State Attorney General on sovereign immunity grounds). Accordingly, I recommend that Plaintiff's claims asserted against the New York State Attorney General be dismissed pursuant to Section 1915(e)(2)(B)(i).

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a

plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [3]

[3]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above. [4]  *See Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at \*6 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (recommending dismissal without leave to amend the plaintiff's claims against the People of the State of New York and the Watertown District Attorney's Office because those governmental entities were immune from suit), *report and recommendation adopted*, 2024 WL 125512 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.).

[4]    The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at \*7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at \*8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at \*3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court

lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original).

**\*6  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) for frivolousness and because Defendant is immune from suit, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[5]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2024 WL 1641587

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1639856
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard GRIFFITH, Plaintiff,

v.

NEW YORK STATE ATTORNEY
GENERAL, Defendant.

5:23-CV-1266
|
Signed April 16, 2024

**Attorneys and Law Firms**

HOWARD GRIFFITH, Plaintiff, Pro Se, 2903 James Street, #1R, Syracuse, NY 13206.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On October 10, 2023, *pro se* plaintiff Howard Griffith ("plaintiff") filed this civil action alleging that defendant somehow violated his rights in connection with a real property rental dispute with non-parties. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On March 20, 2024, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application, conducted an initial review of the pleading, and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed without prejudice but without leave to amend. Dkt. No. 7. As Judge Lovric explained, plaintiff's pleading was frivolous. *Id.*

Plaintiff has lodged objections. Dkt. No. 8. Upon *de novo* review, the R&R is accepted and will be adopted. 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 7) is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without prejudice but without leave to amend.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1639856

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.